1  Laurence M. Rosen (SBN 219683)
2  **THE ROSEN LAW FIRM, P.A.**
3  355 South Grand Avenue, Suite 2450
   Los Angeles, CA 90071
4  Telephone: (213) 785-2610
   Facsimile: (213) 226-4684
5  Email: lrosen@rosenlegal.com
6
7  *Counsel for Plaintiff*
8              UNITED STATES DISTRICT COURT
               CENTRAL DISTRICT OF CALIFORNIA
9
10
11  DANIEL GABBARD, Individually and      No.
    on behalf of all others similarly
12  situated,                             **CLASS ACTION COMPLAINT
                                          FOR VIOLATIONS OF THE
13                                        FEDERAL SECURITIES LAWS**
              Plaintiff,
14                                        CLASS ACTION
15            v.
16  PHARMACIELO LTD., DAVID               JURY TRIAL DEMANDED
    ATTARD, and SCOTT LAITINEN,
17
18            Defendants.
19
20
21
22
23
24
25
26
27
28

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

Plaintiff Daniel Gabbard ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, public filings, wire and press releases published by and regarding PharmaCielo Ltd. ("PharmaCielo" or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded PharmaCielo securities from June 21, 2019 and March 2, 2020, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4.      This Court has jurisdiction over each defendant named herein because each defendant has sufficient minimum contacts with this District so as

1

to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

5.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this judicial district.

6.    In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

7.    Plaintiff, as set forth in the accompanying Certification, purchased the Company's securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

8.    Defendant PharmaCielo, through its subsidiary, PharmaCielo Colombia Holdings S.A.S., purports to cultivate, process, produce, and supply medicinal-grade cannabis oil extracts and related products in Colombia and internationally.

9.    The Company is incorporated in Canada and its head office is located at 1 Toronto Street, Suite 805, Toronto, Ontario, Canada M5C 2E3. PharmaCielo's securities trade on the OTCQX Best Market ("OTCGX") under the ticker symbol "PCLOF" and previously traded under the ticker symbol "PHCEF."

10.    Defendant David Attard ("Attard") has served as the Company's Chief Executive Officer ("CEO") and as a Director during the Class Period.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

11.    Defendant Scott Laitinen ("Laitinen") has served as the Company's Chief Financial Officer ("CFO") during the Class Period.

12.    Defendants Attard and Laitinen are collectively referred to herein as the "Individual Defendants."

13.    Each of the Individual Defendants:

(a)    directly participated in the management of the Company;

(b)    was directly involved in the day-to-day operations of the Company at the highest levels;

(c)    was privy to confidential proprietary information concerning the Company and its business and operations;

(d)    was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)    was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)    was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)    approved or ratified these statements in violation of the federal securities laws.

14.    The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

15.    The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

3

16.     The Company and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading
### Statements Issued During the Class Period

17.     On June 21, 2019, PharmaCielo issued a press release touting the Company's recent position in the stock market and announcing that the Company was "now trading on the OTC Markets under the symbol 'PHCEF.'"

18.     On August 27, 2019, PharmaCielo issued a press release which announced the Company's second quarter 2019 financial results which touted its "maturing" oil producing capabilities, stating in pertinent part:

> "The first six months of 2019 have been incredibly productive for PharmaCielo, as **the team in Colombia nears completion of the key foundational elements that will enable the Company to support the sale and export of processed oil**," said David Attard, Chief Executive Officer of PharmaCielo Ltd. . . . "Over the past several months PharmaCielo has been transitioning from our founding stage as we finalize the operational infrastructure and **are now entering into a more mature operational phase with inventory, finished products (oils and isolate), distribution channels, sales agreements and, most recently, our announcements of international sales relationships and successful export.**"

(Emphasis added.)

19.     Also on August 27, 2019, PharmaCielo issued its "Management's Discussion and Analysis For the Three and Six Months Ended June 30, 2019" (the "August Management's Discussion and Analysis").

20.     In the August Management's Discussion and Analysis, PharmaCielo touted its expanding production capabilities, particularly with regards to oil production, stating the following, in pertinent part, about its operations and

facilities:

>Additional processing equipment now in place complements technologies previously installed and will immediately increase annual dried flower processing capacity in support of previously announced strategies for the expansion of hectares under cultivation, with a corresponding increase in finished oil production.

