**POMERANTZ LLP**
Jeremy A. Lieberman
(admitted *pro hac vice*)
Tamar A. Weinrib
(admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
jalieberman@pomlaw.com
taweinrib@pomlaw.com

*Attorneys for Plaintiff*

 - additional counsel on signature page -

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE PHARMACIELO LTD. SECURITIES LITIGATION<br><br>This Document Relates to:<br>All Actions | Case Number: 2:20-cv-02182-PSG-JC<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**<br>Date:       February 22, 2021<br>Time:       1:30 p.m.<br>Court:      6A<br>Judge:     Hon. Philip S. Gutierrez |

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT, CASE NO.: 2:20-cv-02182-PSG-JC

TABLE OF CONTENTS

Page(s)

PRELIMINARY STATEMENT ...............................................................................1

STATEMENT OF FACTS .......................................................................................3

ARGUMENT ...........................................................................................................8

      A.     The Complaint Adequately Pleads Actionable Misstatements.............8

          1.     Defendants Had a Duty to Disclose........................................10

          2.     The Report Suffices to Establish Falsity.................................14

          3.     Defendants' Other Arguments are Misplaced and Unavailing.14

      B.     The Complaint Adequately Pleads Scienter.......................................16

      C.     The Complaint Adequately Pleads Reliance......................................18

      D.     The Complaint Adequately Pleads Loss Causation ...........................20

      E.     Section 10(b) Covers Plaintiff's Claim .............................................23

CONCLUSION ......................................................................................................24

i

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS THE AMENDED COMPLAINT, CASE NO.: 2:20-cv-02182-PSG-JC

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
677 F.3d 60 (2d Cir. 2012) ...............................................................................24

*Affiliated Ute Citizens of Utah v. United States*,
406 U.S. 128 (1972)......................................................................................2, 19

*Atlantica Holdings, Inc. v. BTA Bank JSC*,
2015 U.S. Dist. LEXIS 3209 (S.D.N.Y. Jan. 12, 2015) ....................................24

*Banc of Cal. Sec. Litig.*,
2017 U.S. Dist. LEXIS 145361 .........................................................................14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)............................................................................................8

*Berson v. Applied Signal Tech., Inc.*,
527 F.3d 982 (9th Cir. 2008) ..............................................................................9

*Bos. Ret. Sys. v. Uber Techs., Inc.*,
No. 19-cv-06361-RS, 2020 U.S. Dist. LEXIS 141724 (N.D. Cal.
Aug. 7, 2020) ....................................................................................................10

*Children's Hosp. & Med. Ctr. Found. of Omaha v. Countrywide Fin.
Corp.*,
No. CV-11-02056-MRP-MAN, 2011 U.S. Dist. LEXIS 166291
(C.D. Cal. Aug. 22, 2011)..................................................................................21

*Citiline Holdings, Inc. v. iStar Fin. Inc.*,
701 F. Supp. 2d 506 (S.D.N.Y. 2010) ...............................................................22

*Constr. Workers Pension Tr. Fund v. Genoptix, Inc.*,
No. 10cv2502-CAB (DHB), 2013 U.S. Dist. LEXIS 49716 (S.D.
Cal. Mar. 22, 2013).....................................................................................20, 23

*Dura Pharm., Inc. v. Broudo*,
544 U.S. 336 (2005)..........................................................................................20

*Eminence Capital, LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) ..........................................................................24

ii

*Eng v. Edison Int'l,*
No. 3:15-cv-01478-BEN-KSC, 2017 U.S. Dist. LEXIS 69196
(S.D. Cal. May 5, 2017) ........................................................................21

*Giunta v. Dingman,*
893 F.3d 73 (2d Cir. 2018) ...................................................................24

*In re Acadia Pharm. Inc. Sec. Litig.,*
No. 18-CV-01647-AJB-BGS, 2020 U.S. Dist. LEXIS 95464 (S.D.
Cal. June 1, 2020) ................................................................................10

*In re Amgen Inc. Sec. Litig.,*
544 F. Supp. 2d 1009 (C.D. Cal. 2008) ...............................................15

*In re Amgen Inc. Sec. Litig.,*
No. CV 07–2536 PSG, 2014 WL 12585809 (C.D. Cal. Aug. 4,
2014) .....................................................................................................16

*In re Amgen Inc. Sec. Litig.,*
No. CV 07-2536 PSG, 2014 U.S. Dist. LEXIS 183034 (C.D. Cal.
Aug. 4, 2014) ........................................................................................21

*In re Banc of Cal. Sec. Litig.,*
No. SACV 17-00118..............................................................................14

*In re Dura Pharm., Inc. Sec. Litig.,*
452 F. Supp. 2d 1005 (S.D. Cal. 2006) ...............................................15

*In re Empyrean Bioscience, Inc. Sec. Litig.,*
255 F. Supp. 2d 751 (N.D. Ohio 2003) ...............................................19

*In re Iso Ray Sec. Litig.,*
189 F. Supp. 3d 1057 (E.D. Wash. 2016)........................................17, 18

*In re Marsh & McLennan Cos. Sec. Litig.,*
501 F. Supp. 2d 452 (S.D.N.Y. 2006) ..................................................10

*In re Quality Sys. Inc. Sec. Litig.,*
865 F.3d 1130 (9th Cir. 2017) .............................................................16

*In re Refco, Inc. Sec. Litig.,*
503 F. Supp. 2d 611 (S.D.N.Y. 2007) ..................................................18

*In re VeriFone Holdings, Inc. Sec. Litig.,*
704 F.3d 694 (9th Cir. 2012) .................................................................8

iii

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
   MDL No. 2672 CRB (JSC), 2019 U.S. Dist. LEXIS 166832 (N.D. Cal. Sept. 26, 2019) ...................................................................................19, 20

*In re Winstar Commc'ns*,
   No. 01 CV 3014 (GBD), WL 473885 (S.D.N.Y. Feb. 27, 2006)......................22

*Maloul v. Berkowitz*,
   No. 07 Civ. 8525(LBS), 2008 WL 2876532 (S.D.N.Y. July 23, 2008) ...........................................................................................................18

