COOLEY LLP
KOJI F. FUKUMURA (189719)
(kfukumura@cooley.com)
PETER M. ADAMS (243926)
(padams@cooley.com)
LINH K. NGUYEN (305737)
(lknguyen@cooley.com)
4401 Eastgate Mall
San Diego, California 92121-1909
Telephone:  +1 858 550-6000
Facsimile:  +1 858 550-6420

*Attorneys for Defendants PharmaCielo Ltd.,
David Attard, Scott Laitinen, and David
Gordon*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| IN RE PHARMACIELO LTD. SECURITIES LITIGATION | Case No. 2:20-cv-02182-PSG-JC |
| | **REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT** |
| | Date: February 22, 2021 Time: 1:30 p.m. Court: 6A Judge: Hon. Philip S. Gutierrez |

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

**REPLY ISO MOTION TO DISMISS**
**CASE NO. 2:20-CV-02182-PSG-JC**

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...................................................................................... 1

II.   THE EXCHANGE ACT DOES NOT APPLY TO PLAINTIFFS' CLAIMS. ................................................................................................. 2

III.  PLAINTIFF HAS NOT PLED ANY INFERENCE OF SCIENTER. ........... 2

IV.   PLAINTIFF HAS NOT PLED FALSITY. ................................................. 5

    A.   Plaintiff Cannot Rely on the Short-Seller Report to Allege Falsity. .............................................................................................. 5

    B.   The Challenged Statements Are Not Actionable As a Matter of Law. ................................................................................................... 6

    C.   Plaintiff Fails to Identify Any Materially Misleading Statements. ...... 8

V.    PLAINTIFF MAY NOT INVOKE A PRESUMPTION OF RELIANCE. ......................................................................................... 11

VI.   PLAINTIFF HAS NOT PLED LOSS CAUSATION................................ 12

VII.  CONCLUSION ...................................................................................... 12

FIRM NAME
ATTORNEYS AT LAW
OFFICE ADDRESS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aetna, Inc. Sec. Litig.*,
    617 F.3d 272 (3d Cir. 2010) ...................................................................................... 5

*In re Banc of Cal. Sec. Litig.*,
    2017 WL 3972456 (C.D. Cal. Sept. 6, 2017) ............................................................ 6

*Brody v. Transitional Hosps. Corp.*,
    280 F.3d 997 (9th Cir. 2002) ................................................................................. 8, 9

*Camp v. Qualcomm Inc.*,
    2020 WL 1157192 (S.D. Cal. Mar. 10, 2020) ........................................................... 4

*Cement Masons & Plasterers Joint Pension Tr. v. Equinix, Inc.*,
    2012 WL 685344 (N.D. Cal. Mar. 2, 2012) ............................................................... 3

*City of Miami Gen. Emps.' & Sanitation Emps.' Ret. Tr. v. RH, Inc.*,
    302 F.Supp.3d 1028, 1046 (N.D. Cal. 2018) .......................................................... 12

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
    856 F.3d 605 (9th Cir. 2017) ...................................................................................... 7

*Diaz v. N. Dynasty Minerals Ltd.*,
    2018 WL 5099749 (C.D. Cal. Apr. 30, 2018) .................................................... 1, 5, 6

*Diaz v. N. Dynasty Minerals Ltd.*,
    2019 WL 1873291 (C.D. Cal. Feb. 22, 2019), *aff'd*, *Nozak v. N. Dynasty Minerals Ltd*, 804 F. App'x 732 (9th Cir. 2020) ................................................. 1, 6

*Eminence Cap., LLC v. Aspeon, Inc.*,
    316 F.3d 1048 (9th Cir. 2003) .................................................................................... 3

*Eng v. Edison International*,
    2017 WL 1857243, at *4 (S.D. Cal. May 5, 2017) ................................................. 12

*Gammel v. Hewlett-Packard Co.*,
    905 F.Supp.2d 1052 (C.D. Cal. 2012) ........................................................................ 7

*Gompper v. VISX, Inc.*,
    298 F.3d 893 (9th Cir. 2002) ...................................................................................... 5

*Gregory v. ProNAi Therapeutics Inc.*,
    297 F.Supp.3d 372 (S.D.N.Y. 2018) .......................................................................... 7

*In re Iso Ray, Inc. Sec. Litig.*,
    189 F.Supp.3d 1057 (E.D. Wash. 2016) ..................................................................... 5

**TABLE OF AUTHORITIES**
(continued)

**Page**

*In re Lululemon Sec. Litig.*,
14 F.Supp.3d 553 (S.D.N.Y. 2014), *aff'd,* 604 F. App'x 62 (2d Cir. 2015)........9

*Matrixx Initiatives, Inc. v. Siracusano*,
563 U.S. 27 (2011) ...............................................................................................8

