COOLEY LLP
KOJI F. FUKUMURA (189719)
(kfukumura@cooley.com)
PETER M. ADAMS (243926)
(padams@cooley.com)
LINH K. NGUYEN (305737)
(lknguyen@cooley.com)
4401 Eastgate Mall
San Diego, California 92121-1909
Telephone:   +1 858 550-6000
Facsimile:   +1 858 550-6420

*Attorneys for Defendants PharmaCielo Ltd., David Attard, Scott Laitinen, and David Gordon*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| IN RE PHARMACIELO LTD. SECURITIES LITIGATION | Case No. 2:20-cv-02182-PSG-JC<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>Date:      December 10, 2021<br>Time:      1:30 p.m.<br>Court:     6A<br>Judge:    Hon. Philip S. Gutierrez |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................... 1

II.   PLAINTIFFS HAVE NOT PLED FALSITY. ........................................... 2

  A.   The Challenged Statements Are Not Actionable As a Matter of Law. ..................................................................................................... 2

  B.   Plaintiffs Fail to Identify Any Materially Misleading Statement. ........ 3

III.  PLAINTIFFS HAVE NOT PLED ANY INFERENCE OF SCIENTER. ................................................................................................ 7

  A.   The CWs Do Not Support Scienter Because None Are Reliable and No CW Had Personal Knowledge of Defendants' Mental State. ..................................................................................................... 8

  B.   Plaintiffs Cannot Rely on Allegations of Access to Information or the "Core Operations" Doctrine. ................................................... 10

  C.   None of the Post-Class Period Events Show Any Defendant's Contemporaneous Knowledge of Falsity or Intent to Mislead. .......... 11

IV.   PLAINTIFFS HAVE NOT PLED RELIANCE. ..................................... 11

V.    PLAINTIFFS HAVE NOT PLED LOSS CAUSATION ........................ 12

VI.   THE EXCHANGE ACT DOES NOT APPLY. ...................................... 12

VII.  CONCLUSION ..................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Arrowhead Pharms., Inc. Sec. Litig.*,
  2017 WL 5635422 (C.D. Cal. Sept. 20, 2017) .......................................................... 9

*In re BofI Holding, Inc. Sec. Litig.*,
  977 F.3d 781 (9th Cir. 2020) ............................................................................... 12

*Brody v. Transitional Hosps. Corp.*,
  280 F.3d 997 (9th Cir. 2002) ................................................................................. 5

*Brown v. China Integrated Energy, Inc.*,
  875 F. Supp. 2d 1096 (C.D. Cal. 2012) .................................................................. 5

*Camp v. Qualcomm Inc.*,
  2020 WL 1157192 (S.D. Cal. Mar. 10, 2020) .......................................................... 7

*City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*,
  2019 WL 6877195 (N.D. Cal. Dec. 17, 2019) ...................................................... 3, 9

*Eng v. Edison International,*
  2017 WL 1857243 (S.D. Cal. May 5, 2017) ........................................................... 12

*In re Eventbrite, Inc. Sec. Litig.*,
  2020 WL 2042078 (N.D. Cal. Apr. 28, 2020) .......................................................... 4

*Gregory v. ProNAi Therapeutics Inc.*,
  297 F.Supp.3d 372 (S.D.N.Y. 2018) ...................................................................... 2

*Hatamian v. Advanced Micro Devices, Inc.*,
  87 F. Supp. 3d 1149 (N.D. Cal. 2015) .................................................................... 9

*In re Impac Mortg. Holdings, Inc. Sec. Litig.*,
  554 F. Supp. 2d 1083 (C.D. Cal. 2008) .................................................................. 2

*Knollenberg v. Harmonic, Inc.*,
  152 F. App'x 674 (9th Cir. 2005) ......................................................................... 10

*Lloyd v. CVB Fin. Corp.*,
  811 F.3d 1200 (9th Cir. 2016) ............................................................................. 12

*McGovney v. Aerohive Networks, Inc.*,
  367 F. Supp. 3d 1038 (N.D. Cal. 2019) .................................................................. 8

*In re Medicis Pharm. Corp. Sec. Litig.*,
  689 F. Supp. 2d 1192 (D. Ariz. 2009) .................................................................... 7

*Melcher v. Fried,*
  2018 WL 6326334 (S.D. Cal. Dec. 4, 2018) ........................................................... 6

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

iii

**REPLY ISO MOTION TO DISMISS SAC
CASE NO. 2:20-CV-02182-PSG-JC**

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Mendoza v. HF Foods Grp. Inc.*,
  2021 WL 3772850 (C.D. Cal. Aug. 25, 2021) ........................................................ 3

*Merkamerica Inc. v. Glover*,
  2019 WL 8989833 (C.D. Cal. Dec. 3, 2019) ........................................................... 4

