COOLEY LLP
KOJI F. FUKUMURA (189719)
(kfukumura@cooley.com)
PETER M. ADAMS (243926)
(padams@cooley.com)
LINH K. NGUYEN (305737)
(lknguyen@cooley.com)
4401 Eastgate Mall
San Diego, California 92121-1909
Telephone:  +1 858 550-6000
Facsimile:   +1 858 550-6420

*Attorneys for Defendant Andrés Botero*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| IN RE PHARMACIELO LTD. SECURITIES LITIGATION | Case No. 2:20-cv-02182-PSG-JC<br><br>**REPLY IN SUPPORT OF ANDRÉS BOTERO'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>Date:     December 10, 2021<br>Time:     1:30 p.m.<br>Court:    6A<br>Judge:    Hon. Philip S. Gutierrez |

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ...................................................................................................... 1

II.    ARGUMENT ............................................................................................................ 2

    A.    The SAC Should Be Dismissed as to Mr. Botero for Insufficient Service of Process. ........................................................................................ 2

        1.    Plaintiffs Have Failed to Prove That They Served Mr. Botero Under Rule 4(f)(1). ......................................................... 2

        2.    Plaintiffs Have Failed to Prove That They Served Mr. Botero Under Rule 4(f)(2)(A). ..................................................... 3

        3.    Plaintiffs Have Failed to Show That Their Attempts to Serve Mr. Botero Were Sufficient Under Rule 4(f)(2)(C). ........ 5

        4.    Plaintiffs Have Failed to Show That Alternative Forms of Service Are Warranted Under Rule 4(f)(3). ............................ 6

        5.    Plaintiffs Have Waited Too Long to Serve Mr. Botero. ........... 7

    B.    The SAC Should Be Dismissed as to Mr. Botero for Lack of Personal Jurisdiction. ...................................................................... 8

        1.    Plaintiffs Have Not Shown That Mr. Botero Purposefully Directed His Statement to the United States. ........................... 8

        2.    Exercising Jurisdiction Over Mr. Botero Would Not Be Reasonable. ............................................................................ 11

    C.    In Any Event, the SAC Should Be Dismissed as to Mr. Botero Because the SAC Fails to State a Claim Under Rule 12(b)(6). .......... 12

III.   CONCLUSION ...................................................................................................... 12

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allstate Ins. Co. v. Funai Corp.*,
249 F.R.D. 157 (M.D. Pa. 2008) ........................................................................7

*Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*,
94 F.3d 586 (9th Cir. 1996) ...............................................................................9

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
874 F.3d 1064 (9th Cir. 2017) ...........................................................................8

*In re Banco Bradesco S.A. Sec. Litig.*,
277 F. Supp. 3d 600 (S.D.N.Y. 2017) ..............................................................12

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
305 F.3d 120 (2d Cir. 2002) .............................................................................12

*Bay Area Painters & Tapers Pension Tr. Fund v. Jack Harris Drywall, Inc.*,
2011 U.S. Dist. LEXIS 101739 (N.D. Cal. Sept. 9, 2011).................................6

*Brockmeyer v. May*,
383 F.3d 798 (9th Cir. 2004) ..............................................................2, 3, 4, 5

*CFA Inst. v. Inst. of Chartered Fin. Analysts of India*,
551 F.3d 285 (4th Cir. 2009) ...........................................................................12

*City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*,
399 F.3d 651 (6th Cir. 2005) ...........................................................................10

*City Pension Fund for Firefighters & Police Officers in the City of Miami Beach v. Aracruz Cellulose S.A.*,
41 F. Supp. 3d 1369 (S.D. Fla. Sep. 16, 2011*)*.................................................12

*In re Cooper Sec. Litig.*,
691 F. Supp. 2d 1105 (C.D. Cal. 2010)..............................................................9

*Core-Vent Corp. v. Nobel Indus. AB*,
11 F.3d 1482 (9th Cir. 1993).............................................................................11

*Corwin v. Swanson*,
2010 WL 11598013 (C.D. Cal. Apr. 27, 2010)...................................................9

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*,
2012 WL 1322884 (C.D. Cal. Apr. 16, 2012)....................................................10

*Crowley v. Bannister*,
734 F.3d 967 (9th Cir. 2013).................................................................................6

*Dole Food Co., v. Watts*,
303 F.3d 1104 (9th Cir. 2002)...............................................................................8

*Emine Tech. Co. v. Aten Int'l Co.*,
2008 WL 5000526 (N.D. Cal. Nov. 21, 2008)......................................................7

