UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     JS-6

| | | | |
|---|---|---|---|
| Case No. | CV 20-2182 PSG (JCx) | Date | December 7, 2021 |
| Title | In re Pharmacielo Ltd. Securities Litigation | | |

| | |
|---|---|
| Present: The Honorable | Philip S. Gutierrez, United States District Judge |
| Wendy Hernandez | Not Reported |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| Not Present | Not Present |

**Proceedings (In Chambers):**    Order GRANTING Defendants' motion to dismiss and DENYING AS MOOT Botero's motion to dismiss.

    Before the Court are two motions to dismiss. The first motion was filed by Defendants PharmaCielo Ltd. ("PharmaCielo"), David Attard, Scott Laitinen, David Gordon, and Andrés Botero ("Botero") (collectively, "Defendants"). *See generally* Dkt. # 59 ("*Mot. I*"). Plaintiffs, a putative class of investors, opposed. *See generally* Dkt. # 63 ("*Opp.*"). Defendants replied. *See generally* Dkt. # 65 ("*Reply*"). Botero filed a second motion to dismiss for insufficient service of process and lack of personal jurisdiction. *See generally* Dkt. # 61 ("*Mot. II*"). Plaintiffs opposed. *See generally* Dkt. # 64. Botero replied. *See generally* Dkt. # 66. The Court finds these matters appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. After considering the moving, opposing, and reply papers, the Court **GRANTS** Defendants' motion to dismiss and **DENIES AS MOOT** Botero's motion to dismiss.

I.     Background

    In this consolidated putative class action, Plaintiffs maintain that Defendants made various misrepresentations and omissions about PharmaCielo that artificially inflated its stock prices. *See generally Second Amended Complaint*, Dkt. # 50 ("*SAC*").

    PharmaCielo is a Canadian corporation that sells its foreign ordinary shares over the counter in the United States. *See id.* ¶ 16. PharmaCielo—through its sole subsidiary, PharmaCielo Colombia Holdings S.A.S.—cultivates, processes, produces, and supplies "medicine-grade cannabis oil extracts." *Id.* ¶ 2. PharmaCielo's headquarters is in Rionego, Colombia, where it has a 27-hectare cannabis cultivating facility (the "Rionegro property"). *Id.* ¶ 27. PharmaCielo also has a second property in Colombia's Cauca region (the "Cauca property"). *Id.* ¶ 3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-2182 PSG (JCx) | Date | December 7, 2021 |
|---|---|---|---|
| Title | In re Pharmacielo Ltd. Securities Litigation | | |

From June 21, 2019 to March 2, 2020 (the "Class Period"), PharmaCielo allegedly "told investors that it was scaling up its Colombian operation and expanding capacity to allow it to enter into, and meet obligations under, sales agreements and distribution agreements facilitating the growth of its businesses in the [United States], Latin America, and Europe." *Id.* ¶ 5. These statements included predictions that a new Research, Technology, and Processing Centre (the "Centre") would be complete by late 2019, *id.* ¶ 30, and descriptions of the various advantages of its Rionegro property, *id.* ¶ 54.

Additionally, PharmaCielo made various announcements in late 2019 and early 2020 regarding its successes and plans for the future. Specifically, in September 2019, PharmaCielo announced a $3 million sales agreement with General Extract LLC ("General Extract"), "which it touted as the Company's 'initial foray into the coveted United States market as a supplier of medicinal-grade CBD isolate.'" *Id.* ¶ 6. In December 2019, PharmaCielo issued a press release that it had "laid the groundwork" and was looking forward to expanding its presence throughout Latin America. *Id.* ¶ 74. Finally, in January 2020, PharmaCielo announced an agreement with XPhyto Therapeutics Corp. ("XPhyto"), describing it as "a significant opportunity to export an ever-expanding range of medicinal products into the German market." *Id.* ¶¶ 82–83.