*    *    *

>**The Company continues to expand the land area under active cultivation, currently at 12.1 hectares (capable in annual cultivation in excess of 0.48 million kg) from 5.3 hectares at the beginning of the year, with additional cultivation expansion expected to continue throughout the balance of the year.**

*    *    *

>PharmaCielo's nursery and propagation center, located in the municipality of Rionegro in the department of Antioquia, consists of 12 hectares of open-air greenhouses situated on a 27 hectare property, along with a manmade lake (natural water reservoir), ample cold storage, and industrial "plugging" systems customized to handle large-scale cutting operations. Each hectare of greenhouse contains 180 planting beds, each bed is 40.5 sq. meters (1.35 m x 30 m). The total bedding area per hectare is 7,290 sq. meters and the entire nursery and propagation center contains approximately 1.3 million square feet of planting beds. This nursery and propagation center is capable of producing on a weekly basis, significantly more than 12 million cuttings (e.g., clones) that would be required to supply 600 hectares of contract cultivation.

>**PharmaCielo is also currently constructing a research technology and processing center ("Research Technology and Processing Centre"), with the anticipated completion of construction in late 2019.** Once complete, the Colombian National Food and Drug Surveillance Institute ("INVIMA") must certify the center to ensure that it meets Colombian good and manufacturing standards. The Research Technology and Processing Centre will contain facilities to: (i) dry flowers naturally and by using drying machines; (ii) a milling

5

area; (iii) extraction areas; and (iv) an area designed for testing for levels of THC and CBD levels in cannabis as well as for general compliance. ***To date, the Research Technology and Processing Centre costs have been USD$9 million and management projects that the completion of facility will require an additional USD$6 million.***

(Emphasis added.)

21.    On September 25, 2019, PharmaCielo issued a press release which "announced that it has signed a United States sales agreement (the "Agreement") with an established multi-state distributor, General Extract LLC ("General Extract")."

22.    On November 25, 2019, PharmaCielo issued a press release which announced the Company's third quarter 2019 financial results (the "3Q 2019 Financial Results") which touted its expansion, stating in pertinent part:

> ***Nearing completion of extraction and processing center*** ("RTC"), which will expand the Company's extraction capacity to 265 tonnes of dried flower per year (processed equivalent volume of 28,900 kg of cannabis oil per year).
>
> *        *        *
>
> [S]aid David Attard, Chief Executive Officer of PharmaCielo Ltd. "Our focus in Q4 and through 2020 will be on a continued ramp up of our processing facilities and on generating revenue at commercial scale both through the expansion of global sales relationships, and the signing of commercial supply agreements in jurisdictions where we are present today.["]

(Emphasis added.)

23.    Also on November 25, 2019, PharmaCielo issued its "Condensed Interim Consolidated Financial Statements Three and Six Months Ended September 30, 2019" (the "November Financial Statements").

6

24.    In the November Financial Statements, PharmaCielo touted its expanding production capabilities, particularly with regards to oil production, stating the following, in pertinent part, about its operations and facilities:

> PharmaCielo Colombia Holdings S.A.S. is developing a farm and a processing plant, located in Rio Negro the municipality of La Cieja (Antioquia), for the purpose of cultivating and sowing, as well as assembly of the cannabis oil. The farm includes greenhouses, offices and agricultural areas. As of September 30, 2019, the construction and assets in transit balance of $6,601,714 (December 31, 2018 - $3,066,880) represents the developing activities that have not yet been completed.
>
> \*    \*    \*
>
> The Company has an agreement with CNV Construcciones S.A.S. ("CNV"), a Colombian construction company, to pay CNV USD$32,314 to complete the construction of the Research Technology and Processing Centre in 2019. ***The construction of the Research Technology and Processing Centre is progressing with the anticipated completion of construction in late 2019.*** Once completed, the Research Technology and Processing Centre must be certified by INVIMA in order to ensure that it meets Good Manufacturing Practice (GMP) standards.
>
> (Emphasis added.)

25.    In the November Financial Statements, PharmaCielo purportedly listed all of its related party transactions but did not include the transaction with General Extract.

26.    On January 27, 2020, PharmaCielo issued a press release which announced:

> . . . that it has entered into a three-year agreement (the "Agreement") with **XPhyto Therapeutics Corp.** ("**XPhyto**") (**CSE:XPHY; FSE:4XT**), whereby PharmaCielo will supply medicinal-quality cannabis extract oils and isolates, including those containing THC, to XPhyto for analysis, further processing, product development and

7

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

manufacturing at its European Union Good Manufacturing Practice-certified ("EU GMP") facility in Biberach in the state of Baden-Württemberg, and thereafter for sale into the German market.