*Maz Partners v. First Choice Healthcare Sols., Inc.*,
   No. 6:19-cv-619-Orl-40LRH, 2019 U.S. Dist. LEXIS 184611 (M.D. Fla. Oct. 16, 2019) ..........................................................................18

*Melcher v. Fried*,
   No. 16-cv-2440-BAS-BGS, 2018 U.S. Dist. LEXIS 205252 (S.D. Cal. Dec. 4, 2018) ....................................................................................9

*Morrison. Rubenstein v. Cosmos Holdings, Inc.*,
   No. 19 Civ. 6976 (KPF), 2020 U.S. Dist. LEXIS 121773 (S.D.N.Y. July 10, 2020) .................................................................23

*Morrison v. National Australia Bank Ltd.*,
   561 U.S. 247 (2010).................................................................................23, 24

*Myun-Uk Choi v. Tower Research Capital LLC*,
   890 F.3d 60 (2d Cir. 2018) ............................................................................24

*No. 84 Emp'r-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*,
   320 F.3d 920 (9th Cir. 2003) ....................................................................8, 17

*Prodanova v. H.C. Wainwright & Co.*
   No. LA CV17-07926 JAK (ASx), 2018 WL 8017791 (C.D. Cal. Dec. 11, 2018)..............................................................................................16

*Ret. Ass'n v. comScore, Inc.*,
   268 F. Supp. 3d 526 (S.D.N.Y. 2017) ...........................................................17

*Ret. Sys. of Miss. v. Amedisys, Inc.*,
   769 F.3d 313 (5th Cir. 2014) .........................................................................22

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT, CASE NO.: 2:20-cv-02182-PSG-JC

*Ret. Tr. v. RH. Inc.*,
   302 F. Supp. 3d 1028 (N.D. Cal. 2018)...........................................................21

*Rodriguez v. Gigamon Inc.*,
   325 F. Supp. 3d 1041 (N.D. Cal. 2018)...........................................................15

*Schueneman v. Arena Pharm., Inc.*,
   840 F.3d 698 (9th Cir. 2016) .....................................................................8, 10

*Scott v. ZST Dig. Networks, Inc.*,
   896 F. Supp. 2d 877 (C.D. Cal 2012) ..............................................................18

*Scott v. ZST Dig. Networks, Inc.*,
   No. CV 11-03531 GAF, 2012 U.S. Dist. LEXIS 19392 (C.D. Cal.
   Feb. 14, 2012) ..............................................................................................22

*SEC v. Ficeto*,
   839 F. Supp. 2d 1101 (C.D. Cal. 2011) ...........................................................23

*SEC v. Hartcourt Cos.*,
   No. CV 03-3698 LGB, 2003 U.S. Dist. LEXIS 27135 (C.D. Cal.
   Dec. 18, 2003)................................................................................................8

*Snellink v. Gulf Resources, Inc.*,
   870 F. Supp. 2d 930 (C.D. Cal. 2012) .......................................................14, 22

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)......................................................................................16

*United States v. Isaacson*,
   752 F.3d 1291 (11th Cir. 2014) .....................................................................24

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) .........................................................................18

**Statutes**

15 U.S.C. §78j(b) ..........................................................................1, 8, 15, 23

15 U.S.C. §78t(b) .................................................................................23

15 U.S.C. § 78u-4(b)(1) ...........................................................................9

**Rules**

Fed. R. Civ. P. 8(a)(2).............................................................................20

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT, CASE NO.: 2:20-cv-02182-PSG-JC

Fed. R. Civ. P. 9(b) ............................................................................................8

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS THE AMENDED COMPLAINT, CASE NO.: 2:20-cv-02182-PSG-JC

## PRELIMINARY STATEMENT

PharmaCielo Ltd. ("PharmaCielo" or the "Company"), which is in the medical grade cannabis oil extracts business, had ***no operating revenues*** prior to the Class Period. Investors therefore paid close attention to Defendants' statements regarding operations, expansion efforts, and sales/distribution agreements. Throughout the Class Period, however, Defendants issued misleading statements in each of these categories. When the market learned of Defendants' fraud, the Company's share price lost *a third of its value*, severely damaging investors.

Satisfying the falsity element of the § 10(b) claim, the Complaint alleges that Defendants issued misleading statements describing the Rionegro operation without revealing significant issues, *e.g.*, its location on a floodplain and mold contamination; touted the construction of an oil processing facility but failed to reveal construction delays that belied claims the project neared completion; failed to reveal that its Cauca property remained idle, making Rionegro its *only* active operation; touted a $3 million agreement with General Extract without revealing it involved related parties; touted an agreement with XPhyto without revealing it was a sham; and touted expansion efforts in Latin America without revealing that their failure to adhere to bidding process requirements stymied those efforts in Peru. As explained below, Defendants issued its misstatements with scienter, and have failed to challenge a single allegation of scienter set forth in the Complaint.

Putting aside Defendants' conclusory and baseless attacks on the

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS THE AMENDED COMPLAINT, CASE NO.: 2:20-cv-02182-PSG-JC

Hindenburg Report ("Report") that revealed their fraud, courts in this jurisdiction and others have held that securities fraud complaints can be based on short seller reports.  That the Company issued self-serving denials of the Report's conclusions based on a supposedly "independent investigation" post-Class Period is hardly exculpatory and raises issues of fact inappropriate for adjudication at this stage.  Moreover, the results of this investigation are extraneous to the Complaint, post-Class Period, inappropriate for judicial notice, and based on information provided *by the Company itself,which is accused of issuing fraudulent statements on these topics*.  In any event, even the Company's "independent investigation" revealed it knew about the conflicts of interest and related parties involved in the General Extract deal and knew that the Cauca land is idle.  The case law is also clear that a short seller report, even based on public data, can suffice for loss causation.  Not all the facts in the Report are public, or easily obtainable, and the short seller's analysis and conclusions are "new information" that "corrected" the fraud.