*McGovney v. Aerohive Networks, Inc.*,
367 F.Supp.3d 1038 (N.D. Cal. 2019)..................................................................9

*In re Medicis Pharm. Corp. Sec. Litig.*,
689 F.Supp.2d 1192 (D. Ariz. 2009)....................................................................3

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
540 F.3d 1049 (9th Cir. 2008) .............................................................................2

*Morrison v. National Australia Bank Ltd.*,
561 U.S. 247, 267 (2010) .....................................................................................2

*Neborsky v. Valley Forge Composite Techs., Inc.*,
2014 WL 1705522 (S.D. Cal. Apr. 28, 2014) ......................................................7

*No. 84 Employer-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*,
320 F.3d 920 (9th Cir. 2003) ...............................................................................5

*Nozak v. N. Dynasty Minerals Ltd.*,
804 F. App'x 732 (9th Cir. 2020).................................................................1, 4, 5

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
575 U.S. 175 (2015) .......................................................................................7, 11

*In re OmniVision Techs., Inc. Sec. Litig.*,
937 F.Supp.2d 1090 (N.D. Cal. 2013)..................................................................9

*Fresno Cnty. Emps' Ret. Ass'n v. comScore, Inc.*,
268 F.Supp.3d 526 (S.D.N.Y. 2017).....................................................................4

*Or. Pub. Emps.' Ret. Fund v. Apollo Grp., Inc.*,
774 F.3d 598 (9th Cir. 2014)..............................................................................12

*Pub. Emps.' Ret. Sys. of Miss. v. Amedisys, Inc.*,
769 F.3d 313 (5th Cir. 2014)..............................................................................12

*In re Rigel Pharms. Inc. Sec. Litig.*,
697 F.3d 869 (9th Cir. 2012)................................................................................4

*Rodriguez v. Gigamon Inc.*,
325 F.Supp.3d 1041 (N.D. Cal. 2018)............................................................7, 10

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Roman v. UBS Fin. Servs., Inc. of P.R.,*
2017 WL 3608238 (D.P.R. Aug. 21, 2017) ........................................................ 11

*Ronconi v. Larkin,*
253 F.3d 423 (9th Cir. 2001) ............................................................................... 3

*Schneider v. Cal. Dep't of Corr.,*
151 F.3d 1194 (9th Cir. 1998) ......................................................................... 2, 4

*Scott v. ZST Digit. Networks, Inc.,*
896 F.Supp.2d 877 (C.D. Cal. 2012) .............................................................. 5, 12

*ScripsAmerica, Inc. v. Ironridge Glob. LLC,*
119 F.Supp.3d 1213 (C.D. Cal. 2015) ................................................................ 11

*Snellink v. Gulf Res., Inc.,*
870 F.Supp.2d 930 (C.D. Cal. 2012) .............................................................. 6, 12

*In re St. Jude Med., Inc., Sec. Litig.,*
629 F.Supp.2d 915 (D. Minn. 2009) .................................................................... 7

*Stoyas v. Toshiba Corp.,*
896 F.3d 933 (9th Cir. 2018) ............................................................................... 2

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
551 U.S. 308 (2007) ............................................................................................. 3

*In re Tibco Software, Inc. Sec. Litig.,*
2006 WL 1469654 (N.D. Cal. May 25, 2006) ..................................................... 3

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.,*
2017 WL 3058563 (N.D. Cal. July 19, 2017) ................................................... 12

*Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.,*
2019 WL 4727338 (N.D. Cal. Sept. 26, 2019) .............................................. 11, 12

*Weller v. Scout Analytics, Inc.,*
230 F.Supp.3d 1085 (N.D. Cal. 2017) ................................................................. 8

*In re Winstar Commc'ns.,*
2006 WL 473885 (S.D.N.Y. Feb. 27, 2006) ...................................................... 12

*Zucco Partners, LLC v. Digimarc Corp.,*
552 F.3d 981 (9th Cir. 2009) ............................................................................... 5

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## I.   INTRODUCTION

Plaintiff's opposition (the "**Opposition**") makes one thing clear: this litigation is based on nothing more than an unsubstantiated short-seller report (the "**Report**") that Plaintiff has repackaged as securities fraud. Devoid of particularized facts, the Opposition ignores most of the arguments in Defendants' Motion to Dismiss (the "**Motion**"). Instead, Plaintiff rehashes its conclusory allegations, cites inapposite cases, and tries to rewrite the Amended Complaint ("**AC**"). Plaintiff's brief, however, cannot transform a defective complaint into one that clears the high pleading hurdles imposed by Rule 9(b) and the PSLRA. As described below and in the Motion, the AC's defects are legion.