*Morrison v. National Australia Bank Ltd.*,
  561 U.S. 247 (2010) ............................................................................................... 12

*In re Myriad Genetics, Inc.*,
  2021 WL 977770 (D. Utah Mar. 16, 2021) ............................................................. 8

*In re Nektar Therapeutics*,
  2020 WL 3962004 (N.D. Cal. Jul. 13, 2020) ......................................................... 12

*Nozak v. N. Dynasty Mins. Ltd.*,
  804 F. App'x 732 (9th Cir. 2020) .......................................................................... 10

*In re NVIDIA Corp. Sec. Litig.*,
  768 F.3d 1046 (9th Cir. 2014) ................................................................................. 9

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
  575 U.S. 175 (2015) ................................................................................................ 5

*Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
  774 F.3d 598 (9th Cir. 2014) ................................................................................. 12

*Peters v. Colony Credit Real Estate, Inc.*,
  2021 WL 4813762 (C.D. Cal. June 7, 2021) (Gutierrez, J.) .......................... 1, 11

*Prodanova v. H.C. Wainwright & Co., LLC*,
  993 F.3d 1097 (9th Cir. 2021) ................................................................................. 8

*In re Quality Sys., Inc. Sec. Litig.*,
  865 F.3d 1130 (9th Cir. 2017) ................................................................................. 9

*Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.*,
  845 F.3d 1268 (9th Cir. 2017) ............................................................................. 2, 3

*Robb v. Fitbit, Inc.*,
  2017 WL 219673 (N.D. Cal. Jan. 19, 2017) ......................................................... 10

*Ronconi v. Larkin*,
  253 F.3d 423 (9th Cir. 2001) ...................................................................... 3, 5, 7, 11

*Schneider v. Cal. Dep't of Corr.*,
  151 F.3d 1194 (9th Cir. 1998) ............................................................................... 10

*ScripsAmerica, Inc. v. Ironridge Glob. LLC*,
  119 F. Supp. 3d 1213 (C.D. Cal. 2015) ................................................................ 11

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Snellink v. Gulf Res., Inc.*,
870 F. Supp. 2d 930 (C.D. Cal. 2012)...............................................................5

*Stoyas v. Toshiba Corp.*,
896 F.3d 933 (9th Cir. 2018)...........................................................................12

*Teamsters Loc. 617 Pension & Welfare Funds v. Apollo Grp., Inc.*,
633 F. Supp. 2d 763 (D. Ariz. 2009)...............................................................10

*Waterford Twp. Police v. Mattel, Inc.*,
321 F. Supp. 3d 1133 (C.D. Cal. 2018)............................................................9

*In re Wet Seal, Inc. Sec. Litig.*,
518 F. Supp. 2d 1148 (C.D. Cal. 2007).......................................................4, 10

*Wochos v. Tesla, Inc.*,
2018 WL 4076437 (N.D. Cal. Aug. 27, 2018)..................................................4

*In re Worlds of Wonder Sec. Litig.*,
35 F.3d 1407 (9th Cir. 1994)..........................................................................11

*Zucco Partners v. Digimarc Corp., LLC*,
552 F.3d 981 (9th Cir. 2009)..........................................................................11

**Statutes**

15 U.S.C. § 78u-4(b)(2)(A) ..............................................................................7

15 U.S.C. § 78u-5(c)(1) ...................................................................................4

**Other Authorities**

17 CFR § 240.12g3-2(b)...................................................................................5

Fed. R. Civ. P. 8(a)(2).....................................................................................12

Fed. R. Civ. P. 9(b) .....................................................................................1, 12

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

**MEMORANDUM ISO MOTION TO DISMISS
CASE NO. 2:20-CV-02182-PSG-JC**

## I.    INTRODUCTION

The Court's order dismissing Plaintiffs' prior complaint (the "Order") was clear: Plaintiffs must plead particularized facts showing Defendants intentionally made materially false or misleading statements. Yet none of the new allegations in the Second Amended Complaint ("SAC") cures the threshold defects identified in the Order, and nothing in Plaintiffs' Opposition suggests otherwise. Recognizing this, the Opposition tries to distract by highlighting conclusory allegations, citing post-Class Period statements and inapposite authority, and attempting to rewrite the SAC. Plaintiffs' brief, however, cannot change the fact that this litigation is—at bottom—based on nothing more than an unsubstantiated short-seller report (the "Report"). As a result, Plaintiffs cannot clear the high hurdles imposed by Rule 9(b) and the PSLRA. As explained below and in the Motion, the SAC's defects are legion.