*Fed. Deposit Ins. Corp. v. Brit.-Am. Ins. Co.*,
828 F.2d 1439 (9th Cir. 1987).............................................................................11

*Holland Am. Line, Inc. v. Wärtsilä N. Am., Inc.*,
485 F.3d 450 (9th Cir. 2007).................................................................................9

*Int'l Shoe Co. v. Washington*,
326 U.S. 310 (1945) ............................................................................................11

*Inversiones Papaluchi S.A.S. v. Super. Ct.*,
20 Cal. App. 5th 1055 (2018)................................................................................4

*Janus v. Freeman*,
840 F. App'x 928 (9th Cir. 2020)..........................................................................8

*Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*,
265 F.R.D. 106 (S.D.N.Y. 2010)..........................................................................7

*Miramontes v. Mills*,
2014 WL 12738922 (C.D. Cal. June 25, 2014).....................................................3

*Pebble Beach Co. v. Caddy*,
453 F.3d 1151 (9th Cir. 2006)...............................................................................9

*Plantation Gen. Hosp., L.P. v. Cayman Islands*,
2010 WL 731853 (S.D. Fla. 2010)........................................................................7

*In re Poseidon Concepts Sec. Litig.*,
2016 WL 3017395 (S.D.N.Y. May 24, 2016)......................................................12

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

**ANDRÉS BOTERO'S MOTION TO DISMISS**
**CASE NO. 2:20-CV-02182-PSG-JC**

# TABLE OF AUTHORITIES
(continued)

**Page**

*Prewitt Enters., Inc. v. Org. of Petroleum Exporting Countries*,
353 F.3d 916 (11th Cir. 2003).................................................................................6

*Reflex Media, Inc. v. Apiriliaco Ltd.*,
745 F. App'x 14 (9th Cir. 2018)..............................................................................2

*Reintegrative Therapy Assoc., Inc. v. Kinitz*,
2021 Wl 5140195 (S.D. Cal. Nov. 4, 2021).............................................................7

*S.E.C. v. Ficeto*,
2013 WL 1196356 (C.D. Cal. Feb. 7, 2013)...........................................................11

*S.E.C. v. Gonzalez de Castilla*,
2001 WL 940560 (S.D.N.Y. Aug. 20, 2001) ..........................................................12

*S.E.C. v. Straub*,
2016 WL 5793398 (S.D.N.Y. Sept. 30, 2016) ........................................................12

*San Mateo Cnty. Transit Dist. v. Dearman, Fitzgerald & Roberts, Inc.*,
979 F.2d 1356 (9th Cir. 1992).................................................................................10

*Spy Optic, Inc. v. AreaTrend, LLC*,
843 F. App'x 66 (9th Cir. 2021)...............................................................................8

*Tuazon v. R.J. Reynolds Tobacco Co.*,
433 F.3d 1163 (9th Cir. 2006).................................................................................11

*U.S. S.E.C. v. Sharef*,
924 F. Supp. 2d 539 (S.D.N.Y. 2013)......................................................................11

*UWM Student Ass'n v. Lovell*,
888 F.3d 854 (7th Cir. 2018)....................................................................................8

*Vancouver Alumni Asset Holdings Inc. v. Daimler AG*,
2017 WL 2378369 (C.D. Cal. May 31, 2017)...........................................................12

*Vega v. Hastens Beds, Inc.*,
2021 WL 3854881 (S.D.N.Y. Aug. 28, 2021) ...........................................................4

*Water Splash, Inc. v. Menon*,
137 S. Ct. 1504 (2017) ......................................................................................2, 3, 5

# TABLE OF AUTHORITIES
(continued)

**Page**

**Other Authorities**

Article 10(c) of the Hague Convention .......................................................... 1, 3, 4, 5

Colombia General Code of Procedure Article 291............................................. 1, 4, 5

David Araque, María C. Muñoz, & Gómez-Pinzón Abogados,
  *Litigation and Enforcement in Colombia: Overview*, PRACTICAL
  LAW COUNTRY Q&A W-010-1549 (May 1, 2021).................................................4

Fed. R. Civ. P. Rule
  4 ...............................................................................................................6
  4(f) ....................................................................................................*passim*
  4(f)(1)................................................................................................1, 2, 3
  4(f)(2)....................................................................................................3, 5
  4(f)(2)(A) ........................................................................................1, 3, 4, 5
  4(f)(2)(C) ................................................................................................5
  4(f)(2)(C)(i) .......................................................................................1, 5, 6
  4(f)(3).................................................................................................1, 6, 7
  4(m)..........................................................................................................7
  12(b)(6)..............................................................................................10, 12