Plaintiffs claim that Defendants' various public statements during the Class Period misled investors because Defendants misrepresented facts or omitted critical information. *See generally SAC*. Specifically, (1) in advertising the advantages of the Rionegro property, Defendants omitted that "the Rionegro facility is located on a floodplain that impacts operations and productivity" and that it "is contaminated with mold and pesticides from its previous tenants," *id.* ¶ 55; (2) Defendants misrepresented the progress on the Centre and failed to disclose significant delays in the project, *id.*; (3) Defendants misrepresented that the Rionegro property is "PharmaCielo's *main* growing and processing operation," when in reality the Rionegro property is "the Company's *only* growing and processing operation" because the Cauca Property "has never been utilized by the Company and remains idle," *id.*; (4) Defendants failed to disclose that the agreement with General Extract was a related party transaction, *id.* ¶ 66; (5) Defendants "failed to disclose that PharmaCielo could not expand its Latin American business into Peru because the Company failed to comply with the requirements of a bidding process to supply medical cannabis in Peru," *id.* ¶ 75; and (6) Defendants failed to disclose that the agreement with XPhyto was a "sham" transaction, *id.* ¶¶ 50–52, 91. On March 2, 2020, Hindenburg Research, a self-admitted short seller, published a report advancing substantially similar allegations. *See id.* ¶¶ 88–96. Two days later, PharmaCielo's stock price fell by more than 35%. *See id.* ¶ 97.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-2182 PSG (JCx) | Date | December 7, 2021 |
|---|---|---|---|
| Title | In re Pharmacielo Ltd. Securities Litigation | | |

Plaintiffs separately filed complaints against Defendants that were later consolidated before this Court. *See generally* Dkt. # 22. Plaintiffs filed their first amended complaint in August 2020, *see generally* Dkt. # 27, and Defendants successfully moved to dismiss all claims, *see generally* Dkt. # 49 ("*Dismissal Order*"). The Court granted Plaintiffs leave to amend to address all identified deficiencies. *Id.* at 10.

Plaintiffs filed the operative second amended complaint in May 2021, reasserting two causes of action:

> First Cause of Action: Violation of § 10(b) of the Securities and Exchange Act of 1934 ("Exchange Act") and 17 C.F.R. § 240.10b-5 ("Rule 10b-5"). *SAC* ¶¶ 113–22.
>
> Second Cause of Action: Violation of § 20(a) of the Exchange Act. *SAC* ¶¶ 123–27.

Defendants once again move to dismiss each claim against them under Federal Rule of Civil Procedure 12(b)(6), *see generally Mot. I*, and Botero moves separately to dismiss alternatively under Rules 12(b)(2) and 12(b)(5), *see generally Mot. II*.

II. Defendants' Motion to Dismiss Under Rule 12(b)(6)

A. Request for Incorporation by Reference or Judicial Notice

Defendants request that the Court incorporate by reference or take judicial notice of several documents referenced in Plaintiffs' second amended complaint. *See generally Request for Judicial Notice*, Dkt. # 60 ("*RJN*"). Plaintiffs did not oppose.

"Generally, the scope of review on a motion to dismiss . . . is limited to the contents of the complaint." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *see Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) ("Ordinarily, a court may look only at the face of the complaint to decide a motion to dismiss."). However, courts may also consider "attached exhibits, documents incorporated by reference, and matters properly subject to judicial notice." *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1051 (9th Cir. 2014). Under Federal Rule of Evidence 201, a court may take judicial notice of facts not subject to reasonable dispute because they (1) are generally known within the court's territorial jurisdiction, or (2) can be accurately

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-2182 PSG (JCx) | Date | December 7, 2021 |
|---|---|---|---|
| Title | In re Pharmacielo Ltd. Securities Litigation | | |

and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b).

Defendants request that the Court incorporate by reference or take judicial notice of nearly 25 documents to support their motion to dismiss. *See generally RJN* 3:16–5:23. Although many of these documents are likely proper subjects for incorporation by reference or judicial notice, the Court finds that only Exhibits 9, 17, and 18 are necessary to decide this motion. Exhibit 9 is PharmaCielo's published 2019 financial statements, which Plaintiffs reference in the second amended complaint at ¶¶ 69–71. Dkt. # 59-11, Ex. 9. Exhibit 17 is a PharmaCielo press release responding to Hindenburg's report, which Plaintiffs reference in the second amended complaint at ¶ 99. Dkt. # 59-19, Ex. 17. Finally, Exhibit 18 is a Form 10-K from Redwood Green Corporation, which Plaintiffs reference in the second amended complaint at ¶ 100. Dkt. # 59-20, Ex. 18. Because each of these documents is referenced in the second amended complaint, the Court **GRANTS** Defendants' request to incorporate these documents by reference. *See* Fed. R. Evid. 201(b); *In re NVIDIA Corp.*, 768 F.3d at 1051.