\*       \*       \*

Pursuant to the Agreement, XPhyto granted PharmaCielo 500,000 Common Share purchase Warrants ("Warrants") with an exercise price of $2.00 per Common Share.

As a term of the Agreement, PharmaCielo will enter into an agreement (the "Purchase Agreement") to purchase CAD $500,000 of unsecured convertible debentures of XPhyto (the "Debentures"), to fund expansion of its processing capabilities. The Debentures mature two years from the date of issue and bear interest of 8.0% per annum. The Debentures will be convertible by PharmaCielo into 500,000 common shares of XPhyto subject to certain XPhyto acceleration rights. The purchase of the Debentures is subject to approval by the Canadian Securities Exchange (the "CSE"). XPhyto will also grant PharmaCielo 500,000 Warrants with an exercise price of $1.50 per Common Share.

27.    The statements referenced in ¶¶17-26 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) PharmaCielo engaged in an undisclosed related party transactions with General Extract; (2) PharmaCielo engaged in misleading transactions and loans with General Extract and XPhyto; (3) PharmaCielo's Research Technology and Processing Centre was never on-schedule and is delayed; (4) the Rionegro facility is located on a floodplain and contaminated with mold and pesticides from its previous tenants; (5) PharmaCielo's Cauca Department land has never been utilized by the Company and is idle; and (6) as a

8

result , Defendants' public statements were materially false and/or misleading at all relevant times.

## THE TRUTH EMERGES

28.     On March 2, 2020, Hindenburg Research published a report (the "Report") explaining that PharmaCielo had failed to disclose: (i) transactions with related parties; (ii) misleading business transactions and loans with General Extract and XPhyto; (iii) the delayed state of its Research Technology and Processing Centre's construction; and (iv) the poor state of its Rionegro Growing Facility.

29.     The Report noted the following, in pertinent part, regarding PharmaCielo's undisclosed related party transactions:

> PharmaCielo recently announced a U.S. distribution deal with an opaque company called General Extract LLC. ***We found that this is yet another undisclosed related party deal, involving PharmaCielo's former COO.***
>
> *         *         *
>
> The company's U.S. distribution partner is actually yet another undisclosed related-party deal with a company that appears to have limited to no credible operations.
>
> *         *         *
>
> **Undisclosed Related-Party Deals: PharmaCielo's New U.S. Distribution Deal with General Extract LLC Is Yet Another Questionable Deal with A Former PharmaCielo COO**
>
> *         *         *
>
> ***But what the company did not disclose seems far more important: General Extract appears to be a related party entity with no credible operations run by PharmaCielo's former Chief Operating Officer.***

9

The articles of incorporation [] for General Extract, LLC show "John Knapp" as the company's registered agent.

Mr. Knapp was former "Chief Operations Officer" of PharmaCielo, per this 2016 regulatory filing [] with British Columbia Securities Regulators.

\*        \*        \*

**All told, nearly all of the key people at PharmaCielo's new U.S. distribution partner General Extract (and its parent Redwood Green) appear to be related to PharmaCielo.**

(Emphasis added.)

30.     The Report noted the following, in pertinent part, regarding PharmaCielo's transactions with General Extract:

**General Extract, Which PharmaCielo Described as an "Established Multi State Distributor" Appears to Have No Products and No Credible Operations Whatsoever**

Most "established" companies at least have a website.

When we examined General Extract, we found that its website [] domain was registered on November 14, 2019, about 3 weeks after entering into its sales agreement with PharmaCielo.

Along the same lines, the email address used by General Extract in its press [] with PharmaCielo was a Gmail address [] (presumably because they didn't even have a domain registered at the time)[.]

\*        \*        \*

Despite the claim by PharmaCielo that General Extract is a "multi-state" [] distributor, we were unable to find evidence to confirm this. Nothing on General Extract's website as of 3/1/2020 [] says anything about multi-state distribution, multiple locations, or suggests any clients exist other than PharmaCielo.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

**We Visited General Extract in Colorado And We Found Its "Offices" Bore the Logo of a Different Company. Its Parent Company's Office "Suite" Was Actually A Mailbox at A UPS Store**

Our investigator, did, however, see people leaving various parts of the building around 4:50pm local time; some of whom were wearing grey sweaters with a logo that resembled a "Good Meds" logo. "Good Meds" is the other brand owned by Redwood Green and operated by John Knapp [], the individual listed on General Extract's corporate documents [].