The Complaint also pleads reliance, both direct and via the *Basic* and *Affiliated Ute* presumptions of reliance, given allegations of efficiency along with caselaw that securities trading on the OTCQX can trade in an efficient market (*Basic*), and given that omissions are the heart of this case (*Affiliated Ute*).  Bereft of any credible challenge to the Complaint, and unable to challenge the domesticity of Plaintiff's transactions (conducted on a domestic exchange with irrevocable liability in the U.S.), Defendants' motion should be denied in its entirety.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT, CASE NO.: 2:20-cv-02182-PSG-JC

## STATEMENT OF FACTS[1]

PharmaCielo has *one* operating subsidiary, PharmaCielo Colombia, and describes its business as cultivating, processing and supplying all-natural medicine-grade cannabis oil extracts to large channel distributors via its greenhouse facilities in Colombia. ¶ 26.  PharmaCielo's business depends on its *only* operation, at the Company's "headquarters" in Rionegro, Colombia. ¶ 27.  At all relevant times, Defendants touted the Rionegro property on its website, listing its many advantages. *Id.* PharmaCielo's only other property in Colombia is in Cauca.  When it purchased the Cauca land in 2017, the Company stated that it was building greenhouse facilities there. ¶ 28.  However, to date, the site remains empty. *Id.* In other words, while Defendants stated that its *main* operations are in Rionegro, the Rionegro operation is in fact its *only* revenue producing operation. ¶ 29.

Given that the Company burns approximately $7 million a quarter, and prior to 2019, earned no revenue, it depended on the success of its Rionegro operation. ¶ 30. To assure investors regarding its prospects for revenue generation and growth, Defendants boasted of its capacity expansion and the construction of a Research Technology and Processing Centre ("Centre"), which they promised to complete in 2019. *Id.*  However, unbeknownst to investors, not only did the construction face

---

[1] All ¶ __ references are to the Amended Complaint for Violations of the Federal Securities Laws, filed on August 21, 2020 (ECF No. 27).

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT, CASE NO.: 2:20-cv-02182-PSG-JC

significant delays, the Rionegro property has always faced additional significant obstacles. ¶ 31. First, the property suffers from a gray mold issue caused by the flower-growing operation that preceded PharmaCielo's ownership. *Id.* The only way to treat gray mold is using harsh chemical fungicides, which can impact the quality and quantity of production. *Id.* Second, the property is at risk of flooding due to an adjacent stream. Indeed, according to an officer at the Rionegro planning department, about one-third of the 27-hectare facility cannot be used because it is on a floodplain and subject to strict environmental controls. ¶ 32.

Defendants did not reveal any of the issues with the Rionegro property during the Class Period nor did they reveal that Cauca remains idle. ¶ 33.

### Related Party Transaction with General Extract

In September 2019, the Company announced a $3 million sales agreement with General Extract. ¶ 34. Defendants did not disclose that General Extract's registered agent is PharmaCielo's former COO. *Id.* Moreover, two PharmaCielo directors are significant shareholders in General Extract's parent company, as is PharmaCielo's co-founders' son. *Id.* PharmaCielo's financial statements purported to identify its only related party transaction but Defendants never revealed the related party nature of the General Extract agreement, as SFAS 57 requires of Companies like PharmaCielo that trade on the OTCQX. ¶¶ 35-38.

### PharmaCielo's Sham Transaction with XPhyto

The Company also announced a distribution agreement with XPhyto in

4

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT, CASE NO.: 2:20-cv-02182-PSG-JC

January 2020, purportedly to supply medicinal-quality cannabis extract oils and isolates to XPhyto for analysis, further processing, product development manufacturing, and sale into the German market. ¶ 39.  Defendants did not disclose that the arrangement is a sham. *Id.*  At the bottom of the press release, Defendants stated that PharmaCielo would invest $500,000 in XPhyto in return for unsecured convertible debentures. ¶ 40.  They did not reveal that XPhyto is run by a CEO with a history of running companies into the ground and stood on the brink of insolvency. ¶ 41.  In the nine-month period prior to the agreement, XPhyto reported revenue of $45,000, operating losses of $5,351,789, and cash of only $791,030. *Id.* In other words, XPhyto needed the $500,000 to fulfill its obligations under the agreement, thus roundtripping the money back to PharmaCielo. *Id.*

**<u>Materially Misleading Statements During the Class Period</u>**

Throughout the Class Period, PharmaCielo issued press releases, and Management's Discussion and Analyses ("MD&A") in each of its quarterly and annual filings, directing investors to its website, which contains a "for investors" section. ¶ 42.  On its website, PharmaCielo stated that its *main* growing and processing operations are in Rionegro. ¶ 43. The website portrays the property as advantageously located, listing many positive characteristics, without disclosing that it is located on a floodplain, is contaminated with mold and pesticides, that the construction of the Centre -- which Defendants promised would "enable the Company to support the sale and export of processed oil"-- faced significant delays

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT, CASE NO.: 2:20-cv-02182-PSG-JC

with no completion date in sight; and that Rionegro is the Company's **only revenue producing property** given that Cauca remains idle. *Id.,* ¶ 49.

Defendants also issued numerous press releases describing the Company's efforts in "scaling up our Colombian operations," "ramping up its oil processing capabilities," "expand[ing] the land area under active cultivation," "maturing" oil producing capabilities, expanding production capabilities, without disclosing the numerous obstacles (*see supra*) they faced to doing so. ¶¶ 45-47, 51, 54, 57, 59, 66, 68. They referred to the property as the "perfect location" without disclosing the floodplain and contamination issues. ¶ 74.   Defendants also represented that construction of the Rionegro Centre was "nearing completion," at its "final stages," repeatedly providing a completion timeframe of "late 2019," though significant delays meant they could not complete construction by any predictable timeframe (indeed, construction of the Centre remains unfinished to date).  ¶¶ 49, 50, 51, 54, 57, 59.  Moreover, beginning on September 25, 2019, in a Company press release and a Q&A with *Hemp Industry Daily* that appeared on PharmaCielo's website, Defendants touted its $3 million agreement with General Extract as its "initial foray into the coveted United States market," a "milestone," and as providing the Company with "a competitive edge and strong foothold in the world's largest medical CBD market." ¶¶ 53-54, 57, 66.  With no revenues and high cash burn rate, the market took notice of the agreement, with a GMP Securities analyst calling it, "a definite milestone for the company." ¶ 56. Though providing comprehensive

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT, CASE NO.: 2:20-cv-02182-PSG-JC

details about the deal, Defendants never revealed – even when listing other related party transactions (¶ 60) -- that the deal with General Extract, a company with no credible operations, involved related parties.  Defendants also issued statements about PharmaCielo's efforts to expand its "existing presence throughout Latin America," ¶ 62, without revealing that their failure to adhere to bidding requirements in Peru.  Defendants also touted the supply and distribution deal with XPhyto as a "significant opportunity" to "generate meaningful revenue," that "will provide a critical mass and presence of our high-grade cannabis extracts across Europe," but failed to disclose that the transaction was a sham ¶¶ 70-72.