First, Plaintiff has not pled a claim covered by the Exchange Act, and it cannot escape this shortcoming by alleging "facts" that are not pled in the complaint. Second, Plaintiff concedes that there are no particularized facts in the AC to support scienter as to any Individual Defendant. Instead, the Opposition defaults to Defendants' "access to information" and the core operations doctrine. But neither theory is accompanied by specific factual allegations regarding each Defendant's exposure to information contrary to his public statements. The Opposition also attempts to rely on the Independent Review report (the "**Review**"), but mischaracterizes its findings. There are no "admissions" in it, much less anything suggesting that any Individual Defendant intended to deceive PharmaCielo investors when he spoke. Third, Plaintiff's falsity arguments fail because the AC is based on a short-seller report which, in turn, hinges on anonymous sources that the AC does not describe. This Court confronted this exact issue on two prior occasions and, in both cases, granted defendants' motion to dismiss because the Court was unable to evaluate the reliability of the short-seller allegations. *See Diaz v. N. Dynasty Minerals Ltd.*, 2018 WL 5099749, at \*6 (C.D. Cal. Apr. 30, 2018) ("*Diaz I*") (Gutierrez, P.), and *Diaz v. N. Dynasty Minerals Ltd.*, 2019 WL 1873291, at \*1 (C.D. Cal. Feb. 22, 2019) ("*Diaz II*"), *aff'd*, 804 F. App'x 732 (9th Cir. 2020). And even if Plaintiff could

rely on the Report (it cannot), the bare allegations in the AC do not come close to stating a securities fraud claim. <u>Fourth</u>, Plaintiff cannot invoke the fraud-on-the-market or the *Affiliated Ute* presumption and, therefore, has not pled reliance. The AC is devoid of facts to support the efficiency of the OTCQX market, which the Opposition does not contest. And, the *Affiliated Ute* presumption is generally limited to cases where there are no alleged misstatements on which a plaintiff could have relied. <u>Fifth</u>, Plaintiff has not adequately pled loss causation. The alleged corrective disclosures did not reveal any previously undisclosed fraud and the Report's aggregation of public information did not constitute new information.

## II. THE EXCHANGE ACT DOES NOT APPLY TO PLAINTIFFS' CLAIMS.

The Opposition contends that Plaintiff's purchases of PharmaCielo stock qualify as domestic transactions under both prongs of the test outlined in *Morrison v. National Australia Bank Ltd*. *See* 561 U.S. 247, 267 (2010). (Opp. at 24–25.) Plaintiff is wrong. OTC Link does not qualify as a "domestic exchange" under the first prong. *Stoyas v. Toshiba Corp*., 896 F.3d 933, 936, 943–44 (9th Cir. 2018). *Stoyas* is good law and binding in this Circuit. As for the second prong, the Opposition argues that Plaintiff's irrevocable liability was incurred in the United States (*id*.), but cites **no such allegations in the AC**. This is fatal because the Court "may not . . . take into account additional facts asserted in [an opposition], because such memoranda do not constitute pleadings." *Schneider v. Cal. Dep't of Corr*., 151 F.3d 1194, 1197 (9th Cir. 1998).

## III. PLAINTIFF HAS NOT PLED ANY INFERENCE OF SCIENTER.

To avoid dismissal, Plaintiff must adequately plead particularized facts evidencing a "***strong inference*** that the defendant acted with an intent to deceive." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008). "To meet this pleading requirement, the complaint must contain allegations of specific contemporaneous statements or conditions that demonstrate the intentional or the deliberately reckless false or misleading nature of the statements when made."

*Ronconi v. Larkin*, 253 F.3d 423, 432 (9th Cir. 2001). When evaluating whether the allegations create a "strong" inference, the Court "must" balance the competing innocent inferences, and "must" consider the entire complaint, including documents incorporated by reference and subject to judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314, 321 (2007). A complaint will survive dismissal "only if" the inference of scienter is "cogent and at least as compelling as any opposing inference." *Id*. at 324. These requirements must be met "with respect to each act or omission alleged," and for "each defendant[]." *In re Medicis Pharm. Corp. Sec. Litig.*, 689 F.Supp.2d 1192, 1214 (D. Ariz. 2009). "This is not an easy standard to comply with—it was not intended to be—and plaintiffs must be held to it." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

Plaintiff does not come close to satisfying these exacting requirements. The AC is devoid of any indicia of fraudulent intent—*e.g.*, confidential witnesses, defendant admissions, internal meetings, specific contemporaneous documents, suspicious stock sales, or a plausible motive. The Opposition concedes this, but tries to sidestep this failing by calling such allegations "irrelevancies," (Opp. at 18.) Not so. The law is clear that the absence of such particularized facts undercuts any inference of scienter. *See, e.g.*, *Cement Masons & Plasterers Joint Pension Tr. v. Equinix, Inc.*, 2012 WL 685344, at *8 (N.D. Cal. Mar. 2, 2012) (allegations of fraud "undercut" where plaintiffs do not allege that any defendant engaged in improper stock sales); *In re Tibco Software, Inc. Sec. Litig.*, 2006 WL 1469654, at *21 (N.D. Cal. May 25, 2006) (dismissal proper where, among other things, "Plaintiffs have not even shown that Defendants were *motivated* to commit fraud.").