*First*, Plaintiffs again have not adequately pled falsity. The SAC alleges no facts suggesting any statement was materially false or misleading when made. Plaintiffs' new "facts" are vague CW allegations not tied to any statements, post-Class Period allegations that provide no contemporaneous facts about what Defendants knew or believed, or allegations already rejected by the Court. *Second*, there are no particularized facts to support scienter as to any Individual Defendant. The SAC pleads no motive, and the Opposition does not contest this. The CW allegations are not reliable or indicative of scienter. No CW interacted with any Defendant or mentioned one by name. And while the Opposition again defaults to "access to information" and the core operations doctrine, there are no specific factual allegations regarding any Defendant's exposure to information contrary to his public statements. The Opposition's attempt to mischaracterize the Independent Review report ("Review"), which was before the Court in the prior briefing, again fails because, like before, there are no "admissions" in it. *Third*, Plaintiffs cannot invoke the fraud-on-the market or the *Affiliated Ute* presumption and, therefore, have not pled reliance. The SAC is devoid of facts to support the efficiency of the OTCQX market. And, this Court has already held in another case, *Peters v. Colony Credit Real Estate, Inc.*, 2021 WL

4813762, at *8 (C.D. Cal. June 7, 2021) (Gutierrez, J.), that the *Affiliated Ute* presumption is limited to cases, unlike this one, where there are no affirmative misstatements on which a plaintiff could have relied. **Fourth**, Plaintiffs have not adequately pled loss causation. The Report, derived entirely from public sources, does not contain any new information. And the MBD article did not reveal any previously undisclosed fraud. **Fifth**, Plaintiffs have not pled a claim covered by the Exchange Act, and they cannot escape this shortcoming by again alleging "facts" that are not pled in the SAC.

## II.   PLAINTIFFS HAVE NOT PLED FALSITY.[1]

### A.   The Challenged Statements Are Not Actionable As a Matter of Law.

None of the challenged statements are actionable as a matter of law. (Mot. 9-10.) In a footnote, Plaintiffs argue otherwise, but attack only two statements, insisting that statements about PharmaCielo being "position[ed] . . . to capture market share" and its "competitive edge" are actionable because they "convey *fact*, not optimism."[2] (Opp. 17 n.7 (emphasis original); ¶¶65, 78.) But courts routinely hold such statements to be inactionable corporate optimism. *E.g., Gregory v. ProNAi Therapeutics Inc.*, 297 F.Supp.3d 372, 399 (S.D.N.Y. 2018) ("competitive advantage" was puffery); *In re Impac Mortg. Holdings, Inc. Sec. Litig.*, 554 F. Supp. 2d 1083, 1097 (C.D. Cal. 2008) ("well-positioned" was puffery). Plaintiffs cite no authority to the contrary.[3]

---

[1] Plaintiffs contend the Court rejected scienter *only* as to statements about the Centre and Latin American expansion, and that the Court "found no deficiency" with their pleading of reliance and loss causation. (Opp. 1-2.) This is nonsense. The Order **did not address** scienter as to statements regarding Cauca, the Rionegro property, General Extract, and XPhyto, and it was silent on reliance and loss causation. The Court could not have concluded that Plaintiffs adequately pled scienter, reliance, and loss causation without identifying a single material misstatement. *See, e.g., Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1277 (9th Cir. 2017) ("Absent an actionable misstatement, reliance does not come into play.").
[2] Unless otherwise noted, all emphasis is added and all internal quotation marks, ellipses, brackets, and citations are omitted.
[3] Plaintiffs fault Defendants for a clerical error—i.e., incorrectly identifying an analyst's opinion as a challenged statement, yet they do not even bother to defend any of the opinions in the eight other paragraphs cited in the Motion. (Opp. 17 n.7; Mot. 9-10.)

Plaintiffs also contend that "literally accurate" statements can be misleading by omission. (Opp. 17 n.7.) But "merely stating that a corporate disclosure document was misleading because it did not contain an allegedly concealed piece of information does not satisfy the PSLRA's 'reason or reasons why' requirement." *See Mendoza v. HF Foods Grp. Inc.*, 2021 WL 3772850, at *6 (C.D. Cal. Aug. 25, 2021).

### B.   Plaintiffs Fail to Identify Any Materially Misleading Statement.[4]

Even assuming there is an actionable statement pled in the SAC (there is not), Plaintiffs do not adequately plead a materially false or misleading statement.

**The Rionegro Property.** The Order instructed Plaintiffs to allege facts showing that the supposed mold and flooding problems with the Rionegro Property "were material." (Order 4, 5, 10.) The Opposition highlights certain CW allegations (Opp. 11-12 (that "management" made workers process plants infected with "gray mold" and flooding "caused operations to cease and reduced productivity").) But none specifies when problems occurred, the amount of production they affected, or for how long. (¶¶31-41.) Vague allegations, like these, that provide no concrete measure of the severity of an alleged problem are not sufficient. *See City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*, 2019 WL 6877195, at *15-16 (N.D. Cal. Dec. 17, 2019) (materiality not adequately plead because plaintiffs did "not give[] a numerical indication of the severe extent to which [problems] impacted Oracle's overall cloud revenue growth"); *see also Ronconi v. Larkin*, 253 F.3d 423, 434 (9th Cir. 2001) ("Problems and difficulties are the daily work of business people. That they exist does not make a lie out of any of the alleged false statements.").