## I.   INTRODUCTION

The Court should dismiss the SAC as to Mr. Botero for three reasons. ***First,*** Plaintiffs fail to prove that they served Mr. Botero under Rule 4(f). The Opposition largely ignores Rule 4(f), and the arguments it does make are meritless. Plaintiffs contend that they have met the standard for service under Rule 4(f)(1) because they purportedly served Mr. Botero under international agreements to which Colombia does not object. But they ignore binding Supreme Court and Ninth Circuit law, under which Rule 4(f)(1) service can only be achieved by means affirmatively authorized by international agreements. And the only type of service the Hague Convention has affirmatively authorized is service through Colombia's Central Authority, which Plaintiffs did not do. Plaintiffs fare no better under Rule 4(f)(2)(A), which permits service as prescribed by the foreign country's "law for service." Plaintiffs do not dispute that they did not comply with Colombia's "law for service," General Code of Procedure Article 291. Instead, they argue that they properly served Mr. Botero under Article 10(c) of the Hague Convention. But merely because Colombia does not object to service under Article 10(c) does not make it is Colombia's "law for service," a term courts have repeatedly held applies to the forum country's enacted service laws. Plaintiffs also failed to serve Mr. Botero under Rule 4(f)(2)(C)(i) because they did not serve Mr. Botero "personally." Rather, they served two other people who were not authorized to accept service on Mr. Botero's behalf. Recognizing these failures, Plaintiffs half-heartedly ask the Court to permit an alternative means of service under Rule 4(f)(3). But they fail to prove that any of their proposed methods of service are permitted by international agreement. In any case, the Court should refuse Plaintiffs' request as they sat on their hands for *nine months*, making no attempt to serve Mr. Botero.

***Second***, the Court does not have personal jurisdiction over Mr. Botero. Plaintiffs argue that Mr. Botero expressly directed his single statement to the United States because the July Press Release was addressed to "Investors," appeared on

PharmaCielo's website, and its heading read "Investing in the future of Cannabis." But these facts amount only to general outreach to investors, which courts have repeatedly held is insufficient to constitute personal jurisdiction. The Opposition cites no evidence or allegation in the SAC indicating Mr. Botero "expressly aimed" his statement, which is all about Colombia, to the United States. And exercising personal jurisdiction over Mr. Botero would not be reasonable. He has never lived in the United States, most (if not all) of the evidence in the case is in Colombia, and Mr. Botero's statement is unrelated to the United States. Contrary to Plaintiffs' argument, not every defendant in a securities class action is subject to personal jurisdiction here.

*And third*, for the reasons stated in the other Defendants' Motion to Dismiss and Reply in further support thereof, Plaintiffs fail to state a claim against Mr. Botero.

## II.   ARGUMENT

### A.   The SAC Should Be Dismissed as to Mr. Botero for Insufficient Service of Process.

Plaintiffs have not met their burden of establishing that Mr. Botero was served under Rule 4(f), which governs service of foreign parties. *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004).[1]

#### 1.   Plaintiffs Have Failed to Prove That They Served Mr. Botero Under Rule 4(f)(1).

Under Rule 4(f)(1), foreign defendants can be served "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention." The only method of service the Hague Convention affirmatively authorizes—and therefore the only way to serve Mr. Botero under Rule 4(f)(1)—is through a member country's Central Authority. *Water Splash, Inc. v. Menon*, 137 S. Ct. 1504, 1507 (2017); *see also Reflex Media, Inc. v. Apiriliaco Ltd.*, 745 F. App'x 14, 15 (9th Cir. 2018) (holding that "[s]ervice was ineffective

---

[1] Because Plaintiffs have failed to demonstrate that they properly served Mr. Botero under Rule 4(f), the Court lacks personal jurisdiction over Mr. Botero. (Botero Br. at 18.)

under [Rule] 4(f)(1) because Plaintiff did not follow the procedure specified in the Hague Service Convention”).