B.  <u>Legal Standard</u>

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In assessing the adequacy of the complaint, the court must accept all pleaded facts as true and construe them in the light most favorable to the plaintiff. *See Turner v. City & Cnty. of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015); *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). The court then determines whether the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Accordingly, "for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To plead fraud with particularity, the pleader must state the time, place, and specific content of the false representations. *See Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007). The allegations "must set forth more than neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-2182 PSG (JCx) | Date | December 7, 2021 |
|---|---|---|---|
| Title | In re Pharmacielo Ltd. Securities Litigation | | |

about the statement, and why it is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted). In essence, the defendant must be able to prepare an adequate answer to the allegations of fraud. Where multiple defendants allegedly engaged in fraudulent activity, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). Rather, a plaintiff must identify each defendant's role in the alleged scheme. *See id.* at 765.

  C. <u>Discussion</u>

The Court considers each of Plaintiffs' causes of action in turn.

    i. *First Cause of Action: § 10(b) of the Exchange Act and Rule 10b-5*

To prevail under § 10(b) and Rule 10b-5, a plaintiff must establish that there was "(1) a material misrepresentation or omission of fact, (2) scienter, (3) a connection with the purchase or sale of a security, (4) transaction and loss causation, and (5) economic loss." *In re Daou Sys., Inc.*, 411 F.3d 1006, 1014 (9th Cir. 2005). For § 10(b) and 10b-5 violations, Plaintiffs must also meet the heightened pleading requirements under Federal Rule of Civil Procedure 9(b). *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 605 (9th Cir. 2014) ("We . . . hold today that Rule 9(b) applies to all elements of a securities fraud action."). These heightened pleading requirements "prevent[] a plaintiff from skirting dismissal by filing a complaint laden with vague allegations of deception unaccompanied by a particularized explanation stating *why* the defendant's alleged statements or omissions are deceitful." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).

The Court addresses in turn each of the following six categories of Defendants' alleged misrepresentations or omissions: (a) omissions regarding various issues with the Rionegro property; (b) misrepresentations about the progress of the Centre construction project; (c) misrepresentations about the Rionegro property being PharmaCielo's "main" facility; (d) omissions regarding the General Extract agreement, which was allegedly a related party transaction; (e) omissions regarding the failed Peru bid; and (f) omissions regarding the XPhyto transaction, which was allegedly a sham.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-2182 PSG (JCx) | Date | December 7, 2021 |
|---|---|---|---|
| Title | In re Pharmacielo Ltd. Securities Litigation | | |

         *a.*       *Omissions Regarding the Rionegro Property*

      Plaintiffs maintain that they adequately pleaded a § 10(b) and Rule 10-b5 violation because Defendants misled investors by omitting material facts about the true state of the Rionegro property. *Opp.* 11:6–12:4. The Court disagrees.

      Section 10(b) and Rule 10b-5 "do not create an affirmative duty to disclose any and all material information." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011). An actionable omission arises only if disclosure was "necessary . . . to make the statements made, in light of the circumstances in which they were made, not misleading." *Retail Wholesale & Dep't Store Union Local 388 Ret. Fund v. Hewlett-Packard. Co.*, 845 F.3d 1268, 1278 (9th Cir. 2017) (quoting 17 C.F.R. § 240.10b-5(b)). "[A] statement is misleading if it would give a reasonable investor the 'impression of a state of affairs that differs in a material way from the one that actually exists.'" *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985 (9th Cir. 2008) (quoting *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002)).

      Plaintiffs maintain that Defendants misled investors because PharmaCielo's website advertises the following: "With fertile soil, perfect equatorial sunlight, and state-of-the-art science and technology, PharmaCielo has created one of the world's largest integrated cannabis cultivation and extraction facilities producing some of the world's purest cannabis." SAC ¶¶ 27, 54 (citing *Our Process*, PharmaCielo, https://www.pharmacielo.com/our-process/ (last visited Dec. 2, 2021)). In fact, Plaintiffs argue that the property is far from perfect because it is contaminated with botrytis, a form of gray mold, and is located on a floodplain. *Id.* ¶¶ 35–41. The Court previously dismissed Plaintiffs' claim premised on these mold and floodplain allegations because Plaintiffs failed to allege that these claims actually affected PharmaCielo's business. *Dismissal Order* at 5.