\*      \*      \*

Instead, it appears that General Extract exists largely on paper.

**Undisclosed Related-Party Deals: General Extract's Parent Corporation, Redwood Green, Is Also Replete with Related Party Ties to PharmaCielo**

General Extract's parent company, Redwood Green [] also consists of multiple people tied closely to PharmaCielo.

\*      \*      \*

All told, nearly all of the key people at PharmaCielo's new U.S. distribution partner General Extract (and its parent Redwood Green) appear to be related to PharmaCielo. Most importantly, none of this was disclosed to investors when the company touted its "milestone" distribution deal.

(Emphasis added.)

31.    The Report noted the following, in pertinent part, regarding PharmaCielo's transactions with XPhyto Therapeutics:

PharmaCielo's other main partnership, a distribution deal with nanocap company XPhyto, appears to be little more than a shell game. *PharmaCielo is supplying XPhyto with cash so XPhyto can turn around and buy PharmaCielo's products.*

11

\* \* \*

**Another Sketchy "Partnership": PharmaCielo Is Paying a Company Called XPhyto To Buy PharmaCielo's Product with PharmaCielo's Money**

\* \* \*

XPhyto's financials show that the company was in apparent distress leading up to the deal. In the 9-month period prior to announcing the deal, XPhyto reported [] revenue of $45,000, operating losses of $5,351,789, and cash of only $791,030. In other words, they look to have been at the brink of insolvency.

\* \* \*

When it boils down to it, this partnership appears to us to be a sham. PharmaCielo is paying a distressed company to "buy" its product. Aside from the splashy headline, the "deal" appears to offer no economic advantage.

***In a best-case scenario, we think PharmaCielo will get its own money back and have to hand over valuable product.*** So far, we haven't seen any purchases by XPhyto as the partnership announcement [] was recent, on January 27, 2020.

Realistically, given the state of XPhyto's current balance sheet and its dwindling cash, we expect PharmaCielo will simply lose most of its investment in XPhyto with little to show for it.

(Emphasis added.)

32.    The Report noted the following, in pertinent part, regarding PharmaCielo's Rionegro greenhouse facilities:

According to local sources, the Rionegro greenhouse facilities have issues with mold and residual pesticides from the flower-growing operation that preceded the company's use of the facility.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

\*      \*      \*

*The company's main facility in Rionegro may be troubled with mold and pesticide contamination, likely originating from the flower-growing operation that preceded PharmaCielo's assumption of the facilities*, according to local sources we spoke with. *In addition, Rionegro planning authorities say one-third of the land is unusable due to environmental restrictions and the risk of flooding.*

\*      \*      \*

**Financials and Operations: Reported Issues with Mold and Heavy Pesticides in the Company's Rionegro Facility**

Additionally, a source that our investigator spoke with, a businessperson who is part of the flower-growing industry, said *based on their recent knowledge and entry to the PharmaCielo facility, they believed the cannabis crop there was "suffering from a bad outbreak of the fungus botrytis (or gray mold.)"*

They said the fungus was a major problem with certain flower cultivations, especially daisy poms (pompoms) – which is the type of flower that our investigator was told was being cultivated on the property prior to PharmaCielo taking it over.

\*      \*      \*

The other salient land issue is the flood risk from an adjacent stream. *An officer at the Rionegro planning department explained about one-third of the 27 hectare facility could not be used for building or agriculture because it was on a flood plain and subject to strict environmental controls.*

(Emphasis added.)

33.    The Report noted the following, in pertinent part, regarding construction on PharmaCielo's Rionegro Research Technology and Processing Centre:

13

The company's Rionegro cannabis oil processing centre [the Research Technology and Processing Centre], a key element of its plan to export oils, remains unfinished after almost 6 months of delays.

\*        \*        \*

**Financials and Operations: Cap-Ex Needs and the Company's Delayed Oil Processing Centre**

\*        \*        \*

***We also see from the same filing that despite the company claiming the oil processing centre was "nearing completion" in August 2019, by September it estimated that over U.S. \$7 million in anticipated capital expenditures would be needed in order to complete the project.***

The company has not yet announced whether the facility is completed. ***We contacted investor relations and asked about its status and have not yet received a reply.*** The facility does appear to be under construction, according to pictures posted by a development group [] associated with the project[.]