### The Corrective Disclosures

The first hint of fraud reached the market on January 9, 2020 when *Marijuana Business Daily*    ("*MBD*") published an article revealing that PharmaCielo lost a bid to supply medical cannabis in Peru because it failed to adhere to bidding requirements. ¶ 64. On this news, PharmaCielo shares dropped 4.80%. ¶ 65. However, the Company continued to issue misleading statements on the other topics summarized above.  Then, on March 2, 2020, Hindenburg Research issued a report ("Report") revealing the Company's (i) transactions with related parties; (ii) misleading business transactions with General Extract and XPhyto; (iii) the delayed state of the Centre's construction; (iv) the poor state of its Rionegro operation; and (v) lack of operations in Cauca. ¶¶ 76-82.  The detailed revelation caused shares to drop a staggering *36.14%,* damaging investors.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT, CASE NO.: 2:20-cv-02182-PSG-JC

## ARGUMENT

Courts must accept as true all well-pleaded factual allegations and draw all reasonable inferences in the plaintiff's favor. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007).[2] A motion to dismiss must be denied where the complaint plausibly articulates the circumstances constituting fraud. *Id.* at 570. *SEC v. Hartcourt Cos.*, No. CV 03-3698 LGB (PLAx), 2003 U.S. Dist. LEXIS 27135, at *18 (C.D. Cal. Dec. 18, 2003)Indeed, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable." *Twombly*, 550 U.S. at 556. To state a claim for securities fraud under Section 10(b), Plaintiff must allege "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Schueneman v. Arena Pharm., Inc.*, 840 F.3d 698, 704 (9th Cir. 2016).[3]

### A.     The Complaint Adequately Pleads Actionable Misstatements

At the pleading stage, a plaintiff need not prove falsity, but instead only "specify each statement alleged to have been misleading" and "the reason or reasons

---

[2] Internal citations and quotations are omitted herein, unless stated otherwise.

[3] Rule 9(b) and the PSLRA apply, but courts should not "raise the bar of the PSLRA any higher than that which is required." *No. 84 Emp'r-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 946 (9th Cir. 2003). *See In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 708 (9th Cir. 2012).

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT, CASE NO.: 2:20-cv-02182-PSG-JC

why the statement is misleading." 15 U.S.C. § 78u-4(b)(1).   A statement is misleading "if it would give a reasonable investor the impression of a state of affairs that differs in a material way from the one that actually exists." *Berson v. Applied Signal Tech., Inc*., 527 F.3d 982, 985 (9th Cir. 2008). The Complaint meets this standard, alleging that Defendants touted their Colombian operations, described efforts to expand in Colombia and throughout Latin America, and assured investors they would complete the Centre by the 3rd quarter of 2019.  However, they failed to reveal that Rionegro is its ***only*** revenue producing operation as Cauca remains idle, that the Rionegro facility is located on a floodplain and is contaminated with mold, that construction of the Centre faced significant delays with no clear completion date, and failure to adhere to bidding requirements hampered their efforts in Peru.

Defendants also misled investors regarding the General Extract and XPhyto agreements.  Defendants failed to disclose that the agreement with General Extract, which had no apparent credible operations, qualified as a related-party transaction with PharmaCielo's former COO; two large shareholders in General Extract's parent that were PharmaCielo directors; and one large shareholder in General Extract's parent who is the son of PharmaCielo's co-founder.  PharmaCielo also entered into a sham transaction with XPhyto, a nearly insolvent company run by a CEO with a history of running companies into the ground, pursuant to which PharmaCielo gave XPhyto money to roundtrip back to the Company to buy product.  This is the type of information "a reasonable investor would consider ... important in determining whether to buy or sell stock," ***particularly given t he Compa ny's lack of revenu e and cash burn*** .  *Melcher v. Fried* , No. 16-cv-2440-BAS-BGS, 2018 U.S. Dist.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT, CASE NO.: 2:20-cv-02182-PSG-JC

LEXIS 205252, at *36 (S.D. Cal. Dec. 4, 2018).[4]

### 1. Defendants Had a Duty to Disclose

Defendants spoke repeatedly and comprehensively about the advantages of the Rionegro property and represented it as PharmaCielo's *main* growing and processing operation. ¶¶ 27-29.  This triggered a duty for Defendants to disclose that the Rionegro property was their *only* revenue producing operation because its Cauca property remained idle.  *See Schueneman*, 840 F.3d at 707-08; *In re Marsh & McLennan Cos. Sec. Litig.*, 501 F. Supp. 2d 452, 469 (S.D.N.Y. 2006).  It is of no moment that Defendants did not affirmatively mention Cauca during the Class Period.  Defs. Br. at 14.  When they purchased the Cauca land in 2017, Defendants told investors they were building greenhouse facilities, *i.e.*, that they would utilize the property.  By characterizing Rionegro as its *main* operation, rather than its *only*

---

[4] Defendants' "puzzle" pleading argument holds no water. Defs. Br. at 9-10. The Complaint is carefully organized; alleges each misleading statement and related omission, including date and the speaker or author thereof; and after each group of misstatements, provides the reasons why those statements were misleading when made.  Courts have repeatedly found this style of pleading permissible. *Bos. Ret. Sys. v. Uber Techs., Inc.,* No. 19-cv-06361-RS, 2020 U.S. Dist. LEXIS 141724, at *13-14 (N.D. Cal. Aug. 7, 2020) (rejecting defendants' puzzle pleading argument even though the complaint is "long, confusing, and meandering," such that "it is difficult to locate the main points within it," because defendants were still capable of "figuring out what statements are alleged to be false."); *In re Acadia Pharm. Inc. Sec. Litig.*, No. 18-CV-01647-AJB-BGS, 2020 U.S. Dist. LEXIS 95464, at *12 (S.D. Cal. June 1, 2020) (rejected puzzle pleading argument though the complaint "does contain large block quotes," because, as here, "Plaintiff's complaint does single out the actual statements that are the basis of Plaintiff's securities fraud claim."). [5] Any references to a "Defs. Ex." herein are offered only to the extent the Court grants Defendants' request for judicial notice as to those exhibits. ECF No. 38.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT, CASE NO.: 2:20-cv-02182-PSG-JC

operation, without revealing the lack of operations in Cauca, Defendants misled investors. Given that the Company has been burning approximately $7 million a quarter, and that prior to 2019, earned no revenue at all from its cannabis products, it depended on the productivity and success of its ***only revenue producing property***.

Defendants' descriptions of Rionegro's "advantages," and touting efforts to scale or ramp up capabilities, while failing to reveal its location on a floodplain and the mold contamination issue "affirmatively led [investors] in the wrong direction" regarding the advantageousness of the property, particularly given the significance of the Rionegro operation. Defs. Br. at 15. Defendants did not need to state that the property "was immune from molds and pests" to render their statements misleading. *Id.* Citing a post-Class Period document extraneous to the Complaint with their own self-serving denials provides no absolution. *Id.*, Defs. Ex. 29.[5]

Statements regarding the construction of the Centre, touted as a key element of the Company's plan to export oils, misled investors given the significant delays and inordinate amount of cash burn the construction process endured. Allegations regarding the significant delays are not "bald assertions," but based on the investigation detailed in the Report as well as the Company's own SEC filings. Indeed, ***to date***, that facility remains uncompleted though the Company represented

---

[5] Any references to a "Defs. Ex." herein are offered only to the extent the Court grants Defendants' request for judicial notice as to those exhibits. ECF No. 38.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT, CASE NO.: 2:20-cv-02182-PSG-JC

*in August 2019* that it was "nearing completion." *See* Defs. Ex. 26.[6]

Defendants' attempts at justifying their omission that the General Extract agreement involved related parties also fall flat. First, the Complaint alleges that companies trading on the OTCQX must to adhere to GAAP and SFAS 57 which require companies to report related party transactions. ¶¶ 35-37. Indeed, the Company reported one (¶ 38)—belying Defendants' claim that they had no reporting obligation. Second, Defendants *admitted that it was a related-party transaction with "conflicts of interest."* [7] Defs. Ex. 29. Suggesting that a former PharmaCielo COO and current registered agent of General Extract, two PharmaCielo directors who are major shareholders of General Extract's parent, and a son of PharmaCielo's co-founder who is a major shareholder at General Extract's parent, are "distantly affiliated" (Defs. Br. at 18) not only stretches the bounds of logic but contradicts Defendants' admission. The related party nature of the transaction is significant given the Company's lack of revenue and cash burn along with the allegation that General Extract *lacked credible operations*.[8] Indeed, not a single Company filing this year even mentions General Extract. *See, e.g.,* Defs. Ex. 26.

---

[6] *Falsity* does not hinge on "who knew about them" (Defs. Br. at 16), *i.e.*, *scienter*.
[7] Defendants' post-Class Period response to the Report concedes the related party issue, but claims that the Board of Directors knew about the conflicts and made sure to conduct the transaction at arm's length (an unverified and self-serving claim).
[8] The Complaint alleges that this rendered statements about *General Extra ct* misleading; arguing that the omission is not inconsistent with *other* misstatements which are alleged as misleading for *other reasons*, misses the mark. Defs. Br. at 18.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT, CASE NO.: 2:20-cv-02182-PSG-JC

Defendants also misled investors regarding efforts to expand in Latin America, not only in Colombia but also Peru. Proffering a scienter argument, Defendants claim there is nothing in the Complaint alleging they knew they'd lose the bidding process in Peru. Defs. Br. at 20. Not so. The Complaint alleges they lost the bid due to their failure to comply with bid requirements, not because of an unforeseen event like another company submitting a better bid. ¶ 63.[9]

Lastly, Defendants' statements regarding the XPhyto deal misled investors because they did not reveal XPhyto's insolvency or its CEO's deleterious track record. Indeed, without the Company's "investment," XPhyto would not have had funds to buy its product.[10]  That the XPhyto transaction was a sham, lacking business rationale, is further evidenced by PharmaCielo's most recent financial statement showing a ***loss of $911,765*** on the investment. *See* Defs. Ex. 26.

The Complaint thus alleges actionable misstatements regarding operations in Rionegro including the lack of operations in Cauca, the advantageousness of the

---

[9] Defendants curiously fault the Complaint for not alleging that PharmaCielo "would not be able to expand its presence in Latin America" because they lost the Peru bid. Defs. Br. at 20. The Complaint does not allege that PharmaCielo could not expand its presence *at all*; it alleges that they misled investors regarding their efforts -and success of those efforts- in expanding their Latin American presence.  Moreover, statements regarding the Company's ***existing presence"*** in Latin America (*e.g.,* ¶ 62) are not forward looking or opinions as Defendants argue. *Id.*
[10] While the Company disclosed the purchase of unsecured XPhyto convertible debentures (Defs. Br. at 20), it did not disclose the nefarious purpose behind this investment, which rendered Defendants' statements misleading.

13

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT, CASE NO.: 2:20-cv-02182-PSG-JC

Rionegro property, construction of the Centre, Latin American expansion efforts, the General Extract agreement, and the XPhyto transaction.

### 2.  The Report Suffices to Establish Falsity

Courts have held that short-seller reports can suffice to establish falsity, when the facts are publicly available and verifiable.  *See In re Banc of Cal. Sec. Litig.*, No. SACV 17-00118 AG (DFMx), 2017 U.S. Dist. LEXIS 145361, at *31 (C.D. Cal. Sept. 16, 2017); *Snellink v. Gulf Resources, Inc* ., 870 F. Supp. 2d 930, 938 (C.D. Cal. 2012).   The Report makes clear that "all information contained herein is accurate and reliable," and, as Defendants concede, that the information "has been obtained from public sources."  Defs. Br. at 25.  Indeed, in upholding a complaint based on a short seller report because the complaint relied on the facts that led to the author's opinion, not just on the opinion itself, the *Banc of California* court noted that, "the Court isn't willing to close the courthouse to any investor who was defrauded simply because the fraud was revealed by a short-seller." *Banc of Cal. Sec. Litig.*, 2017 U.S. Dist. LEXIS 145361, at *31.  Moreover, Defendants' claims of Plaintiff's "blind reliance" on the Report, Defs. Br. at 10 are wrong and contradict the Complaint, which states on Page 1 that Plaintiff conducted an investigation.

### 3.  Defendants' Other Arguments are Misplaced and Unavailing

Unable to counter the well-pled falsity allegations, Defendants cherry pick two statements alleged to be misleading not for what they say, but what they notably omit, and argue that the statements are literally accurate. Defs. Br. at 10-11.  First,

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT, CASE NO.: 2:20-cv-02182-PSG-JC

the untenable premise underlying this argument, contradicting the plain language of § 10(b) and the PSLRA, is that omissions "cannot support a § 10(b) claim." Defs. Br. at 11. Second, "statements, although literally accurate, can become, through their context and manner of presentation, devices which mislead investors." *In re Amgen Inc. Sec. Litig.*, 544 F. Supp. 2d 1009, 1034 (C.D. Cal. 2008). The disclosure required by the securities laws is therefore measured not by literal truth, but by the ability of the material to accurately inform rather than mislead prospective buyers. *Id*. Statements mislead if they "create an impression of a state of affairs which differs in a material way from the one that actually exists." *Id*.

Similarly, Defendants' arguments that certain of their misstatements are corporate optimism miss the mark. The first two statements Defendants selectively quote as "optimistic" tout the Company's agreement with General Extract, a company with no apparent credible operations. While touting their "competitive edge" ***as fact*** due to that agreement (¶ 54), and listing, ***as fact***, the elements of its business that "position the Company to capture market share" (¶ 66), Defendants failed to reveal a significant factor that led to the agreement — related parties. This went beyond "subjective or emotive descriptions" that generally constitute puffery. *See Rodriguez v. Gigamon Inc.,* 325 F. Supp. 3d 1041, 1055 (N.D. Cal. 2018). Moreover, describing the Rionegro property as "perfect," is stronger than mere optimism, particularly given the lack of reasonable basis for the statement. *See also In re Dura Pharm., Inc. Sec. Litig.*, 452 F. Supp. 2d 1005, 1033 (S.D. Cal. 2006).

15

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT, CASE NO.: 2:20-cv-02182-PSG-JC

Given that the Rionegro facility, it's only operable property, is on a floodplain and is contaminated, Defendants lacked any reasonable basis for calling it "perfect."

*See In re Quality Sys. Inc. Sec. Litig.*, 865 F.3d 1130, 1141-42 (9th Cir. 2017) (holding that statements of "current facts" are not protected even when mixed with other, forward-looking statements); *Prodanova v. H.C. Wainwright & Co.* No. LA CV17-07926 JAK (ASx), 2018 WL 8017791, at *12-13 (C.D. Cal. Dec. 11, 2018) (safe harbor does not apply where statement is "misleading because it omitted a disclosure of a present fact").

### B.       The Complaint Adequately Pleads Scienter

The relevant inquiry in assessing scienter is whether all of the facts alleged, "taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 323 (2007).  The inference "need not be irrefutable … or even the most plausible." *Id.* at 324.  An inference of scienter is "strong," and a motion to dismiss must be denied, where "a reasonable person would deem [it]… cogent and at least as compelling as any opposing inference." *Id.*  "[A] tie goes to the Plaintiff." *In re Amgen Inc. Sec. Litig*, No. CV 07–2536 PSG (PLAx), 2014 WL 12585809, at *8 (C.D. Cal. Aug. 4, 2014).  Bespeaking the frailty of their arguments, Defendants dedicate a mere two pages to attacking scienter, but don't actually address a single allegation of scienter from in the Complaint.  Instead they focus on irrelevancies such as the lack of confidential witness allegations or

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT, CASE NO.: 2:20-cv-02182-PSG-JC

motive—none of which are necessary to plead scienter. *No. 84 Emp'er-Teamster Joint Council Pension Tr. Fund,* 320 F.3d at 944; *In re Iso Ray Sec. Litig.* , 189 F. Supp. 3d 1057, 1077-79 (E.D. Wash. 2016).   The Complaint's allegations, considered holistically, create a compelling inference of scienter.

*Admissions:* Defendants have admitted to knowing at the time of execution that the General Extract transaction involved related parties and created conflicts of interest.  *See* Defs. Ex. 29 (conceding that the Board knew about and considered these issues while Defendant Attard sat on the Board).  Defendants also admitted to knowing Cauca is empty, despite stating that they were building greenhouse facilities on the property in 2017 (with no update to the contrary). *Id.* These admissions contribute to the inference of scienter as to statements regarding General Extract and PharmaCielo's Colombian operations. *See, e.g., Fresno Cty. Emps.' Ret. Ass'n v. comScore, Inc.,* 268 F. Supp. 3d 526, 551 (S.D.N.Y. 2017).*Core operations*: PharmaCielo has **one operating subsidiary-** PharmaCielo Colombia. ¶ 26. Its **only business** is cultivating, processing and supplying medicine-grade cannabis oil extracts, which it does at its "headquarters and principal cultivating facility" in Rionegro, *its only revenue producing operation* . ¶¶ 26-27. The Company **did not earn revenue prior** to 2019 and **burned $7 million in cash** per quarter.  ¶ 30. The most logical inference is that the Individual Defendants who led the Company knew about (or at minimum recklessly disregarded), delays in constructing the Centre, its location on a floodplain, the mold contamination, that Cauca remains idle, that its

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT, CASE NO.: 2:20-cv-02182-PSG-JC

*$3 million* agreement with General Extract involved related parties (particularly given the agreement's size and the Company's need for cash and revenue), that the XPhyto transaction was a sham, and issues with Latin American expansion efforts. *See In re Iso Ray,* 189 F. Supp. 3d at 1079. As the leaders of the Company, the Individual Defendants had access to information and, as authors of PharmaCielo's filings and press releases, had a duty to inquire, investigate, familiarize and reassure themselves as to the truth of their statements. ¶ 22; *See In re Refco, Inc. Sec. Litig.,* 503 F. Supp. 2d 611, 649 (S.D.N.Y. 2007). Their failure to do so amounts to recklessness. Indeed, an allegation of "falsity may itself be indicative of scienter where it is combined with allegations regarding a management's role in the company that are particular and suggest that the defendant had actual access to the disputed information, and where the nature of the relevant fact is of such prominence that it would be absurd to suggest that management was without knowledge of the matter." *Zucco Partners, LLC v. Digimarc Corp.,* 552 F.3d 981, 1000 (9th Cir. 2009); *see also Scott v. ZST Dig. Networks, Inc.,* 896 F. Supp. 2d 877, 892 (C.D. Cal 2012).

## C. The Complaint Adequately Pleads Reliance

"The element of reasonable reliance ordinarily is a fact-intensive issue not proper for determination as a matter of law at the pleading stage, but one more appropriate for the fact-finder after discovery has developed a sufficient evidentiary record." *Maz Partners v. First Choice Healthcare Sols., Inc.*, No. 6:19-cv-619-Orl-40LRH, 2019 U.S. Dist. LEXIS 184611, at *48 (M.D. Fla. Oct. 16, 2019); *Maloul*

*v. Berkowitz*, No. 07 Civ. 8525(LBS), 2008 WL 2876532, at *2 (S.D.N.Y. July 23, 2008). Nonetheless, reliance is sufficiently pled. Plaintiff's certifications, incorporated into the Complaint, (¶ 14; ECF No. 16-4), establish temporal proximity between the misstatements and their purchases, demonstrating reliance.[11]

Defendants are also wrong that the market for OTCQX securities like PharmaCielo can never be efficient; nor have Defendants provided any basis for their insistence that Plaintiff *prove* market efficiency at the pleading stage. *See In re Empyrean Bioscience, Inc. Sec. Litig.*, 255 F. Supp. 2d 751, 762-63 (N.D. Ohio 2003) (finding that Empyrean, trading on the OTC, "traded on an efficient market" and ruling that "plaintiffs need not *prove* that the market is efficient at the pleading stage"). The Complaint *pleads* that PharmaCielo actively traded on the OTCQX, an efficient market, and proffers allegations supporting that efficiency. ¶ 91.

In any event, Plaintiff is entitled to a presumption of reliance under *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because this is "primarily a nondisclosure case." *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, MDL No. 2672 CRB (JSC), 2019 U.S. Dist. LEXIS 166832, at *314 (N.D. Cal. Sept. 26, 2019); ¶ 93. This case is premised on Defendants' ***failure***

---

[11] The Complaint alleges that Defendants issued misstatements on June 21, July 25, August 1, August 27, September 25, November 25, and December 14, 2019. ¶¶ 42, 45, 47, 49, 51, 53, 57–58, 62. Plaintiff's certifications establish purchases of PharmaCielo securities on June 25, between July 25 and 26, between August 2 and August 9, between August 27 and September 3, and on December 16, 2019.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS THE AMENDED COMPLAINT, CASE NO.: 2:20-cv-02182-PSG-JC

*to disclose* that the Rionegro property is on a floodplain and is contaminated, that significant construction delays impeded completion of the Centre by a predictable timeframe, that with Cauca unutilized the Rionegro operation constituted the Company's only revenue producing operation, that the General Extract agreement involved related parties, that the XPhyto transaction was a sham, and that Latin American expansion efforts faced obstacles due to the Company's failure to meet bidding requirements. ¶¶ 8, 41, 44, 46, 48, 52, 55, 61, 63, 67, 69, 75.  Even the affirmative misstatements alleged in the Complaint "are tethered to the[se] omission[s] that [are] at the heart of the case." *Volkswagen*, 2019 U.S. Dist. LEXIS 166832, at *315-16.  While arguing that this is not an omissions case, Defendants concede multiple times that the Complaint alleges "defendants' statements were misleading because they omitted certain adverse facts." Defs. Br. at 13; 16, 19 (acknowledging the Complaint alleges omissions).  Reliance is sufficiently pled.**The Complaint Adequately Pleads Loss Causation**

Loss causation is subject to the less rigorous pleading requirement of Rule 8(a)(2) and is "not meant to impose a great burden upon a plaintiff." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347 (2005). The Complaint alleges that PharmaCielo shares fell in response to new information in the *MBD* article and Report revealing the fraud.  ¶¶ 64-65; 76-84. Such allegations suffice to create a connection between the misstatements and the decline of PharmaCielo's shares following the corrective disclosures. *Constr. Workers Pension Tr. Fund v. Genoptix, Inc.*, No. 10cv2502-

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT, CASE NO.: 2:20-cv-02182-PSG-JC

CAB (DHB), 2013 U.S. Dist. LEXIS 49716, at *24-25 (S.D. Cal. Mar. 22, 2013).[12]

Defendants' citation to *Eng v. Edison Int'l* is misleading. *Eng* did not hold that loss causation must be "predicated on double digit declines." Defs. Br. at 25. Indeed, the *Eng* Court declined to find loss causation because *all of the corrective disclosures* alleged caused "scanty .79% to 2.71% declines." *Eng v. Edison Int'l*, No. 3:15-cv-01478-BEN-KSC, 2017 U.S. Dist. LEXIS 69196, at *11 (S.D. Cal. May 5, 2017). Here, even the *partial* disclosure caused a decline almost twice the percentage of the largest decline in *Eng.* The *final* corrective disclosure caused a staggering decline of ***36.14%***, a fact Defendants notably omit from their argument. *In re Amgen Inc. Sec. Litig.*, No. CV 07-2536 PSG (PLAx), 2014 U.S. Dist. LEXIS 183034, at *50 (C.D. Cal. Aug. 4, 2014) ("proof of such a defense is generally limited to later phases in the litigation, such as summary judgment or trial"); *Children's Hosp. & Med. Ctr. Found. of Omaha v. Countrywide Fin. Corp.*, No. CV-11-02056-MRP-MAN, 2011 U.S. Dist. LEXIS 166291, at *25 (C.D. Cal. Aug. 22, 2011).

Moreover, Defendants' perfunctory assertion fails to identify *which* parts of

---

[12] Plaintiff had no obligation to plead that the decline *did not result* from parts of the Report not directly quoted in the Complaint as Defendants wrongly argue (Defs. Br. at 25 n.19). *See City of Miami Gen. Emps.' & Sanitation Emps.' Ret. Tr. v. RH. Inc.*, 302 F. Supp. 3d 1028, 1046 (N.D. Cal. 2018) ("plaintiffs are not 'required to show "that a misrepresentation was the sole reason for the investment's decline in value" in order to establish loss causation'").

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT, CASE NO.: 2:20-cv-02182-PSG-JC

the Report, if any, were previously made public, *when*, if ever, they were made public, *how*, if at all, they were made public, *where*, if at all, they were previously disclosed, and by *whom*.  Regardless, many of the facts upon which the Report bases its conclusions are not easily obtainable by the general public (*e.g.*, surveillance photos of properties in Colombia) and involves the results of an investigation that included non-public information (*e.g.*, interviews), as well as analysis and conclusions that constitute new information *See Snellink,* 870 F. Supp. 2d at 942 ( "A short seller report may be used to establish loss causation," even when based on public information); *Scott v. ZST Dig. Networks, Inc.*, No. CV 11-03531 GAF (JCx), 2012 U.S. Dist. LEXIS 19392, at *32 (C.D. Cal. Feb. 14, 2012) (finding loss causation based on a short seller report, despite defendants' truth on the market defense); *Pub. Emps.' Ret. Sys. of Miss. v. Amedisys, Inc*, 769 F.3d 313 (5th Cir. 2014) ("The underlying information, although publicly available, 'had little to no probative value in its native state'; someone needed to put the pieces together before the market could appreciate its import."); *In re Winstar Commc'ns,* No. 01 CV 3014 (GBD), WL 473885, at *14-15 (S.D.N.Y. Feb. 27, 2006).

Moreover, the magnitude of the decline demonstrates that investors had no awareness of the supposedly public facts on which the Report is based. *See Citiline*

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS THE AMENDED COMPLAINT, CASE NO.: 2:20-cv-02182-PSG-JC

*Holdings, Inc. v. iStar Fin. Inc.*, 701 F. Supp. 2d 506, 515 (S.D.N.Y. 2010).[13]

### E.     Section 10(b) Covers Plaintiff's Claim

Plaintiff's purchases qualify as "domestic" transactions under either prong of the test in *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 267 (2010).

First, PharmaCielo traded in the U.S. on the OTCQX over-the-counter market, which is part of the OTC Markets Group, under the trading symbol "PCLOF," and previously "PHCEF."  ¶¶ 16, 35, 42, 85,86, 91.  Both members of the Lead Plaintiff group purchased their PharmaCielo securities on this market. *See* ECF No. 16-4. Courts have held that alleging a company is listed on the OTCQB market "constitute[s] an allegation that [the company] is traded on a domestic exchange," satisfying *Morrison*.  *Rubenstein v. Cosmos Holdings, Inc.*, No. 19 Civ. 6976 (KPF), 2020 U.S. Dist. LEXIS 121773, at *29 (S.D.N.Y. July 10, 2020). *See also SEC v. Ficeto*, 839 F. Supp. 2d 1101 (C.D. Cal. 2011).  Unlike other OTC markets, where companies do not need to take any action for broker-dealers to quote their securities, to upgrade to the OTCQX [and OTCQB] market[s], a company must pay fees and comply with additional disclosure requirements, like companies listed on other domestic exchanges. The OTCQX exchange, with its heightened requirements and

---

[13] As explained herein, the Complaint has sufficiently alleged a viable Section 10(b) claim.  Given that Defendants' sole challenge to Section 20(a) liability is that there is no predicate Section 10(b) liability, their motion to dismiss the Section 20(a) claim must fail. *Constr. Workers Pension Tr. Fund*, 2013 U.S. Dist. LEXIS 49716, at *25.

N.Y. headquarters, is therefore a "domestic exchange" under *Morrison*. *See United States v. Isaacson*, 752 F.3d 1291, 1299 (11th Cir. 2014) (discussing an expert report detailing how OTC "exchanges [were] 'similar to' the NYSE and the NASDAQ").

Second, Plaintiff can show irrevocable liability, though this is a fact intensive inquiry not suited for a motion to dismiss. *See Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 68, 70 (2d Cir. 2012); *Atlantica Holdings, Inc. v. BTA Bank JSC*, 2015 U.S. Dist. LEXIS 3209, at *21 (S.D.N.Y. Jan. 12, 2015). Both Lead Plaintiff members reside in the U.S. and transacted in the U.S. Both transacted via TD Ameritrade, a U.S. broker that only lists U.S. offices. These allegations suffice under *Morrison*. *See, e.g., Giunta v. Dingman*, 893 F.3d 73, 80 (2d Cir. 2018); *Myun-Uk Choi v. Tower Research Capital LLC*, 890 F.3d 60, 67 (2d Cir. 2018).[14]

## CONCLUSION

Therefore, for the reasons stated herein, Plaintiff respectfully requests that the Court deny Defendants' motion in its entirety.

Dated: December 21, 2020                          Respectfully submitted,

                                                  **POMERANTZ LLP**

                                                  *s/ Tamar A. Weinrib*
                                                  Jeremy A. Lieberman
                                                  (admitted *pro hac vice*)
                                                  Tamar A. Weinrib

---

[14] In the event the Court dismisses some or all of the claims alleged, Plaintiffs respectfully request leave to replead. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT, CASE NO.: 2:20-cv-02182-PSG-JC

(admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
jalieberman@pomlaw.com
taweinrib@pomlaw.com

**POMERANTZ LLP**
Jennifer Pafiti
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
(admitted *pro hac vice*)
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com

*Lead Counsel for Plaintiff*

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
Peretz Bronstein
(*pro hac vice* application forthcoming)
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Additional Counsel for Howard Anderson*

**THE SCHALL FIRM**
Brian Schall

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS THE AMENDED COMPLAINT, CASE NO.: 2:20-cv-02182-PSG-JC

Rina Restaino
1880 Century Park East, Suite 404
Los Angeles, CA 90067
Telephone: 310-301-3335
Facsimile: 877-590-0482
brian@schallfirm.com

***Additional Counsel for Pamela Que***

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT, CASE NO.: 2:20-cv-02182-PSG-JC