Plaintiff is left only with generic assertions regarding Defendants' access to information and the "core operations" doctrine, which plainly fall short of the "strong" inference required by the PSLRA. (Opp. at 18–19.) Allegations that Defendants had access to the relevant information due to their positions in the company do not create ***any*** inference of scienter without specific facts showing that

a Defendant believed his statements were false or misleading when made. *See In re Rigel Pharms. Inc. Sec. Litig.*, 697 F.3d 869, 883–85 (9th Cir. 2012). The Opposition, however, identifies no such facts. Similarly, Plaintiff cannot invoke the "core operations" doctrine without "***detailed and specific*** allegations about management's exposure to factual information" that contradicted their public statements. *Nozak v. N. Dynasty Minerals Ltd.*, 804 F. App'x 732, 734 (9th Cir. 2020).

Recognizing these weaknesses, the Opposition pivots to the Review—*i.e.*, claiming Defendants somehow admitted to misconduct because they knew that the Cauca land was empty and the General Extract agreement was a related party transaction. (Opp. at 12, 18.) Not so. Plaintiff not only mischaracterizes the Review,[1] but it also ignores that absence of allegations in the AC about that inquiry and its findings.[2] *See Schneider*, 151 F.3d at 1197 (courts "may not . . . take into account additional facts asserted in [an opposition]"). And regardless, Plaintiff's argument incorrectly conflates ***knowledge*** with ***scienter***. Knowledge of an omitted fact alone is insufficient to plead scienter; Plaintiff must plead facts indicating "Defendants knew their statements were false or misleading." *Camp v. Qualcomm Inc.*, 2020 WL 1157192, at *6 (S.D. Cal. Mar. 10, 2020) (granting motion to dismiss because "[t]here are no allegations in the complaint supporting the suggestion that Defendants believed their statements were false").[3] The AC contains no such facts.[4]

---

[1] Defendants did **not** "admit[] that [the General Extract agreement] was a related-party transaction." (Opp. at 12, 18.) The Review states that conflicts of interest related to the agreement were disclosed and dealt with to ensure the transaction was arms-length. (Ex. 29 at 346.) This is hardly an admission that PharmaCielo is subject to GAAP, much less that General Extract qualified as a related party under the specific definition in SFAS 57. (*See* Mot. 18.) Likewise, the Review merely confirms that the Cauca land is undeveloped; it does not say anything about the Individual Defendants and their state of mind. (Ex. 29 at 343.)

[2] The Opposition attempts to rely on the findings in the Review, while simultaneously urging the Court not to consider the Review. (*See* Opp. at 2, 10 n.5.) Plaintiff cannot have its cake and eat it too.

[3] In fact, the Review states that the General Extract agreement did not qualify as a "related party transaction" under applicable Canadian law (Ex. 29 at 346), which supports the "opposing inference that Defendants did not think disclosure was required." *See Camp*, 2020 WL 1157192, at *6.

[4] All the cases cited in the Opposition in support of scienter are distinguishable. *See Fresno Cnty. Emps.' Ret. Ass'n v. comScore, Inc.*, 268 F.Supp.3d 526, 551–55

With no well-pled facts supporting *any* inference of scienter, much less a strong one, Plaintiff urges the Court to view their guesswork "holistically." (Opp. at 18.) In so doing, this Court "must consider *all* reasonable inferences to be drawn from the allegations, including inferences unfavorable to the plaintiffs." *Gompper v. VISX, Inc.*, 298 F.3d 893, 897 (9th Cir. 2002) (emphasis original). And here, zero plus zero plus zero does not equal one, even when viewed holistically.

## IV.   PLAINTIFF HAS NOT PLED FALSITY.

### A.   Plaintiff Cannot Rely on the Short-Seller Report to Allege Falsity.

The overriding obstacle to Plaintiff's claims is that nearly every allegation in the AC is lifted from the Report, which is uncorroborated and derived from anonymous sources that are not described in detail.[5] (*See* Mot. at 10.) This Court dealt with this exact issue in *Diaz I*, where it granted defendants' motion to dismiss because the "basis [of] the [plaintiffs' complaint was] the Kerrisdale Report," which "itself was derived from confidential sources" that were "not described with any identifying information." 2018 WL 5099749, at *6–7 (When "the confidential sources whose statements comprise the basis of the [short-seller report] are not described" in detail,

(S.D.N.Y. 2017) (finding scienter where plaintiffs alleged defendants explicitly "admi[tted] . . . to misconduct" and sold stock totaling $53 million); *No. 84 Employer-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 939-44 (9th Cir. 2003) (finding scienter where plaintiff alleged facts about defendants' exposure to contrary information through internal meetings, and defendants sold 100% of their shares in the company); *In re Iso Ray, Inc. Sec. Litig.*, 189 F.Supp.3d 1057, 1076 (E.D. Wash. 2016) (finding scienter where defendants' press release clearly misrepresented the results of a medical journal study evaluating defendants' cancer treatment); *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1000 (9th Cir. 2009) (plaintiffs unable to invoke "core operations" doctrine because SAC lacked "particular details" regarding Defendants' exposure to contrary information); *Scott v. ZST Digit. Networks, Inc.*, 896 F.Supp.2d 877, 892-93 (C.D. Cal. 2012) (finding scienter where plaintiff alleged in "detail" how defendant helped ZST conduct a fraudulent public offering in exchange for over 800k shares of the company's common stock).
[5] Neither the AC nor the Opposition cites a single analyst report commenting on the Report or questioning PharmaCielo's prior disclosures. This is telling. For example, if General Extract had no credible operations, XPhyto transaction was a sham, and investors were misled, then why no corroborating statements or commentary from analysts? Plaintiff does not say. *See, e.g., In re Aetna, Inc. Sec. Litig.*, 617 F.3d 272, 275 (3d Cir. 2010) (noting that plaintiffs "corroborate[d] their allegations" with "cite[s] [to] contemporaneous reports by financial analysts and journalists who speculated that Aetna was boosting its market share by underpricing premiums").

plaintiff's reliance on that report "fails to meet the falsity requirements of the PSLRA"). Plaintiffs amended and this Court again dismissed (and the Ninth Circuit affirmed) because the complaint did not provide details about the confidential sources or "plead[] additional facts that corroborate[d] the accounts of the anonymous sources." *Diaz II*, 2019 WL 1873291, at *4–6, *aff'd Nozak*, 804 F. App'x at 733–34.

The Opposition does not address *Diaz* (Opp. at 17–20; Mot. 10, 22), and instead argues that descriptions and corroborating details are unnecessary because the facts from the Report "are publicly available and verifiable." (Opp. at 14.) Not so. Although the Report cites to public documents for some supporting facts, the core allegations that Plaintiff borrowed are based on anonymous sources and speculation. (Ex. 21 at 217–18, 224–33, 237–41, 243–45.) The claims about Rionegro are derived from anonymous sources, and the Report does not identify any publicly available documents that might verify them. (Ex. 21 at 245.) Likewise, the Report cites nothing to substantiate its claims regarding the Centre, General Extract agreement, and the XPhyto transaction. There are only Hindenburg's speculative conclusions, which Plaintiff parrots in the AC without any corroborating facts.[6] (Mot. at. 16–18, 20–21.) Put simply, this Court's holding in *Diaz I* and *II* mandates dismissal of this action.

### B.    The Challenged Statements Are Not Actionable As a Matter of Law.

The Opposition argues that the challenged statements are actionable, but does not explain how any of its legal authority applies to the bare facts alleged in the AC. (Opp. at 15–17.)

**Accurate Statements of Fact.** Plaintiff does not contest the accuracy of any statement (*see* Mot. at 11); instead, it argues that literally accurate statements can still be misleading. (Opp. at 15.) That may be true, but, here, Plaintiff does not identify

---

[6] The two cases cited in the Opposition are inapposite. (Opp. at 14 (citing *In re Banc of Cal. Sec. Litig.*, 2017 WL 3972456 (C.D. Cal. Sept. 6, 2017) and *Snellink v. Gulf Res., Inc.*, 870 F.Supp.2d 930 (C.D. Cal. 2012).) In those cases the "information revealed" by the reports could be "verifi[ed]" with "publicly available . . . ***records and recorded conversations***." *See Diaz I*, 2018 WL 5099749, at *7 (distinguishing *Banc of California* and *Snellink* on these grounds).

which accurate statements it contends are misleading, much less any particularized facts undermining that statement or rendering it materially misleading when made. This is insufficient. *See Neborsky v. Valley Forge Composite Techs., Inc.*, 2014 WL 1705522, at *5 (S.D. Cal. Apr. 28, 2014) (dismissing complaint).

**Corporate Optimism and Opinion Statements.** The Opposition contends that statements about PharmaCielo being "position[ed] . . . to capture market share" and its "competitive edge" were concrete, and that describing the Rionegro property as "perfect" was more than "mere optimism."[7] (Opp. at 15-16 (citing *Rodriguez v. Gigamon Inc.*, 325 F.Supp.3d 1041, 1055 (N.D. Cal. 2018)).)[8] Courts, however, routinely find such statements to be puffery. *E.g., Gregory v. ProNAi Therapeutics Inc.*, 297 F.Supp.3d 372, 399 (S.D.N.Y. 2018) ("competitive advantage" was puffery); *In re St. Jude Med., Inc., Sec. Litig.*, 629 F.Supp.2d 915, 922 (D. Minn. 2009) ("well positioned" was puffery); *Gammel v. Hewlett-Packard Co.*, 905 F.Supp.2d 1052, 1070–71 (C.D. Cal. 2012) (the term "perfect" is too "exaggerated" and "vague" for reasonable investors to rely on). Plaintiff also argues that Defendants did not have a "reasonable basis" for their opinions, but cites no facts for support. (Opp. at 16; Mot. at 11–12, 14–15.) Without facts showing that any challenged opinion was both objectively and subjectively false when made, the statement cannot be the basis of a securities fraud claim. *See City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 614–16 (9th Cir. 2017).

**Forward-looking Statements.** Finally, Plaintiff does not dispute that Defendants' statements regarding construction of the Centre are forward-looking.

---

[7] Plaintiff also argues that statements regarding Defendants' expectation of meaningful revenue from General Extract are not opinions because the AC "alleges that Defendants misled investors by hyping the General Extract agreement *without revealing the related party nature of the transaction*." (Opp. at 16.) This makes no sense. A statement is an opinion when it expresses the speaker's subjective belief. *See Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 183 (2015). Plaintiff cannot change this basic definition.

[8] *Rodriguez* addressed statements far more specific and concrete than those challenged here. *E.g.*, 325 F.Supp.3d at 1049–50 (tying statements regarding company's "healthy product backlog" to disclosure of expected "revenue in the range of $91 million to $93 million").

Instead, the Opposition argues that they are still actionable because Defendants had "no reasonable basis" to predict when construction would finish. (Opp. at 16–17.) But as discussed in Section IV.C., the AC is devoid of a single fact regarding the status of construction, much less what Defendants knew or didn't know when they spoke.[9]

### C.    Plaintiff Fails to Identify Any Materially Misleading Statements.

The Motion sets forth the standards Plaintiff must satisfy to adequately plead falsity and explains in detail why the AC falls short. (Mot. at 12–21.) The Opposition fails to meaningfully respond to those arguments.

**The Cauca Property.** The Opposition admits that none of the challenged statements mention the Cauca property, but contends "it is of no moment" because Defendants made forward-looking statements about developing the property *in 2017—i.e., over two years before* the start of the Class Period. (Opp. at 10–11.) This makes no sense. To render a statement misleading, an omitted fact must be material – i.e., "significantly alter the total mix of information" (*Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 38 (2011)), and it must "bear [a] connection to the substance of the statement itself." *Weller v. Scout Analytics, Inc.*, 230 F.Supp.3d 1085, 1094 (N.D. Cal. 2017); Mot. at 15. Here, Defendants had no duty to disclose that the Cauca property was idle because none of the challenged statements relate to that property or its usage. Recognizing this, Plaintiff argues that Defendants somehow mislead investors by "characterizing Rionegro as its *main* operation, rather than its *only* operation." (Opp. at 11.) But there are no facts alleged to suggest that this "affirmatively create[d] an impression of a state of affairs that differs in a material way from the one that actually exists," given that Rionegro is undoubtedly PharmaCielo's main operation. *See Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002); Mot. at 14.

---

[9] The Report states that "external elements of the building are completed or close to being completed" (Ex. 21 at 244), which is consistent with Defendants' statements that they expected physical *construction* of the Centre to finish by end of 2019.

**The Rionegro Property.** Unable to contest the accuracy of any statement, Plaintiff argues that once Defendants said *anything* positive about Rionegro or PharmaCielo's efforts to scale up production, it was misleading to leave out certain details—*i.e.*, its "location on a floodplain" and its supposed "mold contamination." (Opp. at 11, 17 (stating Plaintiff is "challenging . . . the ***incompleteness*** of [these] statements").) That is not the law. Rule 10b-5 prohibits "*only*" misleading statements, not incomplete statements, and Plaintiffs must "specify the [] reasons why the statements . . . were misleading," not "simply why the statements were incomplete." *Brody*, 280 F.3d at 1006. The AC does not, however, explain how any statement pointed investors in the "***wrong direction***" about Rionegro's suitability for growing cannabis or PharmaCielo's ramping up of production. *In re OmniVision Techs., Inc. Sec. Litig.*, 937 F.Supp.2d 1090, 1101 (N.D. Cal. 2013). Indeed, Plaintiff offers no details about the supposed "mold contamination" or floodplain (Mot. at 14–15), which makes it "difficult to understand the severity of the problem[s]" and to "assess the falsity of Defendants' statements." *McGovney v. Aerohive Networks, Inc.*, 367 F.Supp.3d 1038, 1056–57 (N.D. Cal. 2019).

**Construction of the Centre.** The Opposition contends that Plaintiff's allegation of "significant" delays was not a bald assertion because it was based on the Report and PharmaCielo's SEDAR filings, and because the Centre is not yet fully operational.[10] (Opp. at 11–12.) But that does not address the fundamental problem with this claim—the AC contains no details about the delays or the status of construction when Defendants spoke, *i.e.*, particularized facts to determine whether the challenged statements "were false *when they were made*." *In re Lululemon Sec. Litig.*, 14 F.Supp.3d 553, 579 (S.D.N.Y. 2014), *aff'd,* 604 F. App'x 62 (2d Cir. 2015) (emphasis original); Mot. at 16–17. Further, what did Defendants say that was

---

[10] Plaintiff identifies no particularized facts to support its allegation that there were "significant" construction delays ***during the Class Period***. (*See* Opp. at 3–6, 9, 11–12, 17.) The Report assumes there were delays based on an estimated cost of capital expenditures (¶81), but there are no facts to put that cost in context. *See McGovney*, 367 F.Supp.3d at 1056–57 (plaintiff cannot "invite[] the court to speculate").

materially misleading, particularly where, as here, the challenged statements are forward-looking? The Opposition does not say. (Opp. at 11–12.) And even if the Centre is not yet fully operational or GMP compliant, that does not undermine Defendants' guidance (in late 2019) about when **construction of the building** would be complete. At best, Plaintiff's reliance on the Centre's current status is classic "fraud by hindsight." *See Rodriguez*, 325 F.Supp.3d at 1055.[11]

**The General Extract Agreement.** The Opposition baldly asserts that: (1) PharmaCielo is subject to GAAP, and (2) Defendants admitted the General Extract agreement was a related party transaction. (Opp. at 12–13.) Wrong. PharmaCielo's financial statements were drafted in accordance with International Financial Reporting Standards, not GAAP (*e.g.*, Ex. 7 at 51; Opp. at 12), and with good reason: as a foreign private issuer, PharmaCielo is not subject to GAAP (Mot. at 17), and Plaintiff cites no legal support to suggest otherwise. But even assuming PharmaCielo is subject to GAAP (it is not), Defendants did not admit that the agreement was a related party transaction.[12] (*See supra* at 4 n.1.) And while Plaintiff insists that it would be "significant" if General Extract was a related party (Opp. at 12–13), Plaintiff does not contend that any stockholder was "led in [the] wrong direction" regarding the agreement's terms or expected benefits.[13] (Mot. at 18–19.)

**PharmaCielo's Competitiveness in South America.** The Opposition contends that Defendants raised a scienter argument with respect to PharmaCielo's competitiveness in South America. (Opp. at 13.) Not so. Defendants merely pointed out that there are no contemporaneous facts undermining or contradicting Mr. Attard's forward-looking statement: "[W]e are **looking forward to** . . . expanding

---

[11] Plaintiff asserts without any authority that knowledge is not relevant to falsity. (Opp. at 12 n.6) Plaintiff is incorrect. (*See* Mot. at 11–12 (discussing opinion and forward-looking statements).)

[12] There are no facts suggesting that any individual affiliated with both PharmaCielo and General Extract had "significant influence" over either of them. (*See* Mot. at 18.) Nor does the Opposition cite any particularized facts to support the allegation that General Extract lacks credible operations. (Opp. at 12–13, 16; Mot. at 17 n.10.)

[13] *See* Opp. at 16 (stating Plaintiffs are "not" alleging that "Defendants did not actually expect meaningful revenue" from the General Extract Agreement).

[PharmaCielo's] existing presence throughout Latin America."[14] (Mot. 19–20; ¶62.) That PharmaCielo lost a bid in Peru a month later does not render this opinion materially false or misleading. (*See* Mot. at 19; Ex. 15.)

**The XPhyto Transaction.** In their Motion, Defendants highlighted the lack of particularized facts about the XPhyto transaction. (Mot. 20–21.) The Opposition ignores this, again baselessly referring to the transaction as a "sham." (Opp. at 13.). As "further evidence" of this supposed sham, Plaintiff cites a disclosed "loss of $911,765 on the investment." (*Id.* at 13-14 (citing Ex. 26).) But the specific line item identified by Plaintiff reflects an unrealized ***gain*** (not a loss) of $911,765 on the XPhyto investment. (Ex. 26 at 293, 308.)

## V. PLAINTIFF MAY NOT INVOKE A PRESUMPTION OF RELIANCE.

Plaintiff may not invoke the fraud-on-the-market or *Affiliated Ute* presumption of reliance. The Opposition argues otherwise, relying on out-of-circuit authority, declaring that reliance "ordinarily" is not determined on the pleadings, and asserting that it need not "prove" reliance at this stage.[15] (Opp. at 20.). Plaintiff misses the point. First, although not required to ***prove*** efficiency of the OTCQX market to invoke the fraud-on-the-market presumption at this stage, Plaintiff must still "state ***with particularity*** the facts upon which [Plaintiff] base[s its] assertion that [PharmaCielo] traded in an efficient market." *ScripsAmerica, Inc. v. Ironridge Glob. LLC*, 119 F.Supp.3d 1213, 1252–53 (C.D. Cal. 2015). There are no such facts, only conclusions, in the AC. (¶91.) Second, "[m]ost courts [apply the *Affiliated Ute* presumption] ***only where there is no affirmative statement*** alleged to have been misleading." *Roman v. UBS Fin. Servs., Inc. of P.R.*, 2017 WL 3608238, at *5 (D.P.R. Aug. 21, 2017). Plaintiff cites *Volkswagen "Clean Diesel" Mktg., Sales*

---

[14] Plaintiff contends that Mr. Attard's statement is not an opinion or forward-looking. (Opp. at 13.) But this ignores the context, which clearly indicates that Mr. Attard was making a prediction about the future—*i.e.*, expressing an opinion. *See Omnicare*, 575 U.S. at 190–91 (statements must be analyzed "in context").

[15] Plaintiff contends that reliance can be pled based on the "temporal proximity" of Plaintiff's purchases to the alleged misstatements, but does not cite any authority to support this proposition. (Opp. at 20.)

*Pracs., & Prod. Liab. Litig.*, 2019 WL 4727338 (N.D. Cal. Sept. 26, 2019), but that case was decided on summary judgment and is factually inapposite.[16] (Opp. at 21.)

## VI.   PLAINTIFF HAS NOT PLED LOSS CAUSATION

The Opposition argues that loss causation is subject to Rule 8, and that, to meet this standard, it need only allege "that PharmaCielo shares fell in response to new information. . . . revealing the fraud." (Opp. at 22.)[17] Plaintiff is wrong. In the Ninth Circuit, loss causation allegations must satisfy Rule 9(b). *Or. Pub. Emps.' Ret. Fund v. Apollo Grp., Inc.*, 774 F.3d 598, 605 (9th Cir. 2014). Regardless, the allegations here (¶¶65–66, 76–84) fall short under any standard because: (1) the January 9, 2020 MBD article is untethered to any alleged misstatement, and Plaintiff does not argue otherwise (Opp. at 22–24; Mot. at 25);[18] and (2) the short-seller Report is based entirely on public information.[19]

## VII.   CONCLUSION

For these reasons (and those set forth in Defendants' Motion), the Court should dismiss the AC, and should do so with prejudice.

---

[16] *Volkswagen* was "not a run-of-the-mill omissions case." 2019 WL 4727338, *1–2. Plaintiffs there alleged a single undisclosed scheme that was the underpinning of the entire case, and defendants also argued that the affirmative misrepresentations were not properly before the court. *In re Volkswagen "Clean Diesel" Mktg., Sales Prac., & Prod. Liab. Litig.*, 2017 WL 3058563, at *14–15 (N.D. Cal. July 19, 2017). Here, there no similar facts; Plaintiff does not allege a single undisclosed scheme and Defendants have not argued that the alleged misrepresentations are not properly before the court.

[17] In *City of Miami Gen. Emps.' & Sanitation Emps.' Ret. Tr. v. RH, Inc.*, the court held that a plaintiff does not have to show that a misrepresentation was the sole reason for the stock price decline if it can show that the defendant misrepresented "the *very facts* that . . . caus[ed] the plaintiff's [] loss." 302 F.Supp.3d 1028, 1046 (N.D. Cal. 2018). Plaintiff makes no such showing here. (Opp. at 22 n.12.)

[18] In *Eng v. Edison International*, plaintiff pled loss causation by alleging "significant" double digit stock declines. 2017 WL 1857243, at *4 (S.D. Cal. May 5, 2017). There is no such showing here with respect to the MBD article. (Mot. at 25.)

[19] Plaintiff's cases are distinguishable. *Snellink*, 870 F.Supp.2d at 942 (negative facts were not already known because company's regulatory filings were in Chinese and not readily accessible); *Scott*, 2012 WL 538279, at *11 (applied Rule 8 to loss causation); *Pub. Emps.' Ret. Sys. of Miss. v. Amedisys, Inc.*, 769 F.3d 313, 323-24 (5th Cir. 2014) (applied Rule 8 to loss causation); *In re Winstar Commc'ns.*, 2006 WL 473885, at *14-15 (S.D.N.Y. Feb. 27, 2006) (report involved an analysis of complicated financial information).

Dated: February 5, 2020

Respectfully submitted,

By: */s/ Peter Adams*

*Attorneys for Defendants PharmaCielo Ltd., David Attard, Scott Laitinen, and David Gordon*

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

13

**REPLY ISO MOTION TO DISMISS**
**CASE NO. 2:20-CV-02182-PSG-JC**