**Construction of the Centre.** The Order held that the challenged statements regarding the expected completion of construction were inactionable "forward-looking statements of corporate optimism." (Mot. 13-15.)[5] Plaintiffs dispute this holding,

---

[4] Plaintiffs argue that materiality is not evaluated at the pleading stage. (Opp. 1.) That is not the law. *See Retail Wholesale*, 845 F.3d at 1277 (affirming dismissal based on materiality). In fact, if the materiality standard is "too low," shareholders would be "bur[ied]" in an "avalanche of trivial information." *Id.*

[5] Plaintiffs claim that statements about PharmaCielo ramping up production were misleading because of the Centre's construction delays. (Opp. 12.) But nothing in the SAC suggests that PharmaCielo could not increase production while building the

citing *Merkamerica Inc. v. Glover*, 2019 WL 8989833, at *9 (C.D. Cal. Dec. 3, 2019). (Opp. 12-13.) But statements predicting results by a certain timeframe are corporate optimism. *See In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1167-68 (C.D. Cal. 2007) ("on track to meet [] sales estimates for December" was puffery). And *Merkamerica* is distinguishable. There, the court found the defendants' prediction for the company's cryptocurrency launch date was misleading because plaintiffs alleged facts showing defendants had no belief or expectation that the cryptocurrency's blockchain software would work. 2019 WL 8989833, at *3. Not so, here. Plaintiffs also make no attempt to avoid the Court's holding that the statements were ***"prediction[s]*."** (Order 6, 10.) And those predictions, when accompanied by cautionary language, are not actionable under the PSLRA safe harbor. 15 U.S.C. § 78u-5(c)(1); Mot. 10; *see* ¶¶61-62, 68, 70; Exs. 5, 8, 10. The Opposition does not contest this. Further, any forward-looking statement not accompanied by cautionary language, is still inactionable absent particularized facts demonstrating Defendants lacked any basis for their predictions. (Order 6, 10; Mot. 10; *see* ¶65.) There are no such facts in the SAC. The CWs are also unreliable and none of their vague allegations (regarding delays of unknown lengths at unspecified times) mention any Defendant by name, much less suggest that he had no basis for his opinion (*see infra* at 8-10; Mot. 13-15, 19-21).[6] Likewise, the SAC's speculation—i.e., that Defendants must have known of delays due to their positions within the Company and being "on-site" in Rionegro—is not enough. (*See infra* at 10; Mot. 17-18). Finally, even if the statements are not puffery or forward looking, they are still opinions. (Order 6.) And an opinion

---

Centre. (*See* Dkt. 37-1.) PharmaCielo disclosed that it was increasing production using existing infrastructure and new machinery. (¶58 (discussing "recent acquisition and installation of additional high-performance, high-volume extractors"); ¶62.) Thus, no statement about increasing production was misleading because of an alleged delay. *See Wochos v. Tesla, Inc.*, 2018 WL 4076437, at *6–7 (N.D. Cal. Aug. 27, 2018) (production goals not misleading where there were no "facts tending to show that it would have been impossible" to reach those goals in time).

[6] The SAC alleges no facts showing that any alleged delay was material. (Mot. 12-13 (citing *In re Eventbrite, Inc. Sec. Litig.*, 2020 WL 2042078, at *13 (N.D. Cal. Apr. 28, 2020).) The Opposition disputes this, but only points to allegations that completing construction and GMP compliance of the Centre was important, not that any alleged delay was itself a material delay. (Opp. 12-13.)

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

REPLY ISO MOTION TO DISMISS SAC
CASE NO. 2:20-cv-02182-PSG-JC

is not actionable absent facts showing that it was both objectively and subjectively false. (Mot. 9-10 (citing *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 185-96 (2015).)

**The General Extract Agreement.** Plaintiffs argue that Defendants had a duty to disclose that General Extract was a related party under GAAP because: (1) PharmaCielo is subject to GAAP, and (2) Defendants raised the topic of related party transactions. (Opp. 13-14.) But PharmaCielo is not subject to GAAP because it is exempt from filing periodic reports with the SEC. (Mot. 15 (citing 17 CFR § 240.12g3-2(b)).) The Opposition cites no authority saying otherwise. (Opp. 14.) Nor does it explain how or why PharmaCielo's disclosure of related party transactions—in financial statements prepared "***in accordance with International Accounting Standards***" (*e.g.* Ex. 9 at 8)—somehow created a duty of disclosure under GAAP. (Opp. 14 (citing ¶¶ 49, 71; *see* Mot. 15-16.)[7] Further, the SAC alleges no facts showing that statements about the Agreement's terms or expected benefits were misleading. There are no contemporaneous facts suggesting Defendants did not expect PharmaCielo to reap the advertised benefits of the Agreement, much less due to its alleged related-party nature. (Mot. 15-19; *see Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) (to be misleading, a statement must "affirmatively create an impression of a state of affairs" materially different from the truth).) The Opposition's only rejoinder is that the Company should have disclosed that individuals were affiliated with PharmaCielo and General Extract's parent company because the Agreement was supposedly a sham. (Opp. 13-15 (citing General Extract's website, its alleged lack of current operations, and the Agreement allegedly did not pan out).)[8] But the Court already rejected the allegations about General Extract's website. (Order 7; Mot. 16.) And the post-Class Period allegations say nothing about General Extract's operations or Defendants' expectations at the time they spoke. (¶¶64-65; *see Ronconi*,

---

[7] Plaintiffs' cases are inapposite. (Opp. 14 (citing *Brown v. China Integrated Energy, Inc.*, 875 F. Supp. 2d 1096, 1117-19 (C.D. Cal. 2012) and *Snellink v. Gulf Res., Inc.*, 870 F. Supp. 2d 930, 939 (C.D. Cal. 2012)).) In both, defendants filed periodic SEC reports and were, therefore, subject to GAAP.

[8] Defendants did not concede that General Extract had zero operations. (Mot. 16 n.11.)

253 F.3d at 430 n.12 (no fraud by hindsight).) PharmaCielo also disclosed that the CBD market changed significantly *after* the parties entered into the Agreement. (Mot. 15-16; Ex. 22 at 13.).[9] The Order also required Plaintiffs to plead the materiality of the alleged related-party nature of the Agreement. (Order 10.) They did not. As before, Plaintiffs only allege that investors viewed the Agreement as a "milestone."[10] (Opp. 14-15.). But that is no substitute for well-pled facts showing that disclosure of the omitted information (i.e., that the Agreement involved a related party) would have "significantly altered the total mix of information made available." (Mot. 8, 15-16.)

**The Cauca Property.** The Opposition contends that if investors had known about the alleged problems in Rionegro and with the Centre, then they would have found it material that Rionegro was PharmaCielo's "only" operating facility as opposed to its "main" facility. (Opp. 13.) There are, however, zero facts alleged to support Plaintiffs' conjecture. (Order 5-6 (Plaintiffs must allege "facts indicating that Defendants' characterization of the Rionegro Property as their main operation— instead of their only operation—was material); *id.* (agreeing that a statement is not misleading unless it creates "an impression of a state of affairs that differs in a material way from the one that actually exists").)

**Expansion in South America.** The Order instructed Plaintiffs to allege facts, other than the immaterial Peru bid, indicating that Mr. Attard's statement ("[we are] 'looking forward to a strong 2020 and expanding [PharmaCielo's] existing presence throughout Latin America'") was misleading. (Order 7-8, 10.) They did not (Mot. 11-12) and the Opposition does not argue otherwise. Instead, Plaintiffs contend that the statement is actionable because it somehow misled investors regarding PharmaCielo's "***current*** success" in expanding its presence. (Opp. 15; ¶74.)[11] But they again ignore

---

[9] Defendants did not admit that the Agreement was a related party transaction. (Mot. 16 n.13.) In fact, the Review clearly states that "[n]othing in this arrangement met the threshold to be considered a 'related party transaction'" under Canadian law. (Ex. 17 at 12.)

[10] Citing *Melcher v. Fried*, Plaintiffs contend the alleged related party nature of the Agreement was material due to the size of the transaction (Opp. 15), but *Melcher* did not involve related parties. 2018 WL 6326334, at *12 (S.D. Cal. Dec. 4, 2018).

[11] Mr. Attard's statement also notes that the Company already expanded into Mexico, Uruguay, and Argentina, which Plaintiffs do not contest. (¶74.)

the Order, which held that this "optimistic prediction[]" was inactionable absent facts showing Mr. Attard knew when he spoke that it was misleading (Order 8). The SAC contains no such facts. (*See infra* at 8-11.)

**The XPhyto Transaction.** Plaintiffs were required to allege facts showing the XPhyto "transaction was not expected to have the benefits claimed by Defendants." (Order 10.) The Opposition ignores this instruction and, instead, highlights XPhyto's financial condition and a May 2021 disclosure (reporting a delay in PharmaCielo's performance under the contract). (Opp. 16.) This is not enough. The Court already rejected the allegations regarding XPhyto's financial condition. (Order 9.) And the *post-Class Period* delay does not render the transaction a sham. *See Ronconi*, 253 F.3d at 430 n.12 ("Fraud by hindsight is not actionable."). Recognizing this, Plaintiffs insist that PharmaCielo's stated reason for its delayed performance (because the Centre was not yet EU GMP compliant) somehow contradicts its earlier statement (that XPhyto would also process PharmaCielo's products at its EU GMP facility for sale in Germany). (Opp. 16-17.) These statements are not contradictory (Mot. 11), particularly where, as here, the Company disclosed that "[t]o sell products to XPhyto in Germany, the Company's products *must be produced* in an EU GMP compliant facility." (Ex. 22 at 14.)

## III.   PLAINTIFFS HAVE NOT PLED ANY INFERENCE OF SCIENTER.

To plead scienter, the SAC must allege "*specific contemporaneous statements or conditions* that demonstrate the intentional or the deliberately reckless false or misleading nature of the statements *when made*." *Ronconi*, 253 F.3d at 432. "[K]nowledge of a fact is insufficient to establish scienter without allegations that defendants 'believed that they made false or misleading statements.'" *Camp v. Qualcomm Inc.*, 2020 WL 1157192, at *6 (S.D. Cal. Mar. 10, 2020). Scienter must be pled "with respect to each [] omission alleged," 15 U.S.C. § 78u-4(b)(2)(A), and with respect to *each defendant*, *In re Medicis Pharm. Corp. Sec. Litig.*, 689 F. Supp. 2d 1192, 1214 (D. Ariz. 2009). Plaintiffs do not come close to clearing this high bar. As before, the SAC is devoid of any indicia of fraudulent intent: no admissions, internal

meetings, contemporaneous documents or events, suspicious stock sales, or—importantly—***motive***. (*See* Mot. 16-18, 21-22.) To overcome their failure to plead a plausible motive, Plaintiffs must allege "***compelling and particularized facts*** showing fraudulent intent or deliberate recklessness." *Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1108 (9th Cir. 2021); Mot. 21-22. Plaintiffs do not dispute this. Instead, they try to sidestep the requirement by arguing they've pled scienter based on the CW allegations, Defendants' positions in the Company, the "core operations" doctrine, and other irrelevant, post-Class Period events. None of these arguments is persuasive, let alone "compelling and particularized."

**A.    The CWs Do Not Support Scienter Because None Are Reliable and No CW Had Personal Knowledge of Defendants' Mental State.**

**No CW Is Reliable.** Plaintiffs argue the CWs are reliable because: (1) the SAC alleges their titles; (2) they were all allegedly employed during the Class Period; and (3) they corroborate each other. (Opp. 18-19.) Each argument fails.

***First***, it is well-settled that, at a "bare minimum," plaintiffs must allege a CW's job description and responsibilities. *See McGovney v. Aerohive Networks, Inc.*, 367 F. Supp. 3d 1038, 1053 (N.D. Cal. 2019); Mot. 20. The Opposition argues otherwise (i.e., that the CWs' "mostly senior" titles by themselves "connot[e]" their responsibilities and show reliability), but cites no relevant authority. (Opp. 18-19.)[12] Thus, CW2, CW3, CW5, and CW6 are not reliable because the SAC alleges no responsibilities or duties for them. In addition, alleging that CW1 was "involved in the Centre's design and concept" (¶31) and CW4 worked on the initial phases of construction (¶33), without any reference to time, does not establish reliability. (Mot. 20.) The Opposition has no rejoinder. (Opp. 18-19.)

***Second***, Plaintiffs contend the CW allegations are specific in time because all CWs were employed during the Class Period. (Opp. 18.) Not so. The SAC does not allege that CW4 was still an employee during the Class Period; it only alleges when

---

[12] Plaintiffs cite *In re Myriad Genetics, Inc.* (Opp. 18-19), but there–unlike here—plaintiff pled the job duties of each CW. 2021 WL 977770, at *17-18 (D. Utah Mar. 16, 2021).

he started. (¶33.) Regardless, alleging that a CW was employed during the Class Period is not enough. *See City of Sunrise*, 2019 WL 6877195, at *14 (rejecting reports from CWs employed during class period because they did not "[tie] those reports to each alleged misstatement" and noting that "CW reports must be specific in their time references"). No CW attaches dates to the events they describe and most provide no temporal context at all. (¶¶31-41.) CW1 discusses delays that occurred when "Defendants started construction" (¶31), and CW4 claims that the Company changed the location of the Centre twice (¶33), but neither say ***when*** exactly these events occurred.[13] Moreover, Plaintiffs do not even address the Motion's argument that alleged delays of unknown lengths, occurring in the "spring" and "summer" of 2019, were still too vague. (Mot. 14 (citing *In re Arrowhead Pharms., Inc. Sec. Litig.*, 2017 WL 5635422, at *10 (C.D. Cal. Sept. 20, 2017) (Gutierrez, J.)).)

***Third,*** unreliable CWs corroborating one another "does not restore plausibility to their allegations." *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1058 (9th Cir. 2014).[14]

**None of the CW Statements Support an Inference of Scienter.** Plaintiffs concede that the CWs never interacted with any Individual Defendant and that none of their allegations mention a Defendant by name. (Opp. 19.) This is the end the inquiry. *E.g.*, *Waterford Twp. Police v. Mattel, Inc.,* 321 F. Supp. 3d 1133, 1154 (C.D. Cal. 2018) (CWs cannot establish scienter because none had direct contact with any defendant); Mot. 21. Plaintiffs disagree, relying on inapposite authority. (Opp. 18 (citing *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1145(9th Cir. 2017).) However, in *Quality Systems*, the CWs "routinely interacted with defendants" and one CW directly "warned" one defendant about issues related to the alleged

---

[13] This also makes it impossible to determine if CW1 (who started in March 2019) was an employee when these purported problems happened. (¶31.)

[14] *Hatamian v. Advanced Micro Devices, Inc.*, 87 F. Supp. 3d 1149, 1162-63 (N.D. Cal. 2015), is not to the contrary. The *Hatamian* CWs were reliable because they not only corroborated one another, but also one CW was a direct report of an individual defendant and he specifically alleged that defendants were "intimately involved" in production issues and "attended a 'weekly production meeting.'" *See id*.

misrepresentations. *Id*. at 1138-39, 1145.[15] Here, the CWs only allege that certain information was "well known, i.e., 'not a mystery.'" (*E.g.*, ¶¶31, 37, 40.) The PSLRA, however, demands far more. *Knollenberg v. Harmonic, Inc.*, 152 F. App'x 674, 681–82 (9th Cir. 2005) (alleging "common knowledge" does not satisfy the PSLRA).

### B. Plaintiffs Cannot Rely on Allegations of Access to Information or the "Core Operations" Doctrine.

Plaintiffs contend the "core operations" doctrine applies because Defendants were "on site" in Rionegro and had access to contrary information. (Opp. 18, 20.) But the SAC does not allege that any Individual Defendant worked "on-site" in Rionegro. *See Schneider v. Cal. Dep't of Corr*., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (courts may not consider additional facts asserted in an opposition because it is not a pleading). Plaintiffs also have not pled the existence of any information contrary to Defendants' statements. (*See supra* at 2-7.) And even if they had, they cannot invoke the doctrine without "detailed and specific allegations about [Defendants'] *exposure* to [such] factual information." (Mot. 17-19 (citing *Nozak v. N. Dynasty Mins. Ltd*., 804 F. App'x 732, 734 (9th Cir. 2020)).) Moreover, alleging a defendant "'must have known' of information contradicting allegedly false statements because of that individual's position at the company" is insufficient. *Wet Seal, Inc*., 518 F. Supp. 2d at 1174-75; Mot. 17-18.[16]

Nor is it enough to argue that Defendants must have known that General Extract was a related party under SFAS 57's specific definition because it was a significant transaction. (Opp. 21.) Plaintiffs identify no facts suggesting Defendants knew that SFAS 57 applied. (*See supra* at 5, 10-11; Mot. 15-16.) Scienter cannot be based on GAAP errors if the mistake would not be obvious to executives not familiar with

---

[15] *Robb v. Fitbit, Inc*. is distinguishable. There, "CW1 personally generated the reports documenting failures with the devices" and those reports were given to defendants. 2017 WL 219673, at *5 (N.D. Cal. Jan. 19, 2017).

[16] Plaintiffs also argue the doctrine applies because PharmaCielo had only one operating subsidiary. (Opp. 20.) But that does not justify application of the doctrine. (Mot. 18; *see Teamsters Loc. 617 Pension & Welfare Funds v. Apollo Grp., Inc*., 633 F. Supp. 2d 763, 811-12 (D. Ariz. 2009) (no core operations inference merely because defendant was president of company's "most important" subsidiary.)

GAAP's definitions. S*ee Zucco Partners v. Digimarc Corp., LLC*, 552 F.3d 981, 1000-01 (9th Cir. 2009) (rejecting core operations inference); *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1425-27 (9th Cir. 1994) (no scienter based on allegation that defendants knew about "obvious" accounting violation without "specific facts" about their "mental state").[17] Finally, Plaintiffs repeat arguments about XPhyto (Opp. 21), but none of the new allegations show that the transaction was a sham (*supra* at 7), let alone that Defendants knew that it was.

### C. None of the Post-Class Period Events Show Any Defendant's Contemporaneous Knowledge of Falsity or Intent to Mislead.

Plaintiffs again mischaracterize the Review and attempt to plead fraud by hindsight. (Opp. 19-21.) But the Court already held that the Review contains no "admissions." (*See* Mot. 19.) And, post-Class Period developments concerning Xphyto, General Extract, Peru, and the Centre do not help Plaintiffs because they are not "allegations of specific '***contemporaneous*** statements or conditions.'"[18] *See Ronconi*, 253 F.3d at 430 n.12, 432 ("Fraud by hindsight is not actionable."); Mot. 19.

## IV. PLAINTIFFS HAVE NOT PLED RELIANCE.

Plaintiffs may not invoke the fraud-on-the-market or *Affiliated Ute* presumption of reliance. (Mot. 22-23.) Relying on out-of-circuit authority, the Opposition repeats the same arguments as before – i.e., that reliance is not determined on the pleadings, and that Plaintiffs need not "prove" it at this stage.[19] (Opp. 21-22.). Plaintiffs miss the point. They still must "state with particularity the facts upon which [they] base their assertion" that that the OTCQX is efficient. *ScripsAmerica, Inc. v. Ironridge Glob. LLC*, 119 F. Supp. 3d 1213, 1252–53 (C.D. Cal. 2015). They do not. (Mot. 22-23.) And, according to this Court, the *Affiliated Ute* presumption applies only where there is no alleged affirmative, misleading statement. *Peters*, 2021 WL 4813762, at *8

---

[17] Defendants' supposed knowledge that PharmaCielo would lose the Peru bid cannot support scienter where, as here, this Court held that the loss was immaterial. (Order 8.)
[18] Plaintiffs' scienter cases are distinguishable because, unlike here, they involved particularized facts supporting scienter, such as contemporaneous meetings and documents, resignations, and actual admissions of fraud. (Opp. 18-21.)
[19] Plaintiffs argue reliance can be based on the "temporal proximity" of their purchases to alleged misstatements, but cite no authority to support this. (Opp. 22.)

(rejecting presumption where the "rationale behind [it]—the difficulty of proving a 'speculative negative'—[did] not apply."). That is not the case here.

## V.      PLAINTIFFS HAVE NOT PLED LOSS CAUSATION

Plaintiffs maintain that loss causation is subject to Rule 8(a)(2), and they need only allege that "shares fell in response to new information." (Opp. 23.) Not so. *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 605 (9th Cir. 2014) ("Rule 9(b) applies to . . . loss causation."). Plaintiffs also do not dispute that the January 9, 2020, MBD article is untethered to any misstatement. (Opp. 23.) This is fatal. *See Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1210 (9th Cir. 2016). And Plaintiffs cannot dispute that the Report states: "all information contained [in the Report] . . . has been obtained from public sources."[20] (Ex. 14 at 56-57; Opp. 23-24.) Thus, it "cannot constitute new information unknown to the market."[21] (Mot. 24 (quoting *In re Nektar Therapeutics*, 2020 WL 3962004, at *18 (N.D. Cal. Jul. 13, 2020).

## VI.     THE EXCHANGE ACT DOES NOT APPLY.

The Exchange Act does not apply because Plaintiffs' stock purchases, which were made over the OTC Link, do not qualify as domestic transactions under binding authority. (Mot. 25 (citing *Morrison v. National Australia Bank Ltd*. *See* 561 U.S. 247 (2010), and *Stoyas v. Toshiba Corp*., 896 F.3d 933, 936, 943–44 (9th Cir. 2018)).) Plaintiffs argue again that they incurred irrevocable liability in the United States, but they added no allegations to the SAC to support this.[22]

## VII.    CONCLUSION

For these reasons (and those set forth in Defendants' Motion), the Court should dismiss the SAC, and do so with prejudice.

---

[20] In *Eng v. Edison International*, plaintiff pled loss causation by alleging "significant" double digit stock declines. 2017 WL 1857243, at *4 (S.D. Cal. May 5, 2017). There is no such showing here with respect to the MBD article. (Mot. 24 n.21.)

[21] *In re BofI Holding, Inc. Sec. Litig*., 977 F.3d 781, 793 (9th Cir. 2020) does not help Plaintiffs. (Opp. 24.) There, the court rejected the alleged corrective disclosures because—like the Report—the authors were "anonymous short-sellers" who disclaimed any representation as to the accuracy of the information and "had a financial incentive to convince others to sell." F.3d at 796-97; *see* Ex. 14 at 56-57.

[22] Plaintiffs also do not allege fraud "in connection with" their purchase of PharmaCielo stock. (Mot. 25 n.24.) Plaintiffs have no response. (*See* Opp. 24-25.)

Dated: November 18, 2020

Respectfully submitted,

By: */s/ Peter Adams*

*Attorneys for Defendants PharmaCielo Ltd., David Attard, Scott Laitinen, and David Gordon*

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

13