Plaintiffs do not dispute that they did not serve Mr. Botero through Colombia's Central Authority. (Opp. at 5–6.) But they argue that they nevertheless meet Rule 4(f)(1) because they served Mr. Botero in ways “Colombia does not object to,” such as those in Article 10 of the Hague Convention. (Opp. at 4–5.) Plaintiffs are wrong. “Rule 4(f)(1) does not go beyond means of service *affirmatively authorized* by international agreements.” *Brockmeyer*, 383 F.3d at 804 (emphasis added). And service through a country's Central Authority is the *only* affirmatively authorized form of service under the Hague Convention. *See id.* (“It is undisputed that Brockmeyer did not use either the Central Authority under the Hague Convention or any other internationally agreed means for accomplishing service. Rule 4(f)(1), therefore, does not provide a basis for service in this case.”). For example, Article 10(a) does not “affirmatively authorize[]” service by mail, but “simply provides that, as long as the receiving state does not object, the Convention does not ‘interfere with . . . the freedom’ to serve documents through postal channels.” *Water Splash*, 137 S. Ct. at 1513. To be clear, Mr. Botero is not suggesting that service through Colombia's Central Authority is the only approved method of service under Rule 4(f). (*See* Opp. at 5–6; *see Water Splash, Inc.*, 137 S. Ct. at 1508.) Rather, it is the only way to serve a foreign defendant under *Rule 4(f)(1)*.

### 2. Plaintiffs Have Failed to Prove That They Served Mr. Botero Under Rule 4(f)(2)(A).

Rule 4(f)(2)(A) permits service “as prescribed by the foreign country's law for service.” “[T]he phrase ‘laws of service’ in Rule 4(f)(2)(A) refers to *the country's* laws governing service of process.” *Miramontes v. Mills*, 2014 WL 12738922, at *4-5 (C.D. Cal. June 25, 2014) (emphasis added) (explaining that, under Rule 4(f)(2)(A), “the court must determine which of the [country's] laws governs service,” and concluding that service was insufficient because the plaintiff “does not allege . . . that

he complied with any of the requirements"). Service in Colombia is governed by Colombia's General Code of Procedure Article 291. *Inversiones Papaluchi S.A.S. v. Super. Ct.*, 20 Cal. App. 5th 1055, 1068 (2018); *see* ECF No. 61-4.

Plaintiffs do not dispute that they do not meet the requirements of Article 291, so they cannot carry their burden of showing that they properly served Mr. Botero under Rule 4(f)(2)(A). Instead, citing *Inversiones*, Plaintiffs argue that Article 291 does not apply because it only governs service by e-mail. (Opp. at 8.) But Article 291's text says otherwise.[2] Article 291 applies generally to "the practice of personal notification." ECF No. 61-4; *see* David Araque, María C. Muñoz, & Gómez-Pinzón Abogados, *Litigation and Enforcement in Colombia: Overview*, Practical Law Country Q&A W-010-1549 (May 1, 2021) ("At the written stage, generally the defendant must be personally served following . . . [t]he procedure set out in Article 291 of the GCP."). While it's true that the court in *Inversiones* applied Article 291 to service by e-mail, the court acknowledged that Article 291 governs "personal notification" generally. *Inversiones*, 20 Cal. App. 5th at 1068.

Furthermore, it's *Plaintiffs'* burden to prove proper service. *Brockmeyer*, 383 F.3d at 801. Arguing (without any authority) that Article 291 does not apply is not enough. Rather, Plaintiffs must identify a Colombian law that governs service and explain why their attempts to serve Mr. Botero meet its requirements. They have not done so. Consequently, they cannot carry their burden of showing that they properly served Mr. Botero under Rule 4(f)(2)(A). *See Vega v. Hastens Beds, Inc.*, 2021 WL 3854881, at *9 (S.D.N.Y. Aug. 28, 2021) (finding service was insufficient under Rule 4(f)(2)(A) because "Plaintiff cites no case law or other authority to support her assertion that . . . service . . . was proper under the Swedish Service Act").

Plaintiffs argue that they meet Rule 4(f)(2)(A) because they purportedly served Mr. Botero under Article 10(c) of the Hague Convention. (Opp. at 6–7.) But while

---

[2] Service by e-mail may be allowed under Colombian law, but only if defendants "provided the judge with their email address," which did not happen here. ECF No. 61-4.

Colombia does not object to Article 10(c), it is not Colombia's "law for service"—Article 291 is. Article 10 is not a standalone rule for service; it "simply provides that, as long as the receiving state does not object, the Convention does not 'interfere with . . . the freedom' to serve documents" in the methods outlined in Article 10. *Water Splash*, 137 S. Ct. at 1513. For that reason, Plaintiffs must "look *outside* the Hague Convention" to Colombia's laws for service "for affirmative authorization of . . . service that is merely not forbidden by Article 10[]." *Brockmeyer*, 383 F.3d at 804 (emphasis added).[3] Plaintiffs have not done so and, therefore, have failed to demonstrate that service was appropriate under Colombian law and under Rule 4(f)(2)(A).

### 3. Plaintiffs Have Failed to Show That Their Attempts to Serve Mr. Botero Were Sufficient Under Rule 4(f)(2)(C).

Plaintiffs have likewise failed to serve Mr. Botero under Rule 4(f)(2)(C)(i), which permits service by "delivering a copy of the summons and of the complaint to the individual personally," unless prohibited by Colombian law. *First*, Plaintiffs did not serve Mr. Botero "personally"—they instead served two other people: a security guard and Mr. Botero's mother. ECF No. 62 at 5–6. *Second*, neither the security guard nor Mr. Botero's mother was authorized to accept service on his behalf. (Botero Decl. ¶9.) But even if they were, Plaintiffs fail to cite any authority suggesting that "personal[]" service can be accomplished under Rule 4(f)(2)(C)(i) by serving someone else—authorized or not. *Third*, Plaintiffs have failed to cite any authority suggesting that serving Mr. Botero's mother or the security guard constitutes service as to Mr. Botero under Colombian law. *See* Rule 4(f)(2)(C). In fact, Article 291, which requires "personal notification," suggests the opposite is true. *See* ECF No. 61-4. *Fourth*, Plaintiffs repeatedly represent that they served Mr. Botero at his residence. (Opp. at 6.) But that's not true—the address identified in the

---

[3] Plaintiffs' discussion about the competency of their process server is irrelevant. (Opp. at 6–7.) Mr. Botero does not challenge the competency of the process server.

proof of service is Mr. Botero's mother's address, not his. ECF No. 62 at 6. And Mr. Botero does not reside with his mother. (Botero Decl. ¶8.) This attempt to serve Mr. Botero fails for the separate reason that Mr. Botero's mother was only given the summons—she was not provided the SAC. ECF No. 62 at 6; Rule 4(f)(2)(C)(i) (permitting service by "delivering a copy of the summons *and* of the complaint to the individual personally" (emphasis added)); *Bay Area Painters & Tapers Pension Tr. Fund v. Jack Harris Drywall, Inc.*, 2011 U.S. Dist. LEXIS 101739, at *4–5 (N.D. Cal. Sept. 9, 2011) (finding service insufficient because, although "copies of the summons were personally delivered to" defendants, "[t]here is no indication that a copy of the Complaint was served").

Citing no authority, Plaintiffs also argue that they must have properly served Mr. Botero because eventually he "received the documents." (Opp. at 7.) But actual notice is not relevant; "compliance with Rule 4" is still required. *Crowley v. Bannister*, 734 F.3d 967, 975 (9th Cir. 2013); *see Prewitt Enters., Inc. v. Org. of Petroleum Exporting Countries*, 353 F.3d 916, 925 (11th Cir. 2003) ("[E]ven though OPEC had actual notice of the filing of the suit, service of process was ineffective because it was clearly not in substantial compliance with the requirements of [Rule] 4(f)(2)(C)(ii)."). In other words, under Rule 4(f)(2)(C)(i), the question is not whether Mr. Botero received the summons and SAC, but whether Plaintiffs delivered them to Mr. Botero personally, which they did not.

### 4. Plaintiffs Have Failed to Show That Alternative Forms of Service Are Warranted Under Rule 4(f)(3).

In a single sentence, and without any analysis, Plaintiffs seek leave from the Court to serve Mr. Botero in other ways that are not permitted by Rule 4(f). (Opp. at 9–10.) Presumably, Plaintiffs are invoking Rule 4(f)(3), which gives the Court discretion to permit service "by other means not prohibited by international agreement." For two reasons, the Court should not permit Plaintiffs to serve Mr. Botero by other means.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

6

ANDRÉS BOTERO'S REPLY
CASE NO. 2:20-CV-02182-PSG-JC

***First***, Plaintiffs have not explained whether the methods of service they propose (mail, email, or service by counsel) are permitted under international agreement. Under Rule 4(f)(3), it is Plaintiffs' burden—"not the court's role"—"to figure out what other means of service are available or whether those means are or are not prohibited by any international agreement." *Emine Tech. Co. v. Aten Int'l Co.*, 2008 WL 5000526, *5 (N.D. Cal. Nov. 21, 2008). ***Second***, Plaintiffs made zero attempts to serve Mr. Botero during the nine months after they named him as a defendant.   Plaintiffs have not attempted to serve him via Colombia's Central Authority.  *See Reintegrative Therapy Assoc., Inc. v.  Kinitz*, 2021 Wl 5140195, at *5 (S.D. Cal. Nov. 4, 2021) (rejecting plaintiffs' Rule 4(f)(3) request because "under the Hague Convention, [they] must attempt to serve [defendant] through [the country's] central authority *first*" (emphasis added)).   And their ineffective and improper attempts to serve Mr. Botero were half-baked at best. *See Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 115–16 (S.D.N.Y. 2010) (explaining that courts typically approve alternative means of service where plaintiffs show that they have reasonably attempted to effectuate service on the defendants so that "parties [will not] whimsically seek[] alternate means of service" (citation omitted)).

### 5.       Plaintiffs Have Waited Too Long to Serve Mr. Botero.

Mr. Botero acknowledges that Rule 4(m)'s 90-day requirement on its face does not apply to service in a foreign country under Rule 4(f). (*See* Botero Br. at 10.) But because Plaintiffs have failed to make "a reasonable, good faith effort to attempt service abroad during the [90]-day period," the Court may (and should) dismiss the SAC as to Mr. Botero. *Allstate Ins. Co. v. Funai Corp.*, 249 F.R.D. 157, 162 (M.D. Pa. 2008); *see Plantation Gen. Hosp., L.P. v. Cayman Islands*, 2010 WL 731853 (S.D. Fla. 2010) (dismissing action where plaintiff "failed to demonstrate that it ha[d] taken *any* efforts to facilitate service in accordance with the proper procedures"); (*see also* Botero Br. 10–11.) Plaintiffs named Mr. Botero in their AC on August 21, 2020,

but did not attempt to serve him until June 21, 2021, nine months later. During those nine months, Plaintiffs made zero effort to serve Mr. Botero. And in their Opposition, they do not attempt to justify or excuse their shockingly long delay. Instead, Plaintiffs contend that the 90-day clock resets each time a plaintiff amends their complaint. (*See* Opp. at 9.) But that is not the law. *See UWM Student Ass'n v. Lovell*, 888 F.3d 854, 859 (7th Cir. 2018) (holding that the filing of an amended complaint "does not restart the clock" as to any existing defendants.). Because Mr. Botero was named as a defendant in the AC on August 21, 2020, that date is the proper starting point.

**B.** **The SAC Should Be Dismissed as to Mr. Botero for Lack of Personal Jurisdiction.**

**1.** **Plaintiffs Have Not Shown That Mr. Botero Purposefully Directed His Statement to the United States.**

Plaintiffs argue that the Court may exercise personal jurisdiction over Mr. Botero because he purposefully directed his single statement to the United States. (Opp. at 11–13.)[4] To prove purposeful direction, Plaintiffs must show Mr. Botero "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the [he] knows is likely to be suffered in the forum state." *Dole Food Co., v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002); *see also Janus v. Freeman*, 840 F. App'x 928, 930 (9th Cir. 2020). "The test is all or nothing; if a plaintiff cannot establish even one of the three prongs, specific jurisdiction cannot attach." *Spy Optic, Inc. v. AreaTrend, LLC*, 843 F. App'x 66, 68 (9th Cir. 2021). Plaintiffs have not met the second and third elements.

***First***, Mr. Botero did not "expressly" aim his statement to the United States. Far from being "the focal point" of his statement, Mr. Botero's statement does not mention the United States at all. *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1070–71 (9th Cir. 2017); (*see* Botero Br. at 13–14.) Plaintiffs attempt to tie the July Press Release to the United States by pointing out that it appears on

---

[4] Plaintiffs failed to argue that Mr. Botero purposefully availed himself of the forum. (Botero Br. at 12–13.)

PharmaCielo's website, is addressed to "Investors," and its heading reads "Investing in the future of Cannabis." (Opp. at 12–13.) But none of those facts satisfy the requirement that Mr. Botero must have committed an intentional act "expressly aimed" at the United States. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1156 (9th Cir. 2006). Just because the July Press Release was accessible online to U.S. investors does not mean Mr. Botero's statement was expressly aimed at them. *See id.* at 1158 (explaining that an "internet domain name and passive website" is not enough); *Holland Am. Line, Inc. v. Wärtsilä N. Am., Inc.*, 485 F.3d 450, 460 (9th Cir. 2007) (finding that "a mere web presence is insufficient to establish personal jurisdiction"). At most, Mr. Botero's statement was merely "directed at the general investing public," and that is not enough. *Corwin v. Swanson*, 2010 WL 11598013, at *3 (C.D. Cal. Apr. 27, 2010).

In a single sentence, Plaintiffs argue that the Court should exercise jurisdiction over Mr. Botero because they plead that he is a control person under Section 20(a) of the Exchange Act. (Opp. at 12.) As an initial matter, Plaintiffs' control allegations are boilerplate—they are not specific to the July Press Release or to Mr. Botero. (¶126.) Not to mention, Plaintiffs' allegations are frivolous. Mr. Botero is not the COO of *Defendant PharmaCielo*, as Plaintiffs allege. (¶20.) Rather, he's the COO of Defendant PharmaCielo's *Colombian subsidiary, PharmaCielo Colombia*. (Botero Decl. ¶3.) He, therefore, could not have controlled PharmaCielo, which is the parent company and is the only company named as a Defendant in the SAC. *In re Cooper Sec. Litig.*, 691 F. Supp. 2d 1105, 1122 (C.D. Cal. 2010) ("It is difficult to understand how [the defendant] could have exercised actual power and control over Cooper's officers when he was an officer of Cooper's subsidiary, CooperVision."). In any case, liability under Section 20(a) cannot "be conflated with amenability to suit in a particular forum" because "[p]ersonal jurisdiction has constitutional dimensions," and "Congress cannot override the due process clause, the source of protection for non-resident defendants." *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94

F.3d 586, 591 (9th Cir. 1996); *see also City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 667 (6th Cir. 2005) ("[C]ontrol person liability . . . cannot on its own support personal jurisdiction. . . . Though they may involve a similar contact-based analysis, ultimately, the two inquiries must be distinct: control person liability under the securities laws is not germane to the issue of personal jurisdiction." (internal quotation marks and citations omitted)). Furthermore, the case Plaintiffs rely on is readily distinguishable— the defendant was the treasurer and vice president of a *domestic company*. *San Mateo Cnty. Transit Dist. v. Dearman, Fitzgerald & Roberts, Inc.*, 979 F.2d 1356, 1357 (9th Cir. 1992). Because PharmaCielo Colombia is a foreign subsidiary, "[c]ontrol allegations, standing alone, will not suffice to make a prima facie showing of personal jurisdiction. . . . Rather than generalized control allegations, the plaintiff must allege specific facts that support an inference that the foreign defendant directed his activities to the forum." *In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 2012 WL 1322884, at *9 (C.D. Cal. Apr. 16, 2012).

**Second**, Plaintiffs do not allege or attempt to prove with evidence that Mr. Botero "understood" his statement would affect the Company's stock price, or that he otherwise knew his statement would likely harm U.S. investors.[5] (Opp. at 11.) The opposite is much more likely. Mr. Botero is the COO of PharmaCielo Colombia, a subsidiary of PharmaCielo, a Canadian company. When the July Press Release was issued, the United States was not named as one of PharmaCielo's potential global markets. Nor does the July Press Release mention the United States. Mr. Botero's statement has nothing to do with the United States, but rather the Company's efforts "scaling up [its] *Colombian* operations" and achieving "the *Colombian* industry's first go-ahead to start exporting." (SAC ¶ 56 (emphasis added); *see* Botero Br. at 13–14.) And there is no evidence that Mr. Botero knew that PharmaCielo had U.S.

---

[5] And for the reasons explained in the Defendants' Motion to Dismiss under Rule 12(b)(6), Mr. Botero's statement did not in fact cause any loss, nor did Mr. Botero act with the requisite state of mind. *See generally* ECF No. 59-1.

investors or was listed on a U.S. over-the-counter market.[6]

### 2. Exercising Jurisdiction Over Mr. Botero Would Not Be Reasonable.

Even if Mr. Botero had minimum contacts with the United States, it would be unreasonable to exercise personal jurisdiction over him. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (personal jurisdiction must be consistent with "traditional notions of fair play and substantial justice"). Mr. Botero is a Colombian resident and citizen who has never lived in the United States. *See Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1488–89 (9th Cir. 1993) (explaining "[s]overeignty concerns weigh more heavily" where there is no "ongoing connection to or relationship with the United States"); *Fed. Deposit Ins. Corp. v. Brit.-Am. Ins. Co.*, 828 F.2d 1439, 1488 (9th Cir. 1987) (explaining that where, as here, "the defendant has done little to reach out to the forum state, the burden of defending [himself] in a foreign forum militates against exercising jurisdiction" (internal quotation and citation omitted)). The only challenged statement attributed to him (and the entire July Press Release) has nothing to do with the United States. (*See* Botero Br. at 13–14; *U.S. S.E.C. v. Sharef*, 924 F. Supp. 2d 539, 547–49 (S.D.N.Y. 2013) (explaining that the United States has a "diminished interest in adjudicating . . . matter[s]" where the challenged statements were not "*directed to* deceiving United States shareholders")). And most (if not all) of the witnesses and evidence related to Mr. Botero's statements are in Colombia. *See Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1176 (9th Cir. 2006) (explaining that "[t]he site . . . where evidence is located usually will be the most efficient forum.").

Plaintiffs' contrary arguments are unpersuasive. Under Plaintiffs' view, courts would have personal jurisdiction over every defendant accused of violating the

---

[6] Plaintiffs rely on *S.E.C. v. Ficeto*, but that case is clearly distinguishable. (Opp. at 10-12.) There, the court found specific jurisdiction over a defendant who manipulated U.S. markets by spreading false information into the United States. 2013 WL 1196356, at *6 (C.D. Cal. Feb. 7, 2013). By contrast, Mr. Botero did not direct his statement to U.S. investors, nor did he manipulate a U.S. market.

securities laws. (Opp. at 15.) And none of their inapposite cases say that.[7] Plaintiffs also argue that exercising jurisdiction over Mr. Botero would be reasonable because he shares counsel with the other Defendants. (Opp. at 14.) But this small convenience is outweighed by the burden of litigating this case from Colombia, a burden which will become larger if this case proceeds to discovery.[8]

### C.    In Any Event, the SAC Should Be Dismissed as to Mr. Botero Because the SAC Fails to State a Claim Under Rule 12(b)(6).

Mr. Botero fully joins in the Motion to Dismiss and the Reply in further support thereof filed by the other Defendants in this case. ECF Nos. 59-1; 65.

## III.   CONCLUSION

For the reasons stated above, the SAC should be dismissed with prejudice as to Mr. Botero.

---

[7] *In re Banco Bradesco S.A. Sec. Litig.,* 277 F. Supp. 3d 600, 645 (S.D.N.Y. 2017) (jurisdiction over Brazilian defendant reasonable where defendant did not argue it would be unreasonable); *S.E.C. v. Straub*, 2016 WL 5793398, at *8 (S.D.N.Y. Sept. 30, 2016) (strong U.S. interest in enforcing securities laws against defendants engaged in bribery scheme); *In re Poseidon Concepts Sec. Litig.,* 2016 WL 3017395, at *8 (S.D.N.Y. May 24, 2016) (jurisdiction reasonable over "Big Four" accounting firm); *S.E.C. v. Gonzalez de Castilla*, 2001 WL 940560, at *4 (S.D.N.Y. Aug. 20, 2001) (jurisdiction reasonable where movants traded stock in U.S. corporation).

[8] Plaintiffs' non-binding cases on this point are distinguishable. *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 288–89, 291, 294–96 (4th Cir. 2009) (jurisdiction reasonable where company representative visited forum twice and "corresponded and collaborated" with plaintiffs in forum for an "extended period"); *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 130 (2d Cir. 2002) (jurisdiction reasonable where defendants frequently used apartment in Manhattan, earned sizable revenue from international clients, and "both jurisdictions [were] marked with the traces of the transaction in issue."); *Vancouver Alumni Asset Holdings Inc. v. Daimler AG,* 2017 WL 2378369, at *8–9 (C.D. Cal. May 31, 2017) (jurisdiction reasonable where individual defendants signed a "Form F–6 Registration Statement filed with the SEC," made "statements directed at the United States by signing market disclosures that were translated into English to comply with U.S. securities regulations," and traveled to the U.S. to solicit business); *City Pension Fund for Firefighters & Police Officers in the City of Miami Beach v. Aracruz Cellulose S.A.,* 41 F. Supp. 3d 1369, 1402 (S.D. Fla. Sep. 16, 2011*)* (jurisdiction reasonable where defendants were "primary participants in the fraud" and had "minimum contacts with the United States")

Dated:     November 18, 2021             Respectfully submitted,

By: */s/ Peter Adams*

*Attorney for Defendant Andrés Botero*