      Plaintiffs repeat that error. The second amended complaint adds allegations from confidential witnesses to suggest that botrytis mold affected PharmaCielo's business. *See SAC* ¶¶ 36–37. Specifically, Plaintiffs allege that wet conditions exacerbated a pre-existing mold issue and that management directed workers to process "botrytis-infested" crops alongside healthy crops. *Id.* ¶ 36. As a matter of "common sense," Plaintiffs allege that this affected the quality of PharmaCielo's product. *Id.* ¶ 37. But PharmaCielo does not sell raw crops; it sells "medicine-grade cannabis oil extracts." *See id.* ¶ 2. Plaintiffs' allegations in no way address the "state-of-the-art science and technology"—mentioned in the same section of PharmaCielo's website—presumably used to turn the raw crops into PharmaCielo's final oil extract product. *See id.* ¶ 54. Nor do Plaintiffs explain whether commingling molded and healthy crops affects

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-2182 PSG (JCx) | Date | December 7, 2021 |
|---|---|---|---|
| Title | In re Pharmacielo Ltd. Securities Litigation | | |

the oil extraction process or oil extract quality in any material way. Plaintiffs' appeal to common sense is nothing more than a "vague allegation[] of deception" and is insufficient to plead a material misstatement or omission. *See Metzler Inv. GMBH*, 540 F.3d at 1061.

Plaintiffs' allegations that the PharmaCielo property is partially located on a floodplain fare no better. Plaintiffs allege that approximately one third of the Rionegro property is on a floodplain. *Id.* ¶ 38. Due to its proximity to a river, some of the property "periodically flooded," causing "lost time" and rendering certain areas of the property "difficult to enter" or entirely inaccessible. *Id.* ¶¶ 38–40. This, Plaintiffs allege, "clearly affected productivity." *Id.* ¶ 40. But Plaintiffs again do not complete the picture. Plaintiffs provide no specifics to suggest that periodic flooding and lost time materially affected PharmaCielo's business. Vague references to "decreased productivity" are not enough. *See Ronconi v. Larkin*, 253 F.3d 423, 434 (9th Cir. 2001) (affirming Rule 12(b)(6) dismissal because plaintiffs made only vague references to "serious operational problems" but failed to demonstrate *how* those problems affected profits); *McGovney v. Aerohive Networks, Inc.*, 367 F. Supp. 3d 1038, 1056 (N.D. Cal. 2019) (dismissing because vague allegations of understaffing failed to provide the court with enough information to assess "the severity of the problem or whether that actually had an impact on revenue"). PharmaCielo's alleged failure to disclose that part of the Rionegro property was on a floodplain therefore also falls short of being a material misstatement or omission.

Accordingly, the Court once again **GRANTS** Defendants' motion to dismiss the first cause of action for this category of statements.

### b. *Misrepresentations About the Progress of the Centre*

Plaintiffs contend that new allegations in the second amended complaint remedied the defects the Court previously identified with the alleged misrepresentations about the progress of the Centre—i.e., that Defendants' statements were not actionable as a matter of law. *See Opp.* 12:5–13:4. The Court disagrees.

It is well established that statements of corporate optimism are not actionable because "professional investors, and most amateur investors as well, know how to devalue the optimism of corporate executives." *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1060 (9th Cir. 2014). Plaintiffs allege that PharmaCielo "repeatedly told investors that it was successfully scaling up its Colombian operation and expanding capacity," a claim that was premised in part on the construction of its new Research, Technology, and Processing Centre with an *anticipated* completion date of late 2019. *SAC* ¶¶ 5, 61. The Court already explained

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-2182 PSG (JCx) | Date | December 7, 2021 |
|---|---|---|---|
| Title | In re Pharmacielo Ltd. Securities Litigation | | |

that such "forward-looking statements of corporate optimism or opinion" were "not actionable under § 10(b)." *Dismissal Order* at 6. The Court granted Plaintiffs leave to amend to "allege *other* statements regarding the [Centre] that are not forward-looking representations of optimism or opinion." *Id.* at 10 (emphasis added). Plaintiffs point to no other statements.

Accordingly, the Court again **GRANTS** Defendants' motion to dismiss the first cause of action as to this category of statements.

### c. *Classifying the Rionegro Property as the "Main" Facility*

Plaintiffs maintain that they adequately pleaded a § 10(b) and Rule 10-b5 violation because Defendants identified the Rionegro property as its "main" facility instead of its "only" facility, which Plaintiffs believe is more accurate because PharmaCielo's other Cauca property remains unused. *Opp.* 13:5–17. The Court disagrees.

The Court previously dismissed Plaintiffs' claim because Plaintiffs failed to allege that its distinction between "main" and "only" was material—i.e., that it would have changed a reasonable investor's opinion of PharmaCielo's value. *Dismissal Order* at 6 (citing *Retail Wholesale*, 845 F.3d at 1274). Plaintiffs have pleaded no new facts and instead contend that their other "new allegations detailing the negative impact of the flooding, mold, and construction delays" at the Rionegro property mean that investors would have placed greater emphasis on the fact that PharmaCielo's Cauca property was left idle. *See Opp.* 13:5–17. But Plaintiffs' new allegations regarding flooding and mold are immaterial as alleged, and Plaintiffs pleaded no new facts regarding the delayed Centre construction project. In other words, if the materiality of the "main" versus "only" distinction rises or falls with Plaintiffs' other failed claims—as Plaintiffs appear to suggest—this claim must also fail.

Accordingly, the Court once again **GRANTS** Defendants' motion to dismiss the first cause of action for this category of statements.

### d. *Omissions Regarding the General Extract Agreement*

Plaintiffs maintain that they have adequately pleaded a violation of § 10(b) and Rule 10b-5 because PharmaCielo failed to disclose a related party transaction with General Extract, a business that has "no apparent credible operations." *Opp.* 13:18–15:8. The Court disagrees.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-2182 PSG (JCx) | Date | December 7, 2021 |
|---|---|---|---|
| Title | In re Pharmacielo Ltd. Securities Litigation | | |

Although somewhat unclear, the apparent thrust of Plaintiffs' allegations is that Defendants made a *per se* material omission by failing to disclose a "related party" transaction with General Extract. *See SAC* ¶¶ 43–49. This was allegedly a related party transaction because General Extract's parent company is Redwood Green Corporation ("Redwood"), and two PharmaCielo directors "are significant shareholders in Redwood." *Id.* ¶ 44. The Court previously dismissed Plaintiffs' claim premised on these allegations because Plaintiffs failed to cite any authority that nondisclosure of a related party transaction was a *per se* actionable omission. *See Dismissal Order* at 7.

Plaintiffs renew their argument that Defendants made a *per se* actionable omission by failing to disclose that PharmaCielo's contract with General Extract was a related party transaction. *See Opp.* 13:24–14:3; *SAC* ¶¶ 46–48. But Plaintiffs again cite no on-point authority for this proposition, instead claiming that "Defendants had a duty to disclose" under Statement of Financial Accounting Standards 57 ("SFAS 57"). *Opp.* 14:1–8; *accord SAC* ¶ 46. But foreign corporations selling shares over the counter in the United States—like PharmaCielo—are not subject to Securities and Exchange Commission disclosure requirements and, therefore, are not obligated to comply with SFAS 57. *See* 17 C.F.R. § 240.12g3-2(b).

Alternatively, Plaintiffs also argue that Defendants' duty to disclose arose because Defendants disclosed other related party transactions but did not include the transaction with General Extract. *See Opp.* 14:2–4; *SAC* ¶ 71. But this overlooks the simple fact that Defendants' other related party disclosures were made under *Canadian* law—because PharmaCielo is a *Canadian* company—and PharmaCielo did not believe that it entered a related party transaction with General Extract under Canadian law. *See* Dkt. # 59-11, Ex. 9; Dkt. # 59-19, Ex. 17. Plaintiffs present no authority to the contrary. Accordingly, Plaintiffs provide no on-point authority to support that Defendants misled investors solely because they failed to classify the transaction with General Extract as a related party transaction.

Additionally, Plaintiffs previously argued that the General Extract agreement was misleading *only* because it was a related party transaction, "not because defendants did not actually expect meaningful revenue." *See Dismissal Order* at 7 (quoting Plaintiffs' previous opposition). Plaintiffs appear to have recanted that argument, claiming now that Defendants also misled investors by announcing that PharmaCielo entered a $3 million agreement with General Extract, an "established multi-state distributor," even though Defendants knew the agreement was a "sham," presumably due to their close connections on the other side of the negotiating table. *See Opp.* 14:9–15:8; *SAC* ¶ 64. This is primarily because General Extract allegedly has "no apparent credible operations," *SAC* ¶ 79, which Plaintiffs appear to indicate Defendants

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-2182 PSG (JCx) | Date | December 7, 2021 |
|---|---|---|---|
| Title | In re Pharmacielo Ltd. Securities Litigation | | |

knew because (1) General Extract's website was "first registered three weeks after [PharmaCielo] announced their agreement"; (2) because General Extract has only one employee—John Knapp, PharmaCielo's former chief operating officer—and "generates only $29,735 in sales annually," *id.* ¶ 45; and (3) because the $3 million agreement would account for approximately 60% of PharmaCielo's revenue in the fourth quarter of 2019, *id.* ¶ 67.

It is well established that Plaintiffs cannot allege "fraud by hindsight." *See Ronconi*, 253 F.3d at 430 & n.12 ("The complaint does not plead facts that show that company insiders knew what the complaint says 'would' occur in what was then the future."). None of Plaintiffs' purported flaws with the General Extract agreement make clear that Defendants knew—in September 2019, when they announced the General Extract deal—what would become of General Extract in the future. *See SAC* ¶ 64. Instead, General Extract's parent company's Form 10-K for the 2019 fiscal year tends to suggest that General Extract was a legitimate multi-state distributor, as Defendants represented—i.e., it was founded in 2015 as "an importer, distributor, broker and postprocessor of hemp and hemp derivatives." *See* Dkt. # 59-20, Ex. 18. And the fact that Defendants have more recently acknowledged that the $3 million deal never came to fruition, *SAC* ¶ 101, says nothing of General Extract's operations or capabilities in September 2019.

Accordingly, Plaintiffs have failed to plead a material misstatement or omission regarding the General Extract agreement, and the Court once again **GRANTS** Defendants' motion to dismiss the first cause of action for this category of statements.

### e. Omissions Regarding the Failed Peru Bid

Plaintiffs argue that they adequately pleaded a § 10(b) and Rule 10b-5 violation because Defendants knew they would lose a bid to expand their business into Peru but announced anyway that PharmaCielo was looking to expand its "existing presence throughout Latin America." *Opp.* 15:9–16:5. The Court disagrees.

Plaintiffs challenge this specific statement: "Now that we have laid the groundwork we are looking forward to a strong 2020 and expanding our existing presence throughout Latin America which began with Mexico, and which in 2019 added a number of others including Uruguay and Argentina." *SAC* ¶ 74. Plaintiffs contend that, because Defendants allegedly knew they would lose their bid to expand into the Peruvian cannabis market, the above statement is misleading. *See id.* ¶ 75. But as the Court previously explained, "PharmaCielo's failure in the bidding process on a single project in one country did not render its optimism about expansion

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-2182 PSG (JCx) | Date | December 7, 2021 |
|---|---|---|---|
| Title | In re Pharmacielo Ltd. Securities Litigation | | |

across portions of two *continents*—North and South America—misleading." *Dismissal Order* at 8. Plaintiffs have alleged no additional facts to suggest that the loss of one bid in Peru rendered misleading Defendants' optimistic statements about then-current or future expansion in Latin America.

Accordingly, the Court once again **GRANTS** Defendants' motion to dismiss the first cause of action for this category of statements

### f.     Omissions Regarding the XPhyto Agreement

Plaintiffs argue that Defendants misled investors to think that an agreement with XPhyto was a "significant opportunity" to market Defendants' product in Germany while in reality XPhyto was "nearly insolvent and led by a CEO with a history of running companies into the ground." *Opp.* 16:6–17:4. The Court disagrees.

Plaintiffs allege that, in January 2020, PharmaCielo announced that it entered a three-year distribution agreement with XPhyto. *SAC* ¶ 50. The plan was for XPhyto to further process PharmaCielo's product for sale on the German market because all cannabis products sold in Germany must be "EU GMP compliant." *Id.* ¶¶ 50, 102. However, XPhyto allegedly was "on the brink of insolvency," reporting only $45,000 in revenue nine months prior to entering the distribution agreement with PharmaCielo. *Id.* ¶ 52. More than a year after striking a deal with XPhyto, PharmaCielo announced that it had not yet delivered any products to XPhyto because, for XPhyto to receive the products in the first place, they must already be EU GMP compliant—i.e., XPhyto could not be the one to bring PharmaCielo's product into compliance in Germany as originally planned. *See id.* ¶ 102. The Court previously dismissed substantially the same allegations because Plaintiffs failed to demonstrate "that the transaction was actually a sham or was not expected to have the benefits advertised by Defendants." *Dismissal Order* at 9. Plaintiffs have failed to remedy this defect, attempting once again to plead fraud by hindsight by newly alleging only that the XPhyto agreement has not gone as planned. *SAC* ¶ 102. This is not enough to demonstrate a material misstatement or omission. *See Ronconi*, 253 F.3d at 430 & n.12.

Accordingly, the Court again **GRANTS** Defendants' motion to dismiss the first cause of action for this category of statements.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-2182 PSG (JCx) | Date | December 7, 2021 |
|---|---|---|---|
| Title | In re Pharmacielo Ltd. Securities Litigation | | |

        *ii.*      *Second Cause of Action: § 20(a) of the Exchange Act*

    Section 20(a) "makes certain 'controlling' individuals also liable for violations of section 10(b)." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009). However, absent a "primary violation of federal securities law," there is also no violation of § 20(a). *See id.* Accordingly, because the Court has determined that Plaintiffs failed to plead a violation of § 10(b), Plaintiffs' derivative § 20(a) claim must also fail. As such, the Court **GRANTS** Defendants' motion to dismiss Plaintiffs' second cause of action.

        D.      Leave to Amend

    Plaintiffs request leave to amend. *Opp.* 25:24 n.12. Defendants request dismissal with prejudice. *Mot. I* 25:20–21.

    Whether to grant leave to amend rests in the sound discretion of the district court. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). Courts should consider (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether the plaintiff has previously amended the complaint. *See Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996) (finding the "fourth and fifth factors, futility and prior amendment" dispositive). A district court's "discretion to deny leave to amend is particularly broad where [the] plaintiff has previously amended the complaint." *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990).

    Here, leave to amend is improper under the "fourth and fifth factors, futility and prior amendment." *See Sisseton-Wahpeton Sioux Tribe*, 90 F.3d at 355. The Court previously granted Plaintiffs leave to amend *all* of their claims. *Dismissal Order* at 10. Plaintiffs meaningfully attempted to amend their allegations regarding the undisclosed mold and flooding issues with the Rionegro property. But Plaintiffs' appeal to "common sense" and vague references to "lost time" and productivity once again failed to address the very same concern the Court had previously identified—that Plaintiffs have not demonstrated that the mold or flooding had a material effect on PharmaCielo's business. *Id.* at 5. For the remaining categories of alleged misstatements or omissions, Plaintiffs either failed to plead any additional facts, alleged only legally irrelevant facts, or rehashed previously rejected arguments. Further amendment is therefore futile, particularly given Plaintiffs' failed attempt to remedy all defects in their previous complaint.

    Accordingly, the Court **DENIES** Plaintiffs leave to amend.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-2182 PSG (JCx) | Date | December 7, 2021 |
|---|---|---|---|
| Title | In re Pharmacielo Ltd. Securities Litigation | | |

IV.   Botero's Motion to Dismiss Under Rule 12(b)(5) and 12(b)(2)

Botero, who joined the other Defendants' motion to dismiss under Rule 12(b)(6), *see Mot. II* 18:13–21, moves in the alternative to dismiss under Rule 12(b)(5) and 12(b)(2) for insufficient service of process and lack of personal jurisdiction, respectively, *see generally Mot. II*.  Because the Court has dismissed with prejudice all claims against Botero, the Court **DENIES AS MOOT** Botero's separate motion to dismiss.

V.   Conclusion

For the foregoing reasons, the Court **GRANTS** Defendants' motion and **DISMISSES WITH PREJUDICE** Plaintiffs' first and second causes of action.  As a result, the Court **DENIES AS MOOT** Botero's separate motion to dismiss.  This order closes the case.

**IT IS SO ORDERED.**