The photos [] were posted around June 2019***. Based on the timing, we anticipate that the external elements of the building are completed or close to being completed. We attempted to visit the facility to examine its progress but were unable to.***

In either case, investors should factor in the additional estimated \$7 million cash burn from the cap-ex required to complete the facility. We also think the company should provide investors with an update on progress, with pictures.

(Emphasis added.)

34.    The Report noted the following, in pertinent part, regarding PharmaCielo's land in the Cauca Department of Colombia:

14

The company announced it was building greenhouse facilities on newly purchased land in Colombia's Cauca region in 2017. ***We visited the land and found the greenhouses don't exist.*** The site is nothing more than an empty field covered in weeds. (We have photos and video)

*     *     *

***The company's key 3.6 hectare 'operation' in Colombia's Cauca region is actually just an empty field*** (we have pictures and video). We confirmed this with local leaders of a farming co-op that struck a deal to grow cannabis with the company.

*     *     *

**"There's Nothing There, Just Weeds": PharmaCielo's 'Greenhouse Facility' in Cauca Doesn't Exist**

Our investigator visited the Cauca property in February 2020, led by a senior member of the cooperative. He saw that PharmaCielo's greenhouse facility in Cauca, first touted 2 years ago, simply doesn't exist.

*     *     *

**Since the cultivation license was issued in November 2017, the person said there has been no further investment, no greenhouse has been built and not a single cannabis plant has been sown.**

(Emphasis added.)

35.    On this news, shares of PharmaCielo fell $0.5132 per share over the next two trading days, or 36.14%, to close at $0.9068 per share on March 3, 2020, damaging investors.

36.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

## **PLAINTIFF'S CLASS ACTION ALLEGATIONS**

37.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired PharmaCielo securities publicly traded on the OTCQX during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of PharmaCielo, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

38.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, PharmaCielo securities were actively traded on the OTCQX. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

39.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

40.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

41.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act was violated by Defendants' acts as alleged herein;

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition and business of PharmaCielo;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Defendants caused PharmaCielo to issue false and misleading filings during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false filings;

- whether the prices of PharmaCielo securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

42. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

43. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

17

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

- PharmaCielo shares met the requirements for listing, and were listed and actively traded on the OTCQX, an efficient market;

- As a public issuer, PharmaCielo filed periodic public reports;

- PharmaCielo regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

- PharmaCielo's securities were liquid and traded with sufficient volume during the Class Period; and

- PharmaCielo was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

44.    Based on the foregoing, the market for PharmaCielo securities promptly digested current information regarding PharmaCielo from all publicly available sources and reflected such information in the prices of the securities, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

45.    Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

## COUNT I

### For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder
### Against All Defendants

46.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

47.    This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

48.    During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

49.    Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;
- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of PharmaCielo securities during the Class Period.

19

50.    Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of PharmaCielo were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of PharmaCielo, their control over, and/or receipt and/or modification of PharmaCielo's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning PharmaCielo, participated in the fraudulent scheme alleged herein.

51.    Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other PharmaCielo personnel to members of the investing public, including Plaintiff and the Class.

52.    As a result of the foregoing, the market price of PharmaCielo securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of PharmaCielo securities during the Class Period in purchasing PharmaCielo securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

53.    Had Plaintiff and the other members of the Class been aware that the market price of PharmaCielo securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased PharmaCielo securities at the artificially inflated prices that they did, or at all.

54.    As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

55.    By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of PharmaCielo securities during the Class Period.

## COUNT II

### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

56.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

57.    During the Class Period, the Individual Defendants participated in the operation and management of PharmaCielo, and conducted and participated, directly and indirectly, in the conduct of PharmaCielo's business affairs. Because of their senior positions, they knew the adverse non-public information about PharmaCielo's misstatement of revenue and profit and false financial statements.

58.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to PharmaCielo's financial condition and results of operations, and

21

to correct promptly any public statements issued by PharmaCielo which had become materially false or misleading.

59.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which PharmaCielo disseminated in the marketplace during the Class Period concerning PharmaCielo's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause PharmaCielo to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of PharmaCielo within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of PharmaCielo securities.

60.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by PharmaCielo.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a)    declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

(b)    awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

awarding plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

22

(d)     awarding plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff hereby demands a trial by jury.

Dated: March 6, 2020                    **THE ROSEN LAW FIRM, P.A.**

*/s/Laurence M. Rosen*
Laurence M. Rosen (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS